# EXHIBIT A

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

# LEASE

**LANDLORD:**        **SERITAGE SRC FINANCE LLC**

**TENANT:**        **PAINTED TREE SAN ANTONIO, LLC**

**DATE OF LEASE:**        <u>June 28</u>, **2019**

**LOCATION:**        **Park North, San Antonio, Texas**

01520049-3
June 27, 2019

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

**TABLE OF CONTENTS**

Page

ARTICLE 1 SUMMARY OF LEASE PROVISIONS. ................................................................. 1

Section 1.01  Demised Premises and the Shopping Center: .................................................. 1

Section 1.02  Building: ......................................................................................................... 1

Section 1.03  Landlord's Parcel: ........................................................................................... 1

Section 1.04  Expiration Date: .............................................................................................. 1

Section 1.05  Rent: ................................................................................................................ 1

Section 1.06  Taxes: .............................................................................................................. 2

Section 1.07  Tenant's Contribution (Common Area Expenses): .......................................... 2

Section 1.08  Security: .......................................................................................................... 2

Section 1.09  Use: ................................................................................................................. 2

Section 1.10  Broker: ............................................................................................................ 2

Section 1.11  Notice Addresses: ........................................................................................... 2

ARTICLE 2 DEFINITIONS. .................................................................................................... 3

Section 2.01  Pro Rata Share: ............................................................................................... 3

Section 2.02  Landlord's Parcel Common Area: ................................................................... 3

Section 2.03  Common Area: ................................................................................................ 3

Section 2.04  Expiration Date: .............................................................................................. 3

Section 2.05  Floor Area: ...................................................................................................... 3

Section 2.06  Force Majeure: ................................................................................................ 3

Section 2.07  Insurance Requirements: ................................................................................. 3

Section 2.08  Landlord's Work: ............................................................................................ 4

Section 2.09  Master Lease: .................................................................................................. 4

Section 2.10  Master Lessor: ................................................................................................ 4

Section 2.11  Mortgage: ........................................................................................................ 4

Section 2.12  Mortgagee: ...................................................................................................... 4

Section 2.13  Parking Area: ................................................................................................... 4

Section 2.14  Person: ............................................................................................................ 4

Section 2.15  REA: ............................................................................................................... 4

Section 2.16  Rent Commencement Date: ............................................................................. 4

Section 2.17  Repair: ............................................................................................................ 4

Section 2.18  Supplemental Agreement: ............................................................................... 4

Section 2.19  Tenant's Agents: .............................................................................................. 4

Section 2.20  Tenant's Work: ................................................................................................ 5

Section 2.21  Term: .............................................................................................................. 5

Section 2.22  Year: ............................................................................................................... 5

ARTICLE 3 CONDITION OF DEMISED PREMISES. ........................................................... 5

Section 3.01  Landlord's Work: ............................................................................................ 5

Section 3.02  Delivery of Possession: ................................................................................... 5

Section 3.03  Tenant's Right of Entry: .................................................................................. 6

Section 3.04  Tenant's Work ................................................................................................. 6

ARTICLE 4 TERM. ................................................................................................................. 7

Section 4.01  Term: .............................................................................................................. 7

Section 4.02  Non-Recordation: ............................................................................................ 7

i

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

ARTICLE 5 RENT, SECURITY, TAX CONTRIBUTIONS. ................................................. 7

Section 5.01    Minimum Rent: .................................................................................. 7

Section 5.02    Intentionally Deleted: ....................................................................... 8

Section 5.03    Tax Contributions: ............................................................................ 8

Section 5.04    Intentionally Deleted: ....................................................................... 9

Section 5.05    Contribution Year: ............................................................................ 9

Section 5.06    Definition of Gross Sales: ................................................................ 9

Section 5.07    Sales Reports: ................................................................................... 9

Section 5.08    Intentionally Deleted: ..................................................................... 10

Section 5.09    Intentionally Deleted: ..................................................................... 10

Section 5.10    Confidential Information: ................................................................ 10

Section 5.11    Payment of Rent: ............................................................................ 10

Section 5.12    Security: .......................................................................................... 11

ARTICLE 6 CONDITION OF DEMISED PREMISES AND SIGNS. ............................ 11

Section 6.01    No Representation, Etc.: .................................................................. 11

Section 6.02    Mechanics' Liens: ........................................................................... 11

Section 6.03    Signs: ............................................................................................... 11

Section 6.04    Insurance Covering Tenant's Work: ................................................ 12

ARTICLE 7 REPAIRS, ALTERATIONS, COMPLIANCE, SURRENDER. .................... 12

Section 7.01    Repairs by Landlord: ....................................................................... 12

Section 7.02    Repairs and Maintenance by Tenant: ............................................. 12

Section 7.03    Approval by Landlord of Repairs and Alterations: ......................... 13

Section 7.04    Compliance: .................................................................................... 13

Section 7.05    Electrical Lines: .............................................................................. 14

Section 7.06    Emergency Repairs: ........................................................................ 14

Section 7.07    Surrender of Premises: .................................................................... 14

ARTICLE 8 SERVICE AND UTILITIES. .................................................................... 14

Section 8.01    Electricity: ....................................................................................... 14

Section 8.02    Gas Service: .................................................................................... 14

Section 8.03    Water: .............................................................................................. 15

ARTICLE 9 USE AND OPERATION. .......................................................................... 15

Section 9.01    Use: ................................................................................................. 15

Section 9.02    Continuous Operation: .................................................................... 15

Section 9.03    Landlord's Additional Right of Recapture: ..................................... 15

Section 9.04    Miscellaneous Obligations: ............................................................ 15

Section 9.05    Restriction on Tenant's Activities at Shopping Center: .................. 18

Section 9.06    Insurance Rate: ............................................................................... 18

Section 9.07    Radius Restrictions: ........................................................................ 19

Section 9.08    Illegal Purposes: ............................................................................. 19

ARTICLE 10 TRANSFER OF INTEREST, PRIORITY OF LIEN. ............................... 19

Section 10.01   Assignment, Subletting, etc.: ....................................................... 198

Section 10.02   Master Lease: ................................................................................. 21

Section 10.03   Subordination: ................................................................................ 21

Section 10.04   Attornment: .................................................................................... 22

Section 10.05   Transfer of Landlord's Interest: ..................................................... 22

Section 10.06   Mortgagee's Rights: ....................................................................... 22

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

ARTICLE 11 COMMON AREA AND SHOPPING CENTER..................................................... 23

    Section 11.01 Use of Common Areas:........................................................................ 23

    Section 11.02 Landlord's Rights: ............................................................................... 23

    Section 11.03 License Numbers: ................................................................................ 23

    Section 11.04 Tenant's Contribution:......................................................................... 23

    Section 11.05 Landlord's Obligation with Respect to Parking Area:......................... 25

ARTICLE 12 DESTRUCTION AND FIRE INSURANCE....................................................... 26

    Section 12.01 Rent Abatement: .................................................................................. 26

    Section 12.02 Option to Terminate:............................................................................ 26

    Section 12.03 Landlord's Obligation to Rebuild: ...................................................... 26

    Section 12.04 Tenant's Obligation to Rebuild:.......................................................... 26

    Section 12.05 Waiver of Subrogation:....................................................................... 27

    Section 12.06 Waiver:................................................................................................. 26

ARTICLE 13 CONDEMNATION............................................................................................. 27

    Section 13.01 Definitions: .......................................................................................... 27

    Section 13.02 Total or Substantial Partial Taking of Demised Premises: .................. 27

    Section 13.03 Restoration: .......................................................................................... 27

    Section 13.04 Taking for Temporary Use: ................................................................. 28

    Section 13.05 Disposition of Awards: ........................................................................ 27

ARTICLE 14 INDEMNITY. ..................................................................................................... 28

    Section 14.01 Claims:................................................................................................. 28

    Section 14.02 Tenant Indemnity:............................................................................... 28

ARTICLE 15 INSURANCE: ..................................................................................................... 28

    Section 15.01 Insurance:............................................................................................. 28

    Section 15.02 General Provisions with Respect to Insurance: ................................... 29

ARTICLE 16 FAILURE TO PERFORM, DEFAULTS, REMEDIES. ...................................... 30

    Section 16.01 Defaults, Conditional Limitation: ....................................................... 30

    Section 16.02 Landlord's Reentry: ............................................................................. 31

    Section 16.03 Deficiency:........................................................................................... 32

    Section 16.04 Agreed Final Damages:....................................................................... 32

    Section 16.05 Intentionally Deleted........................................................................... 32

    Section 16.06 Waiver of Right of Redemption:.......................................................... 32

    Section 16.07 Landlord's Right to Perform for Account of Tenant: ........................... 33

    Section 16.08 Additional Remedies, Waivers, Etc.:.................................................. 33

    Section 16.09 Distraint: .............................................................................................. 33

ARTICLE 17 TENANT'S CERTIFICATE................................................................................. 33

ARTICLE 18 RIGHT OF ACCESS. ......................................................................................... 33

    Section 18.01 Entry:................................................................................................... 33

    Section 18.02 Easement for Pipes:............................................................................. 33

ARTICLE 19 INTERPRETATION, NOTICE, MISCELLANEOUS......................................... 34

    Section 19.01 Interpretation:...................................................................................... 34

    Section 19.02 Construing Various Words and Phrases: ............................................. 35

    Section 19.03 No Oral Changes:................................................................................ 35

    Section 19.04 Communications: ................................................................................. 35

    Section 19.05 Merchants' Association: ...................................................................... 36

    Section 19.06 Method of Payment:............................................................................ 36

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 19.07  Successors and Assigns: ................................................................................ 36

Section 19.08  Responsibility of Tenant: .............................................................................. 36

Section 19.09  Holdover: ....................................................................................................... 36

Section 19.10  Size of Demised Premises ............................................................................. 36

Section 19.11  Liability of Landlord: .................................................................................... 37

Section 19.12  Waiver of Jury Trial: ..................................................................................... 37

Section 19.13  Temporary Utility Charges: .......................................................................... 37

Section 19.14  Interest: .......................................................................................................... 37

Section 19.15  Late Charge: ................................................................................................... 38

Section 19.16  Consequential Damages: ............................................................................... 38

Section 19.17  Intentionally Deleted ..................................................................................... 38

Section 19.18  Intentionally Deleted ..................................................................................... 38

Section 19.19  Real Estate Transfer Tax: .............................................................................. 38

Section 19.20  Financial Statements: ..................................................................................... 38

Section 19.21  Intentionally Deleted: .................................................................................... 38

Section 19.22  No Presumption Against Drafter: .................................................................. 38

Section 19.23  Solicitation of Business: ................................................................................ 38

Section 19.24  Accord and Satisfaction: ............................................................................... 38

Section 19.25  OFAC Compliance: ....................................................................................... 39

Section 19.26  Inability to Perform: ...................................................................................... 39

Section 19.27  Brokerage: ...................................................................................................... 39

Section 19.28  Covenant of Quiet Enjoyment: ...................................................................... 39

Section 19.29  Submission of Lease to Tenant: ..................................................................... 39

Section 19.30  Intentionally Deleted ..................................................................................... 39

Section 19.31  Construction - Adjacent Demised Premises: ................................................. 39

Section 19.32  Scaffolding: .................................................................................................... 40

Section 19.33  Contingencies ................................................................................................. 40

Section 19.34  Tenant Improvement Allowance .................................................................... 41

Section 19.35  Renewal Terms .............................................................................................. 42

Section 19.36  Guaranty ......................................................................................................... 42

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

LEASE dated June 28, 2019 between SERITAGE SRC FINANCE LLC, a Delaware limited liability company, whose address is 500 Fifth Avenue, Suite 1530, New York, New York 10110 ("Landlord") and PAINTED TREE SAN ANTONIO, LLC, a Texas limited liability company, whose address is 15400 Chenal Pkwy, Suite 200, Little Rock, Arkansas 72211 ("Tenant").

Landlord hereby leases to Tenant and Tenant hereby rents from Landlord the Demised Premises (as defined in Article I) for the Term provided for in Article IV hereof at the rent provided for in Article V hereof and on all of the terms and conditions set forth herein. Intending to be legally bound hereunder and in consideration of One and 00/100 ($1.00) Dollar and other good and valuable consideration, Landlord and Tenant hereby agree with each other as follows:

### ARTICLE 1    SUMMARY OF LEASE PROVISIONS.

The following terms shall be applicable to the various provisions of this Lease which refer to them:

Section 1.01    Demised Premises and the Shopping Center:

Demised Premises means a portion of the Building at a shopping center located in Park North, San Antonio, Texas. The portion of the Building leased to Tenant consists of approximately thirty-seven thousand thirty-five (37,035) square feet of Floor Area and is designated as "Demised Premises" on Exhibit A. Exhibit A is attached hereto and made a part hereof. The Demised Premises includes any alterations, additions or repairs made thereto. The Shopping Center means the land and improvements currently known as "Park North", as it may, from time to time, be modified. Landlord reserves the right to change the name of the Shopping Center from time to time. Notwithstanding the foregoing, for purposes of determining the Minimum Rent, additional rent, any other Tax Contribution and Tenant Contribution (as defined herein), and the Tenant Allowance (as defined herein), the Floor Area of the Demised Premises will be based upon a stipulated size of thirty-six thousand six hundred sixty-nine (36,669) square feet, which reflects a deletion of three hundred sixty-six (366) square feet of area previously utilized as a freight elevator within the Demised Premises.

Section 1.02    Building:

Means the building in which the Demised Premises is located, as shown on Exhibit A.

Section 1.03    Landlord's Parcel:

Means the parcel of land owned by Landlord as shown on Exhibit A-1 and the improvements erected or installed or to be installed or erected thereon by Landlord.

Section 1.04    Expiration Date:

Means the tenth (10th) anniversary of the last day of the month in which the Rent Commencement Date occurs.

Section 1.05    Rent:

(a)    Minimum Rent: Minimum Rent shall be payable as follows:

| Period | Annual Rent | Rent Per Square Foot |
|--------|-------------|----------------------|
| Lease Years 1 thru 5 | $416,193.15 | $11.35 |
| Lease Years 6 thru 10 | $457,995.81 | $12.49 |
| Lease Years 11 thru 15 ("First Renewal Term") | $503,465.37 | $13.73 |

01520049-3                                                    1

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 1.06   Taxes:

Tax Contributions:  See Section 5.03.

Section 1.07   Tenant's Contribution (Common Area Expenses):

See Section 11.04.

Section 1.08   Security:   Twenty-Five Thousand Dollars ($25,000.00)

Section 1.09   Use:

(a)   Permitted Uses:

Tenant shall continuously use and occupy the Demised Premises for the purpose of the operation of a retail home décor marketplace consistent with, and have equal or better quality as, a typical Painted Tree Marketplace as same are operated as of the date hereof, including the licensing of kiosks to individual vendors. Individual vendors are solely responsible for the stock, inventory and management of their respective kiosks, and such vendors or Tenant's staff shall operate such kiosks during normal business hours (Monday – Sunday, 10AM – 8PM). Tenant maintains a full-time staff of employees to provide customer service and handle central registry, security and general maintenance and upkeep of the Demised Premises. Tenant maintains strict guidelines in order to keep a consistent and professional type and quality of vendor active within the store. In no event shall the Demised Premises be used as a flea market, swap meet, second hand store, pawnshop, or similar enterprise. As incidental to the foregoing principal and primary use, Tenant, and/or a single applicable vendor, shall have the right to use a portion of the Demised Premises not to exceed 500 square feet, for the operation of a café, provided that such use shall not have a separate entrance or exterior signage and shall not violate, conflict with or duplicate the then existing principal or exclusive use or trade name of any leases or occupancy agreements in the Landlord's Parcel; and are not otherwise prohibited by the Lease or applicable laws. Tenant and Tenant's vendors shall also have the right to conduct an sell various workshops, events and such other activations on an incidental basis and are directly related to Tenant's primary use of the Demised Premises.  Notwithstanding the foregoing, in no event shall Tenant sue the Demised Premises for any other use or purpose and in no event shall the Demised Premises be used in violation of the exclusives and restrictions set forth on Exhibit F hereto, subject to Section 19.33(a) regarding the Bed Bath & Beyond Waiver.

(b)   Tenant's Trade Name:  Painted Tree Marketplace.

Section 1.10   Broker: PeelCRE, LLC

Section 1.11   Notice Addresses:

(a)   Landlord's Notice Address:

500 Fifth Avenue, Suite 1530
New York, New York 10110
Attention: Executive Vice President, Operations & Leasing

(b)   Landlord's Notice Copy Address:

500 Fifth Avenue, Suite 1530
New York, New York 10110
Attention: Executive Vice President, General Counsel

(c)   Tenant's Notice Address:

15400 Chenal Pkwy, Suite 200
Little Rock, AR 72211
Attention: Michael Cavallo and Corey Gillum, Owners

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

ARTICLE 2    DEFINITIONS.

As used herein, the following words and phrases have the following meanings:

Section 2.01    Pro Rata Share:

Means the proportion that the Floor Area of the Demised Premises bears to the Floor Area of all the rentable space in Landlord's Parcel.  Tenant acknowledges that Tenant's Pro Rata Share may change during the Term and that Landlord has made no representations regarding same.

Section 2.02    Landlord's Parcel Common Area:

Means the portions of Landlord's Parcel designated for common use by occupants of Landlord's Parcel from time to time by Landlord including the sidewalks, entrances, exits, portions of the Parking Area located within Landlord's Parcel, service roads, means of ingress and egress, landscaping, any enclosed mall, common utilities and sewer lines and other common facilities, common roadways located in Landlord's Parcel or located outside of Landlord's Parcel, but serving Landlord's Parcel.

Section 2.03    Common Area:

Means the portions of the Shopping Center designated for common use from time to time pursuant to the REA, excluding Landlord's Parcel Common Area.  References to the Common Area include the parts of the Shopping Center designated as a Parking Area by the REA from time to time, and, if the REA designates, any enclosed mall constructed in the Shopping Center.

Section 2.04    Expiration Date:

Means the last day of the Term.  If the Term has been extended or this Lease has been renewed, the Expiration Date shall be the last day of the Term as so extended or renewed.  If this Lease is cancelled or terminated prior to the originally fixed Expiration Date, then the Expiration Date shall be the date on which this Lease is so cancelled or terminated.  But if this Lease is cancelled or terminated prior to the originally fixed Expiration Date by reason of Tenant's Default, Tenant's liability under the provisions of this Lease shall continue until the date the Term would have expired and such cancellation or termination not occurred.

Section 2.05    Floor Area:

Means the actual number of square feet of floor space (including selling space in the basement) of premises occupied by any tenant of the Landlord's Parcel, measured to the exterior faces of all exterior walls and internal corridors, including any fire corridors, and to the center lines of party walls.

Section 2.06    Force Majeure:

Means any of the following events:  Acts of God; strikes, lockouts, or labor difficulty; explosion, sabotage, accident, riot or civil commotion; act of war; fire or other casualty; legal requirements; delays caused by the other party; any causes beyond the reasonable control of a party (except that the inability to obtain funds shall not be deemed to be a Force Majeure).  Notwithstanding anything herein contained the provisions of this Section shall not be applicable to Tenant's obligations to pay Rent (as hereinafter defined) or any other sums or charges payable by Tenant hereunder.

Section 2.07    Insurance Requirements:

Means the applicable provisions of the insurance policies carried by Landlord covering the Demised Premises, the Building, the Landlord's Parcel Common Areas or any part thereof; all requirements of the issuer of any such policy; and all orders, rules, regulations and other requirements of any insurance service office which serves the community in which the Landlord's Parcel is situated.

01520049-3                                                   3

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 2.08    Landlord's Work:

Means the construction and other work designated as Landlord's Work in Exhibit B.

Section 2.09    Master Lease:

Means a lease of the Demised Premises, the Building or Landlord's Parcel, as the case may be, or a lease of the ground underlying the Demised Premises, the Building or Landlord's Parcel, between the owner thereof, as lessor, and Landlord, as lessee, giving rise to Landlord's rights and privileges in the Demised Premises, the Building, Landlord's Parcel or such underlying land.

Section 2.10    Master Lessor:

Means the owner of the Lessor's interest under the Master Lease.

Section 2.11    Mortgage:

Means any mortgage, deed to secure debt, trust indenture, or deed of trust which may now or hereafter affect, encumber or be a lien upon the Demised Premises, the Building or Landlord's Parcel, or Landlord's interest therein; and any spreading agreements, future advances made pursuant to any existing Mortgage, renewals, modifications, consolidations, replacements and extensions thereof.

Section 2.12    Mortgagee:

Means the holder of any Mortgage or any lender providing financing to Landlord, at any time.

Section 2.13    Parking Area:

Means those portions of Landlord's Parcel which are designated as such by Landlord from time to time.

Section 2.14    Person:

Means an individual, fiduciary, estate, trust, partnership, limited liability company, firm, association, corporation, or other organization, or a government or governmental authority.

Section 2.15    REA:

Means the Amended and Restated Construction, Operation and Reciprocal Easement Agreement dated October 23, 2006 by and between PN Plaza Investments, L.P., a Delaware limited partnership and Sears, Roebuck and Co., a New York corporation.

Section 2.16    Rent Commencement Date:

The Rent Commencement Date is the date which is the two hundred twenty-fifth (225th) day next following the Commencement Date.

Section 2.17    Repair:

Includes the words "replacement and restoration", "replacement or restoration", "replace and restore", "replace or restore", "replacing and restoring", "replacing or restoring", as the case may be.

Section 2.18    Supplemental Agreement: None.

Section 2.19    Tenant's Agents:

Includes Tenant's employees, agents, servants, licensees, tenants, subtenants, assignees, contractors, subcontractors, heirs, successors, legatees, and devisees.

01520049-3                                                 4

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 2.20   Tenant's Work:

Tenant's Work means the construction and other work designated as Tenant's Work set forth in the Plans and Specifications.

Section 2.21   Term:

The Term is as set forth in Section 4.01 and includes any renewals and extensions thereof.

Section 2.22   Year:

For the purposes of this Lease, the word "year", wherever appearing herein, shall mean a calendar year commencing on January 1st and ending on the following December 31st . The foregoing definition of the word "year" shall not be applicable to a "Lease Year" or "Contribution Year" (all separately defined herein).

Section 2.23   Lease Year

For the purposes of this Lease, the word " Lease Year", wherever appearing herein, shall have the following meaning:  The first Lease Year shall commence on the Rent Commencement Date and shall terminate on the date immediately preceding the first (1st) anniversary of the Rent Commencement Date, if the Rent Commencement Date is the first day of a month, or on the last day of the month in which the first (1st) anniversary of the Rent Commencement Date occurs, if the Rent Commencement Date is not the first day of a month; and each succeeding twelve (12) month period thereafter shall be a "Lease Year," except that the last Lease Year shall end on the Expiration Date.

ARTICLE 3   CONDITION OF DEMISED PREMISES.

Section 3.01   Landlord's Work:

(a)    Within a reasonable time after this Lease is executed by both parties and counterparts exchanged, Landlord shall apply to the appropriate governmental authorities for any building permit which shall be required in connection with the performance of Landlord's Work.

(b)    Within a reasonable time after the issuance of a building permit referred to in subsection (a), or if no building permit is required, within a reasonable time after the execution of this Lease, Landlord shall commence to perform Landlord's Work.  Landlord shall diligently prosecute Landlord's Work to completion.

(c)    Except for the performance of Landlord's Work, Tenant shall accept possession of the Demised Premises in its present "as is", "where is" condition.

Section 3.02   Delivery of Possession:

(a)    Delivery of possession shall be deemed to have occurred when Landlord's Work shall have been substantially completed, and to the extent Tenant may commence Tenant's Work and Landlord shall have tendered possession of the Demised Premises to Tenant (such date referred to as the "Commencement Date").  In no event shall the Commencement Date occur prior to December 1, 2019.  Landlord shall provide with at least forty-five (45) days prior written notice of the Commencement Date. Landlord's Work shall be deemed to be "substantially completed" for all purposes under this Lease if and when the Landlord's Work has been completed, except for minor, finish-out and so-called punch list items (collectively, "Punch List Items") in substantial compliance with the plans and specifications therefor.  Notwithstanding the foregoing, the Demised Premises shall be deemed to have been "substantially completed" upon Landlord's delivery of possession thereof to Tenant, unless Tenant, within ten (10) days after receipt of such possession, notifies Landlord in writing that the Demised Premises have not been "substantially complete" and the specific, detailed reasons therefor.  Tenant agrees that, within ten (10) days after Landlord's delivery of the Demised Premises to Tenant, Tenant shall inspect the Demised Premises with Landlord or its representative and execute Landlord's standard punch list ("Punch List") which shall identify any uncompleted portions of Landlord's Work agreed to by Landlord and Tenant. Landlord shall subsequently cause such Punch List to be completed in a timely manner, and further verified by Tenant.

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(b)    Upon request of Landlord, Tenant shall execute a memorandum setting forth the actual Commencement Date, Rent Commencement Date and Expiration Date in the form attached hereto as Exhibit D. If Landlord fails to deliver possession of the Demised Premises on the scheduled Commencement Date, Landlord shall not be liable for any damage resulting from such failure. No such failure to give possession on the scheduled Commencement Date shall affect the other obligations of Tenant under this Lease.

(c)    Landlord and Tenant agree that subject to any Tenant Delay (as defined herein) and Force Majeure, Landlord shall use commercially reasonable efforts to have the Commencement Date occur on or before one hundred fifty (150) days following Landlord's waiver or receipt of the Governmental Approvals (as defined in Section 19.33(b) herein) ("Estimated Commencement Date"). A "Tenant Delay" shall mean any delay in the completion of Landlord's Work as a result of: (a) Tenant's failure to approve plans and specifications and/or construction cost estimates or bids; (b) Tenant's request for materials, finishes or installations other than Landlord's standard except those, if any, that Landlord shall have expressly agreed to furnish without extension of time; (c) Tenant's change in any plans or specifications; (d) Tenant's failure to pay any reimbursements to Landlord when due; (e) the acts or omissions of Tenant. Subject to any delays due to Force Majeure and any Tenant Delay, in the event the Commencement Date does not occur within two hundred seventy (270) days following the Estimated Commencement Date ("Outside Date"), Tenant may, as its sole remedy, terminate this Lease upon notice to Landlord given within thirty (30) days after the Outside Date, provided that the Commencement Date has not occurred during such thirty (30) day period. Upon such termination, the parties shall be relieved of all obligations under this Lease, except for accrued liabilities and those obligations that expressly survive termination of this Lease. The Estimated Commencement Date and Outside Date shall each be tolled by the number of days of any Force Majeure and/or Tenant Delay. Except as provided in this paragraph, Landlord shall not be subject to any liability for failure to give possession on or before the Estimated Commencement Date or Outside Date and the validity of this Lease shall not be impaired under such circumstances.

Section 3.03    Tenant's Right of Entry:

Tenant may, with Landlord's prior consent, enter the Demised Premises before Landlord's Work is completed for the purposes of inspecting the Demised Premises and making measurements. Upon and after any entry to the Demised Premises by Tenant, all of Tenant's obligations under this Lease shall be applicable, including Tenant's obligation to maintain insurance, except for Tenant's obligation to pay Rent, which shall commence on the Rent Commencement Date. Tenant covenants and agrees not to interfere with the performance of Landlord's Work during any such entry.

Section 3.04    Tenant's Work:

(a)    Within sixty (60) days after the later of (i) the date of this Lease, or (ii) all contingencies set forth in Section 19.33 herein have been either satisfied or waived by Landlord, Tenant shall submit to Landlord proposed detailed specifications and working drawings for the performance of Tenant's Work based on the initial LOD of the Demised Premises and initial plans submitted to Tenant by Landlord. The proposed detailed plans and working drawings are referred to in this Lease as "Proposed Specifications". Landlord shall have a period of thirty (30) days either to approve or to disapprove the Proposed Specifications. If Landlord does not approve the Proposed Specifications, Landlord shall return the Proposed Specifications to Tenant and notify Tenant of any changes it desires to the Proposed Specifications, in which event, Tenant shall modify the Proposed Specifications in accordance with Landlord's requirements and shall return them as modified to Landlord within the following fifteen (15) days. The approved Proposed Specifications shall be a part of this Lease and shall be referred to as the "Plans and Specifications".

(b)    Within ten (10) days after the Proposed Specifications have been approved by Landlord, Tenant shall apply for all approvals and permits legally required in connection with the performance of Tenant's Work. If necessary, Landlord shall join in the execution of the applications. At Tenant's request, Landlord shall cooperate with the prosecution of the application. Tenant shall bear all expenses in connection with the applications including any expenses incurred by Landlord. Tenant shall prosecute the applications diligently and use its

01520049-3                                6

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

best efforts to seek the approvals and permits applied for.  Tenant shall advise Landlord of its progress from time to time and upon request by Landlord.

(c)    Within ten (10) days after all requisite approvals have been granted and after the Commencement Date, Tenant shall commence the performance of Tenant's Work and shall diligently prosecute Tenant's Work to completion.

(d)    Tenant shall perform all of Tenant's Work in accordance with the Plans and Specifications, all legal requirements, all Insurance Requirements and in a good and workmanlike manner free of any unsafe or hazardous conditions.  Any review of the Proposed Specifications, Plans and Specifications, or any of Tenant's Work, shall not constitute an approval of architectural or engineering design, compliance with any building codes or other restrictions and limitations, or otherwise constitute any assumption of liability or responsibility by Landlord or its agents or contractors for the quality or adequacy of any design of, or work performed by Tenant's contractors or subcontractors, whether with respect to labor, material or otherwise.  Tenant hereby expressly acknowledges that no such inspection, approval or review shall in any way limit the obligations of Tenant or the rights of Landlord under the Lease, and, without limitation on the foregoing, Tenant's obligations under the indemnity provisions of this Lease shall apply to any Claims (as hereinafter defined) arising or alleged to have arisen in connection with Tenant's Work.

(e)    Tenant shall employ, or cause to be employed, only such labor, contractors or subcontractors, as will not result in:  (i) jurisdictional disputes with any labor union; (ii) strikes against or involving Landlord, the Demised Premises, the Building or the Landlord's Parcel; or (iii) cause any conflict with any union contract now or hereafter formed in which Landlord, its contractors or subcontractors may be a party.  Tenant's failure to comply with the provisions of this subsection (e) shall be a Default under this Lease.  In addition to the remedies afforded Landlord under this Lease if Tenant is in Default, Landlord shall have the additional remedy of correcting or remedying such dispute on behalf of Tenant, and Tenant shall remain liable to Landlord for any expenses Landlord may incur.

(f)    Tenant shall, promptly after the completion of Tenant's Work, furnish Landlord with a set of "as-built" plans and specifications therefor in AutoCAD format.

(g)    If any governmental authority requires that a certificate of occupancy (or its equivalent) be issued with respect to the Demised Premises, Tenant shall apply for, and obtain such document.

ARTICLE 4    TERM.

Section 4.01    Term:

Tenant's obligations under this Lease shall commence on the same date this Lease is fully executed except for the payment of Rent, which shall commence on the Rent Commencement Date.  The Term of this Lease shall commence on the Commencement Date.  The Term shall expire on the Expiration Date.

Section 4.02    Non-Recordation:

Tenant and Landlord shall not record this Lease, or any short form or memorandum of lease.

ARTICLE 5    RENT, SECURITY, TAX CONTRIBUTIONS.

Section 5.01    Minimum Rent:

Commencing on the Rent Commencement Date, Tenant shall pay Minimum Rent to Landlord.  Minimum Rent shall be payable without notice or demand.  Minimum Rent shall be payable at the rates set forth in Article I.  Minimum Rent shall be payable in equal monthly installments.  Each monthly installment shall be due in advance.  The first monthly installment shall be due on the Rent Commencement Date.  Each subsequent installment shall be due on the first day of each month during the Term.  If the Rent Commencement Date is a day other than the first day of the month, the first installment shall be one thirtieth of a normal monthly installment for each day during the period commencing with the Rent Commencement Date up

01520049-3                                        7

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

to and including the last day of that month.  If the Expiration Date occurs on a day other than the last day of any month, Minimum Rent for the last month during the Term shall be prorated in the same manner.

Section 5.02    Intentionally Deleted.

Section 5.03    Tax Contributions:

(a)    In addition to all other charges Tenant is required to pay hereunder, Tenant shall pay "Tax Contributions" to Landlord commencing on the Rent Commencement Date.

(b)    The following terms have the following meanings:

(i)    "Tax Contributions" means Tenant's Pro Rata Share of Impositions.

(ii)    "Impositions" means all taxes, assessments (special, general or otherwise, foreseen or unforeseen) and all other governmental charges assessed, levied or imposed against the Building and/or Landlord's Parcel during any calendar year occurring wholly or partially within the Term.  If any governmental authority imposes, assesses or levies tax on rent or any other tax upon Landlord as a substitute in whole or in part for or in addition to any real estate taxes or assessments, the substitute or additional tax shall be deemed to be an Imposition.  Impositions shall also include the aggregate of all reasonable attorneys' fees and appraisers' fees and all disbursements, court costs and other similar items paid or incurred by Landlord during the applicable calendar year with respect to any proceedings challenging the tax rate, assessed valuation or other factors influencing the amount of taxes, whether or not such action results in a reduction in the amount of taxes. Impositions shall exclude the following: (i) any franchise, business license, corporate, transfer tax, succession, capital levy, excess profit or net profit taxes unless such taxes are imposed in lieu of, or in substitution for, ad valorem real property taxes or assessments; and (ii) interest or penalties for late payments incurred as a result of Landlord's failure to pay when due.

(c)    If any calendar year does not fall entirely within the Term, then, within a reasonable time after the Rent Commencement Date or Expiration Date, Landlord and Tenant shall adjust Tax Contributions with respect to any such calendar year so that Tenant shall bear Tax Contributions which are attributable to the Term and Landlord shall bear the remainder thereof.

(d)    Tenant shall pay Tenant's Tax Contributions to Landlord as follows:

(i)    Tenant shall pay monthly installments on account of Tax Contributions to Landlord.  Installments shall be paid in the same manner and at the same time as Minimum Rent.  Until the actual amount of Tax Contributions payable with respect to the first calendar year are actually determined, estimated monthly installments with respect to that calendar year shall be  Six Thousand One Hundred Eleven and 50/100 Dollars ($6,111.50) ($2.00 per square foot of Floor Area of the Demised Premises on an annual basis).  After Tax Contributions for the first calendar year are finally determined, each monthly installment shall be a fraction of Tenant's Tax Contributions for the previous calendar year.  The numerator of the fraction shall be one.  The denominator of the fraction shall be the number of months in the previous calendar year.

(ii)    If the installments payable with respect to any calendar year shall exceed Tax Contributions for that calendar year, Landlord shall refund the difference to Tenant promptly.  If the installments payable with respect to any calendar year shall be less than Tax Contributions for that calendar year, Tenant shall reimburse Landlord for the difference in equal monthly installments during the succeeding six (6) months of the calendar year. Each bill regarding Tax Contributions shall be final and conclusive as to Tenant, its successors or assigns, as to the matters stated in the bill, if no objection is raised with respect thereto within ninety (90) days after submission of each such bill to Tenant, time being of the essence with respect to such objection.

(e)    If any building located on Landlord's Parcel is assessed as part of a separate tax lot from the tax lot of which the Building is a part, at Landlord's election, for the

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

purpose of calculating Tenant's Tax Contributions the Floor Area of such other building and the Impositions attributable to the assessed valuation of that other building shall be excluded.

(f)     If Landlord shall receive a refund of Impositions as to which Tenant has paid its Pro Rata Share, Tenant shall receive its Pro Rata Share thereof after deducting the costs, fees and expenses incurred by Landlord in connection with obtaining such refund.

(g)     If any land or building shall be added to the Landlord's Parcel from time to time, Tenant shall be responsible for Tenant's Pro Rata Share of Impositions payable on such additional land from the time that the Impositions are first assessed and payable, and on any additional buildings from the time they are first assessed as completed structures.

Section 5.04    Intentionally Omitted:

Section 5.05    Contribution Year:

(a)     Except as provided in subsection (b), "Contribution Year" shall mean each twelve (12) month period during the Term commencing on January 1st and ending on December 31st.

(b)     (i)     The first Contribution Year shall commence on the Rent Commencement Date and shall end on the December 31st next following the Rent Commencement Date. The last Contribution Year shall end on the Expiration Date.

(ii)     Landlord shall have the option to change the Contribution Year at any time. The option may be exercised by giving a notice of the change to Tenant. The parties recognize that if the Contribution Year is changed, there will be a period of time between the last full Contribution Year as it was before the change and the first full Contribution Year after giving effect to the change. This period is referred to in this Lease as the "Interim Period". If the Interim Period consists of less than six (6) months, the Interim Period shall be added to the first Contribution Year to occur after giving effect to the change. If the Interim Period consists of six (6) months or more, the Interim Period shall be treated as a Contribution Year.

Section 5.06    Definition of Gross Sales:

"Gross Sales" means the aggregate selling prices of all merchandise sold or delivered in, at, on or from any part of the Demised Premises and the charges for all services of any sort (including receipts from vending machines and revenues from the rental of goods or merchandise), sold or performed in, at, on or from any part of the Demised Premises, including, all sales made by mail, catalogue, computer, tablet, telephone, electronic or other technology-based system now existing or developed in the future which sales are placed or made from the Demised Premises or received at the Demised Premises or filled from inventory located at the Demised Premises. Gross Sales includes sales and charges for cash or credit and regardless of collection in the case of the latter. Gross Sales excludes (a) refunds made by Tenant to its customers for merchandise returned to Tenant; (b) exchange of merchandise between stores of Tenant where such exchanges are made solely for the convenient operation of Tenant's business and not for the purpose of consummating a sale at another location which has been made, in fact, at, in, on or from the Demised Premises; and (c) the amount of any city, county or state sales tax on such sales paid to a taxing authority by Tenant (but not by any vendor of Tenant). A sale shall be deemed to be made in the Demised Premises: (x) if an order therefor is secured or received in the Demised Premises or elsewhere, or (y) if, pursuant to mail, telegraph, telephone or other similar means, orders are received or filled at or from the Demised Premises.

Section 5.07    Sales Reports:

Within thirty (30) days after the expiration of each Lease Year, Tenant shall submit to Landlord a statement, certified as complete and correct by a an officer of Tenant, showing the amount of Gross Sales for such preceding Lease Year and an itemization of all claimed exclusions therefrom. Tenant shall require any licensees and subtenants to furnish similar statements. The report shall be certified as complete and correct by Tenant's principal financial officer.

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 5.08    Intentionally Deleted.

Section 5.09    Intentionally Deleted.

Section 5.10    Confidential Information:

Landlord shall hold in confidence all sales figures and related information obtained from Tenant's records except as may be necessary for the enforcement of Landlord's rights under this Lease, in connection with prospective financing or prospective sale of the Demised Premises, any tax proceedings, or pursuant to any legal requirements. Landlord shall in no event be construed, held or become in any way or for any purpose a partner, associate or joint venturer of Tenant or any party associated with Tenant in the conduct of Tenant's business or otherwise.

Section 5.11    Payment of Rent:

(a)    "Rent" means Minimum Rent, Tenant's Contribution, Tax Contributions, and Special Taxes.

(b)    Commencing on the Rent Commencement Date, Rent shall be paid without notice, demand, counterclaim, offset, deduction, defense, or abatement.

(c)    In addition to the Rent, Tenant covenants and agrees to pay to Landlord all other sums and charges which are to be paid by Tenant in connection with or pursuant to the provisions of this Lease ("additional rent"). Except as otherwise provided in this Lease, additional rent shall be due and payable within ten (10) days following the date on which Tenant is given notice that the additional rent is due.

(d)    All Rent payable under this Lease shall be payable at Landlord's address as set forth in Section 19.04A or at such other address as Landlord shall designate by giving notice to Tenant.

(e)    If Tenant shall fail to pay any, Tax Contributions, Tenant's Contributions or Special Taxes, or any other charges payable hereunder whether or not same are called Rent or additional rent, Landlord shall have all remedies provided for in this Lease or at law for nonpayment of Minimum Rent. Tenant's obligations (accruing during the Term) including, without limitation, its obligations pursuant to Article V, Article VII and Section 11.04 hereof, shall survive the expiration or sooner termination of this Lease.

Section 5.12    Security:

(a)    Tenant shall deposit with Landlord an amount equal to Twenty-Five Thousand and 00/100 Dollars ($25,000.00) ("Security") in two (2) installments for the full and faithful performance by Tenant of all obligations of Tenant under this Lease or in connection with this Lease. Within ten (10) days following Landlord's waiver or receipt of the Governmental Approvals and Bed Bath & Beyond Waiver as set forth in Section 19.33 herein, Tenant shall deposit with Landlord the first (1st) installment of the Security in an amount equal to Fifteen Thousand and 00/100 Dollars ($15,000.00). Within ten (10) days following the Commencement Date, Tenant shall deposit with Landlord the second (2nd) and final installment of the Security in an amount equal to Ten Thousand and 00/100 Dollars ($10,000.00). If a "Default" (as defined in Section 16.01) by Tenant occurs, Landlord may use, apply or retain the whole or any part of the Security for the payment of (i) any Rent or additional rent or any other sums of money which Tenant may not have paid or which may become due after the occurrence of a Default, (ii) any sum expended by Landlord on Tenant's behalf in accordance with the provisions of this Lease, or (iii) any sum which the Landlord may expend or be required to expend by reason of such Default, including any damages or deficiency in the reletting of the Demised Premises in connection with Article XVI hereof. The use, application or retention of the Security or portion thereof by Landlord shall not prevent Landlord from exercising any other right or remedy provided for hereunder or at law and shall not operate as a limitation on any recovery to which Landlord may otherwise be entitled. In the case of every such application or retention Tenant shall on demand, pay to Landlord the sum so applied or retained which shall be added to the Security so that the same shall be restored to its original amount.

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(b)    No interest shall accrue on the Security for the benefit of Tenant; and if legally permissible, Landlord shall be entitled to commingle the Security with Landlord's other funds.

If Tenant shall fully and faithfully comply with all of the provisions of this Lease and is not otherwise in Default, commencing with the first (1st) month of the fifth (5th) Lease Year following the Rent Commencement Date, the Deposit shall be utilized by Landlord to provide Tenant a credit against the Minimum Rent payable for the first (1st) full month only of the fifth (5th) Lease Year.

ARTICLE 6 CONDITION OF DEMISED PREMISES AND SIGNS.

Section 6.01    No Representation, Etc.:

Landlord has made no representation, covenants or warranties with respect to the Demised Premises except as expressly set forth in this Lease.

Section 6.02    Mechanics' Liens:

If any mechanic's or materialman's lien is filed against the Demised Premises, Landlord's Parcel, the Building or the Shopping Center as a result of any additions, alterations, repairs, installations or improvements made by Tenant, or any other work or act of Tenant, Tenant shall discharge or bond same within twenty (20) days from the filing of the lien. If Tenant shall fail to discharge or bond the lien, Landlord may bond or pay the lien or claim for the account of Tenant without inquiring into the validity of the lien or claim and Tenant's failure to discharge or bond the lien shall constitute a Default hereunder, notwithstanding Landlord's election to cure. Nothing contained in this Lease shall be construed as a consent on the part of Landlord to subject Landlord's estate in the Demised Premises to any lien or liability under the lien law of the State in which the Demised Premises is located.

Section 6.03    Signs:

(a)    Tenant shall have the right to install and maintain signs affixed to the exterior of the Demised Premises, provided that such signs shall not reduce the signage available to other tenants in the Building, subject to: (i) the written approval of Landlord as to dimensions, material, content, location and design, (ii) applicable legal requirements, (iii) Insurance Requirements, and (iv) the terms and conditions of the REA. Tenant shall obtain and pay for all required permits and licenses relating to such signs. Copies of all such permits and licenses shall be delivered to Landlord upon request.

(b)    Tenant has submitted to Landlord the sign plans annexed hereto as Exhibit C ("Tenant's Sign Plans"), which includes designs of the sign(s) Tenant desires to place on the Demised Premises. Landlord agrees that Tenant may install a sign(s) on the front of the Demised Premises, substantially similar to the signs shown on Tenant's Sign Plans, provided that such sign(s) shall not reduce the signage available to other tenants in the Building, subject to (i) the written approval of Landlord as to dimensions, material, content, location and design (to the extent not shown on Tenant's Sign Plans), which approval shall not be unreasonably withheld, delayed or conditioned, provided such signs are architecturally compatible with the Building and Landlord's Parcel, (ii) applicable legal requirements, (iii) Insurance Requirements, and (iv) the terms and conditions of the REA.

(c)    Tenant shall not have the right to maintain or install any other signs in or at the Building or the Shopping Center or visible from the outside of the Demised Premises (other than as set forth in (a) and (b) above or in (f) below), other than neatly lettered professionally made signs, stickers or decals located inside the Demised Premises, unless mutually agreed to by Landlord and Tenant.

(d)    If necessary in order to paint or to make repairs, alterations or improvements in or to the Demised Premises or the Pylon, Landlord shall have the right to remove any of Tenant's signs, provided, however, that Landlord shall, at its expense, replace any such sign promptly after such work is completed by Landlord. Landlord shall proceed with due diligence in the performance of any such work.

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(e)     Tenant may not install signs, lamps or other illumination devices in or upon the Demised Premises if the lamps, signs or devices flash or go on and off intermittently.

(f)     Tenant shall have the right to install its sign on the Shopping Center pylon ("Pylon"), subject to legal requirements and subject to the sign provisions of other leases covering a portion(s) of the Building or Shopping Center in accordance with the following provisions:

(i)     Tenant may install its sign in the sign panel in the location shown on Exhibit C.

(ii)    Tenant's sign(s) shall be subject to (a) the written approval of Landlord as to dimensions, material, content, location and design (to the extent not shown on Exhibit C), (b) applicable legal requirements, (c) Insurance Requirements and (d) the terms and conditions of the REA. Tenant shall obtain and pay for all required permits and licenses relating to such sign. Copies of all such permits and licenses shall be delivered to Landlord within a reasonable time after they are issued.

(iii)   Tenant shall, at its sole cost and expense, keep its sign located on the Pylon in good order and repair.

Section 6.04    Insurance Covering Tenant's Work:

Tenant shall not make any alterations, repairs or installations, or perform Tenant's Work or any other work to or on the Demised Premises unless prior to the commencement of such work Tenant shall obtain or have its contractors obtain (and during the performance of such work keep in force): (i) commercial general liability insurance including products/completed operations with minimum limits of Five Million and 00/100 ($5,000,000.00) Dollars per occurrence (limits may be a combination of primary and excess/umbrella policies), (ii) auto liability insurance with minimum limits of One Million and 00/100 ($1,000,000.00) Dollars combined single limit per accident, (iii) worker's compensation insurance meeting all statutory requirements for the state where the Demised Premises is located, (iv) employer's liability insurance with limits of Five Hundred Thousand and 00/100 ($500,000.00) Dollars per accident, Five Hundred Thousand Dollars disease each employee, Five Hundred Thousand and 00/100 ($500,000.00) Dollars policy limit, to cover every contractor to be employed, (v) a completed operations endorsement to the commercial general liability insurance policy referred to above, (vi) builder's risk insurance, completed value form (or its equivalent), covering all physical loss, in an amount and subject to policy conditions reasonably satisfactory to Landlord, and (vii) any other insurance reasonably required by Landlord. Tenant shall cause all contractors to name Landlord, Landlord's managing agent, and any Master Lessor and Mortgagee as additional insured on the commercial general liability policies (primary and excess/umbrella) and all policies shall be endorsed to contain a waiver of subrogation in favor of Landlord Indemnitees (as hereinafter defined). Such coverages shall be primary as respects any insurance or self-insurance maintained by Landlord Indemnities. Prior to the commencement of such work, Tenant shall deliver certificates of insurance evidencing the required coverages in this Section 6.04 and copies of additional insured and waiver of subrogation endorsements to Landlord.

ARTICLE 7    REPAIRS, ALTERATIONS, COMPLIANCE, SURRENDER.

Section 7.01    Repairs by Landlord:

Upon reasonable notice from Tenant, Landlord shall make or cause to be made necessary repairs to the roof and structural repairs to the foundation, exterior walls and any load-bearing interior walls of the Demised Premises (but excluding all windows, plate glass, doors and any fixtures and appurtenances composed of glass), excepting any damage caused by any act, omission or negligence of Tenant, Tenant's Agents or Tenant's invitees.

Section 7.02    Repairs and Maintenance by Tenant:

Except for repairs Landlord is specifically obligated to make or cause to be made hereunder, Tenant shall make all repairs to the Demised Premises necessary or desirable to keep the Demised Premises in good order and repair and in a safe, dry and tenantable condition. Without limiting the generality of the foregoing, Tenant shall be specifically required to make

01520049-3                                         12

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

repairs (a) to that portion of any pipes, lines, ducts, wires, or conduits that service Tenant and are contained within the Demised Premises or which service the Demised Premises exclusively and are located outside of the Demised Premises, provided, however, if such pipes, lines, ducts, wires or conduits are located in other premises or underground in the Common Area or Landlord's Parcel Common Areas, Landlord shall, promptly after receipt of notice regarding the necessity for such repairs, perform such repairs the cost of which may be included as part of the Common Area Expenses (as defined in Section 11.04(a) herein); (b) to windows, plate glass, doors, and any fixtures or appurtenances composed of glass; (c) to Tenant's signs, (d) to any heating or air conditioning system and equipment installed in or servicing the Demised Premises; and (e) to the Demised Premises, the Building or the Shopping Center when repairs to the same are necessitated by any act or omission of Tenant, or the failure of Tenant to perform its obligations under this Lease. Tenant shall keep the Demised Premises in a clean and sanitary condition, free from vermin and escaping offensive odors. From and after the Commencement Date, Tenant shall obtain and keep in full force and effect during the Term, at its own cost and expense, a maintenance contract on the heating, ventilation and air conditioning system and shall upon request, provide Landlord with evidence thereof.

Section 7.03    Approval by Landlord of Repairs and Alterations:

Tenant may not make alterations to the Demised Premises, without the prior written consent of Landlord. If Landlord grants consent, any such alterations shall be performed in a good and workmanlike manner in accordance with all Insurance Requirements and applicable legal requirements.

Tenant shall give Landlord prompt notice of any repair or alteration required or permitted to be performed by Tenant under any provision of this Lease if the reasonable cost of the repair or alteration exceeds Twenty-five Thousand and 00/100 ($25,000.00) Dollars. Except in the event of an emergency, if within ten (10) days after Tenant's notice is given, Landlord shall give notice to Tenant that it desires to approve detailed specifications and working drawings with respect to the proposed repair or alterations, then Tenant shall not commence the repair or alteration until Tenant has submitted professionally prepared detailed specifications and working drawings of the proposed repair or alteration and Landlord has approved them. All work shall be commenced promptly after Tenant has obtained all necessary permits and approvals. Tenant shall perform all work in accordance with the approved detailed specifications and working drawings and prosecute the work diligently to completion. Any work performed by Tenant, irrespective of cost, shall be subject to Landlord's inspection and approval after completion to determine whether the work complies with the requirements of this Lease. Tenant shall, promptly after the completion of any repairs or alterations, furnish Landlord with a set of "as built" plans and specifications therefor and evidence that all governmental permits and approvals have been "closed out".

Section 7.04    Compliance:

(a)    Tenant shall observe and comply promptly with all present and future laws, ordinances, orders, rules, regulations and legal requirements of all federal, state and municipal governments, courts, departments, commissions, boards and officers, and Insurance Requirements relating to or affecting the Demised Premises, the Building or any sign of Tenant, or the use and occupancy thereof, or any appurtenance thereto, including, sidewalks and curbs adjoining the Building. If such compliance requires the making of exterior or structural alterations or repairs, Tenant shall not commence such alterations or repairs unless and until Tenant has submitted plans and specifications for such work to Landlord, and Tenant has obtained the approval thereof from Landlord and, if required, from any Mortgagee. Such approval by Landlord shall not be unreasonably withheld or delayed.

(b)    Tenant shall not use, install or dispose of hazardous wastes or other hazardous materials, including, without limitation, asbestos and lead (individually and collectively "Hazardous Substance(s)"), at or near the Shopping Center.

If any Hazardous Substance(s) is found at or near the Shopping Center, as a result of the acts of Tenant or Tenant's Agents, Tenant shall promptly, at its sole cost and expense, remove and/or treat the same, as required by law and pay any fines or penalties imposed by any governmental authority in connection therewith. Any plan for the removal or treatment of

01520049-3                                              13

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Hazardous Substances shall first be approved by Landlord. Landlord shall advise Tenant of any known Hazardous Substances which will be disturbed prior to Tenant performing any work.

### Section 7.05    Electrical Lines:

If the Tenant installs any electrical equipment that overloads the lines in the Demised Premises, the Building or the Landlord's Parcel, Landlord may require Tenant to make whatever changes to such lines as may be necessary to render the lines in good order and repair and in compliance with all Insurance Requirements and applicable legal requirements.

### Section 7.06    Emergency Repairs:

If, in an emergency, it shall become necessary to make promptly any repairs or replacements required to be made by Tenant, Landlord or any Mortgagee may reenter the Demised Premises and proceed to have such repairs or replacements made and pay the cost of such repairs or replacements. Within thirty (30) days after Landlord renders a bill for such repairs or replacements, Tenant shall reimburse Landlord for the cost of making such repairs, which shall be included as additional rent.

### Section 7.07    Surrender of Premises:

On the Expiration Date or sooner termination of this Lease, Tenant shall quit and surrender the Demised Premises broom clean, and in good condition and repair, together with all alterations, fixtures, installations, additions and improvements which may have been made in or attached on or to the Demised Premises. Landlord may require Tenant to restore the Demised Premises to the condition the Demised Premises was in on the date of the Commencement Date. Any personal property of Tenant or any subtenant or occupant which shall remain in or on the Demised Premises after the termination of this Lease and the removal of Tenant or such subtenant from the Demised Premises or the surrender by Tenant of the Demised Premises, may, at the option of Landlord and without notice, be deemed to have been abandoned by Tenant or such subtenant or occupant and may either be retained by Landlord as its property or be disposed of, without accountability, in such manner as Landlord may see fit, or if Landlord shall give written notice to Tenant to such effect, such property shall be removed by Tenant, at Tenant's cost and expense; and Landlord shall not be responsible for any loss or damage occurring to any such property owned by Tenant or any subtenant or occupant. Tenant's obligations under this Section shall survive the Expiration Date.

### ARTICLE 8    SERVICE AND UTILITIES.

### Section 8.01    Electricity:

Except for Landlord's Work as described on Exhibit B, Tenant shall perform such other work as shall be necessary so that consumption of electricity at the Demised Premises shall be measured separately. Tenant shall make its own arrangements with the utility company supplying electricity for that service. Commencing at the Commencement Date, Tenant shall pay for all electrical service and charges relating to the Demised Premises and Tenant's sign(s). Landlord shall not be liable to Tenant for any failure or defect in the supply or character of electricity furnished to the Building. Landlord shall not be required to make any installations in the Demised Premises to distribute electricity within the Demised Premises. Landlord shall not be required to maintain or repair during the Term any installations that exist in the Demised Premises on the Commencement Date that distribute electricity within the Demised Premises.

### Section 8.02    Gas Service:

If gas service is available to the Demised Premises, except for Landlord's Work as described on Exhibit B, Tenant shall perform such other work as shall be necessary so that consumption of gas at the Demised Premises shall be measured separately. Tenant shall make its own arrangements with the utility company supplying gas for that service. Commencing at the Commencement Date, Tenant shall pay for all gas service and charges relating to the Demised Premises.

01520049-3                                14

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 8.03    Water:

Landlord may (a) install a water meter at Landlord's expense, or (b) at Landlord's option, Tenant shall pay to Landlord its "equitable share" of the cost of water consumed in the Building based upon the actual consumption of water at the Demised Premises, as determined by a submeter or in Landlord's reasonable judgment and confirmed by Tenant. Payments shall be due within ten (10) days after a bill is rendered. If any sewer or water rent, charge, tax or levy is imposed against the Building or the Landlord's Parcel, Tenant shall pay its equitable share thereof within ten (10) days after Landlord renders a bill therefor. Tenant shall pay for water and said sewer or water rent, charge, etc. commencing at the Commencement Date.

ARTICLE 9    USE AND OPERATION.

Section 9.01    Use:

Tenant shall use the Demised Premises for the Permitted Use. Tenant shall be required to open to the public for business fully staffed with employees and fully stocked with merchandise in a manner consistent with Tenant's use exercising sound business judgment; it shall continuously conduct its business under the name set forth as Tenant's business name in subsection 1.09(b); all to occur no later than thirty (30) days after the Rent Commencement Date (the "Opening Date").

Section 9.02    Continuous Operation:

Tenant agrees that it shall conduct its business at the Demised Premises continuously at least upon all days the Shopping Center is opened, except for Permitted Closures; it will keep the Demised Premises fully staffed with employees; it will use its best efforts to achieve a maximum sales volume at the Demised Premises; and it shall conduct its business under the name set forth as Tenant's business name in subsection 1.09(b). "Permitted Closures" shall mean: temporary closures due to fire, casualty, condemnation, or like force majeure event; for repairs, remodeling, and/or alterations (not to exceed 60 days in any three year period); for State and Federal holidays; and for taking inventory or staff training (not to exceed two days per year), all provided Tenant shall be diligently pursuing to re-open for business in the Demised Premises in the manner set forth in this Lease. In the event Tenant shall fail to perform in accordance with Sections 9.01 or 9.02, in addition to any of its other remedies, Landlord shall have the right at its option to collect from Tenant Minimum Rent at the rate of two hundred (200%) percent of the Minimum Rent otherwise due under this Lease for each and every day that the Tenant shall fail to open for business or remain open as required by this Lease.

Section 9.03    Landlord's Additional Right of Recapture:

In addition to Landlord's remedy to declare a Default if Tenant fails to continuously operate for business in the Demised Premises in accordance with Section 9.02, if at any time during the Term, all or substantially all of the Demised Premises is not open to the public for business for a period of ninety (90) consecutive days for reasons other than those Permitted Closures, as defined above, Landlord shall have the right to recapture the Demised Premises in accordance with the provisions of the immediately succeeding paragraph.

At any time after the event set forth in the immediately preceding paragraph has occurred, Landlord may, but shall be under no obligation to give to Tenant, a notice (hereinafter "Notice of Recapture"). Landlord, in its Notice of Recapture, shall set forth a date within thirty (30) days of such notice, as the date for the termination of this Lease, and upon such date, this Lease shall terminate as if such date were the date originally set forth in the Lease as the Expiration Date of the Term, and upon such date this Lease shall be null and void and of no further force and effect, except for accrued liabilities and those obligations intended to survive this Lease.

Section 9.04    Miscellaneous Obligations:

(a)    Non Selling Space: Tenant shall only use space in the Demised Premises for office, clerical or other non-selling purposes as is reasonably required for Tenant's business therein. Tenant shall not perform any office or clerical function in the Demised Premises for any other store.

01520049-3                                15

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(b)    Keeping Demised Premises Clean:  Tenant shall keep the Demised Premises, including exterior and interior portions of all windows, doors and all other glass, in neat and clean condition.

(c)    Special Taxes:  In addition to Tax Contributions and any other taxes required to be paid by Tenant under this Lease, Tenant shall pay to the appropriate governmental agency whether or not imposed upon Landlord or Tenant (or to Landlord as Rent if Landlord is responsible for the collection and payment of such monies), prior to the time such obligation shall become delinquent or payable with a penalty: (i) all sales, excise, business privilege, use and occupancy, environmental impact, and any other tax levied, imposed or assessed by the state, in which the Demised Premises is located, or by any political subdivision, or other taxing authority having appropriate jurisdiction, upon any Rent payable by Tenant; (ii) all taxes and assessments upon or against the conduct of Tenant's business at the Demised Premises, including but not limited to, business and occupation taxes and occupational license taxes; (iii) all taxes imposed upon Tenant's inventory, signs, furniture, fixtures, apparatus, equipment, alterations, betterments, and improvements (regardless of whether installed by Tenant or by Landlord on behalf of Tenant), and any other personal property of Tenant; and (iv) all fees, charges and assessments imposed by any governmental agency for sewerage or water utility hook up charges.

(d)    Paying License Fees:  Tenant shall pay promptly all license fees, permit fees and charges of a similar nature for the conduct by Tenant or any subtenant of any business or undertaking authorized hereunder to be conducted in the Demised Premises.

(e)    Exclusive Delivery Facilities and Sidewalks:  Tenant shall keep and maintain in good order, condition and repair any loading platform, truck dock or truck maneuvering space which is used by Tenant or to which Tenant has the right of exclusive use notwithstanding the fact that the same may be deemed to be a portion of the Common Area or Landlord's Parcel Common Area.  Tenant shall remove snow and ice from the sidewalk(s) adjacent to the Demised Premises and spread sand or other abrasive substances thereon as conditions require.

(f)    Garbage:  Tenant agrees not to permit the accumulation (unless in concealed metal containers) or burning of any rubbish or garbage in, on or about any part of the Shopping Center.  Tenant shall handle and dispose of all rubbish and garbage in accordance with the regulations established by Landlord and shall not permit any rubbish or garbage to be collected or disposed of from the Demised Premises, except by Landlord or its designee and shall pay all costs and expenses for such disposal and collection.  Tenant shall keep the sidewalk(s) and curbs adjacent to the Demised Premises free of debris.

(g)    Rules and Regulations:  Tenant shall observe all reasonable rules and regulations established by Landlord from time to time for the Building and Landlord's Parcel, provided Tenant shall be given at least five (5) days' notice thereof.

(h)    Restrictive Covenants:  Tenant agrees that it will comply with and observe all restrictive covenants which affect or are applicable to the Shopping Center, the Demised Premises, the Building, the Landlord's Parcel Common Areas and the Common Area. Tenant shall fully and faithfully comply with the terms and conditions of the REA.  Tenant shall not do or cause to be done or suffer or permit any act to be done which would or might cause the REA, or the rights of Landlord under the REA to be endangered, canceled, terminated, forfeited or surrendered, or which would or might cause Landlord to be in default thereunder or liable for any damage, claim or penalty.

(i)    Handling of Hazardous Substance(s):  If due to the nature of Tenant's business, Tenant is using, storing and disposing of Hazardous Substance(s) at the Demised Premises such as, without limitation, dry cleaning fluids, film processing chemicals, motor oil, gasoline, paints and paint solvents, pesticides or fertilizers ["Permitted Substance(s)"], the following shall apply:

Landlord shall have the right to periodically review Tenant's manifests and/or other documents evidencing the lawful disposal of the Permitted Substance(s) from the Demised Premises.

01520049-3                                  16

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Upon demand by Landlord or any Master Lessor or Mortgagee, Tenant shall, at its expense, promptly change its method of using, storing and disposing of Permitted Substance(s) at the Demised Premises in order to comply with all rules, orders, laws and regulations of governmental authorities having jurisdiction ("Governmental Regulations").

In addition, upon demand by Landlord or any Master Lessor or Mortgagee, Tenant shall, at Landlord's expense, promptly change its method of using, storing and/or disposing of Permitted Substance(s) at the Demised Premises in order to comply with Landlord's and/or such Mortgagee's rules and regulations regarding same which are in addition to or which impose stricter regulations than the Governmental Regulations.

(j)    Offensive Odors:  If any time during the Term, Landlord shall notify Tenant that offensive odors are escaping from the Demised Premises into other premises in the Shopping Center ("Odor Problem"), Tenant shall, at its expense, promptly after receipt of such notice from Landlord, perform any alterations to and install any equipment in the Demised Premises that are reasonably necessary to eliminate the Odor Problem.  Any work performed by Tenant in connection with the elimination of the Odor Problem shall be performed in accordance with the provisions of Section 7.03.

(k)    Prohibited Uses:

(i)    Tenant shall not use or sublease or permit the use of the Demised Premises, or any portion thereof, for any operation, activity or business that: (a) creates strong, unusual or offensive odors, fumes, dust or vapors; (b) is a public or private nuisance; (c) emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness; (d) creates unusual fire, explosive or other hazards; (e) involves the handling, storage, sale or installation of Hazardous Materials; or (f) involves the sale of alcoholic beverages.

(ii)    Tenant shall not operate, sublease or permit the Demised Premises, or any portion thereof, to be used as or for any of the following uses or purposes: cemetery; mortuary; so-called "head-shop"; the dumping or disposing of garbage or refuse; video or other type of game room or arcade; carnival; off-track betting parlor; pawn shop; business selling so-called "second-hand goods" or governmental "surplus" goods; junk yard; flea market; recycling facility or stockyard; any fire sale, bankruptcy sale or auction house operation, unless pursuant to an order of a court of competent jurisdiction; motor vehicle or boat dealership, repair shop (including lubrication and/or service center), body and fender shop, car wash facility, or motor vehicle or boat storage facility; theater (including, without limitation, a movie theater), auditorium, sports or other entertainment viewing facility (whether live, film, audio/visual or video); discotheque, dance hall, bar; bowling alley; skating rink; billiard parlor; health spa or exercise facility; massage parlor; dry cleaning or laundry plant (except as to an establishment which receives and dispenses items for launder and/or dry cleaning but the processing of which such items is done elsewhere); industrial or manufacturing uses; catering hall; bingo parlor; factory uses; any business servicing motor vehicles or selling gasoline or diesel fuel at retail or wholesale and services relating thereto, including, without limitation, any quick lube oil change services, or any other vehicle mechanical service or repair facility; office uses (including governmental services offices, such as, but without limitation, motor vehicle or social services offices, but, excluding so-called "back office" space used in connection with a permitted use hereunder); hotel/motel uses; warehousing (excluding any warehousing incidental to the operation of permitted retail uses being conducted thereat); training or educational facility or house of worship; or a recreation facility, whether providing exercise, recreational, educational, entertainment or fitness activities, or any combination of the foregoing.  "Training or educational facility" shall mean a beauty school, barber college, reading room, place of instruction or any other activity catering primarily to students or trainees as opposed to customers.

(iii)    Tenant and its successors and assigns shall not operate, sublease or permit the Demised Premises, or any portion thereof, to be used or occupied as an adult book store or a store selling or exhibiting pornographic materials.  As used herein, "an adult book store or store selling or exhibiting pornographic materials" shall include, without limitation, a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational, or a store offering for exhibition, sale or rental video cassettes or other

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated "X" or "NC-17" (or any succeeding like rating) by the Motion Picture Rating Association, or any successor thereto ("X-Rated Videos"). Further, Tenant and its successors and assigns shall not operate, sublease or permit the Demised Premises, or any portion thereof, to be used or occupied for any obscene, nude or semi-nude live performances, nude modeling, rap sessions, or as a so-called rubber goods shop, or as a sex club of any sort, or as a massage parlor.

Section 9.05    Restriction on Tenant's Activities at Shopping Center:

(a)    Sidewalk Use: Tenant shall not use the sidewalk adjacent to or any other space outside the Demised Premises for display, sale or any other similar undertaking without the prior consent of Landlord in each instance.

(b)    Loud Speaker Use: Tenant shall not use any advertising medium which may be heard outside the Demised Premises.

(c)    Plumbing Facility Use: If the plumbing facilities of the Demised Premises are connected to the plumbing facilities of the Building or the Landlord's Parcel, the following shall apply: Tenant shall not use the plumbing facilities of the Demised Premises for any purpose other than the purpose for which they are intended. Accordingly, Tenant may not dispose of any substances there which may clog, erode or damage the pipelines and conduits of the Building or the Landlord's Parcel. Prior to performing any food preparation in the Demised Premises (if permitted pursuant to the applicable provision of this Lease), Tenant shall, at its expense, install a grease interceptor, the design and location of which shall be subject to Landlord's approval and any legal requirements. Notwithstanding the foregoing, Tenant shall have a continuing obligation to maintain, repair or upgrade any grease interceptor system installed by Tenant in order to be in compliance with any then existing codes, regulations and other legal requirements.

(d)    Floor Load: Tenant shall not place a load on any floor exceeding the floor load per square foot which such floor was designed to carry. Tenant shall not install, operate or maintain any heavy item of equipment in the Demised Premises except in such manner as to achieve a proper distribution of weight.

(e)    Exterior or Roof: Tenant shall not use for any purpose all or any portion of the roof or exterior walls of the Demised Premises, it being understood and agreed, that except as otherwise expressly set forth in this Lease, and so long as any access, signage or visibility is not materially impaired, Landlord shall have the exclusive right to use or grant permission to use the roof and the exterior walls of the Demised Premises. Tenant shall not cause a violation or do any act which may result in a violation of the roof bond or warranty with respect to the Demised Premises. Landlord reserves the right to build additional stores, levels or buildings above the Demised Premises and none of the foregoing shall be deemed to be a portion of the Demised Premises.

(f)    Freight Handling Equipment: Tenant shall not use any forklift truck, tow truck or any other machine for handling freight except as may be approved by Landlord.

Section 9.06    Insurance Rate:

Tenant agrees to comply with all Insurance Requirements relating to or affecting the Demised Premises, the Building or the Landlord's Parcel. If the insurance rates applicable to the Building or the Landlord's Parcel are raised: (x) as a result of, or in connection with, any failure by Tenant to comply with the Insurance Requirements; or (y) as a result of, or in connection with, any use or manner of use of the Demised Premises; then Tenant shall pay to Landlord on demand, the portion of the premiums for all insurance policies applicable to the Building or the Landlord's Parcel as shall be attributable to the higher rates. For the purposes of this Section, any finding or schedule of the fire insurance rating organization having jurisdiction over the Building or the Landlord's Parcel shall be deemed to be conclusive.

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 9.07   Intentionally Deleted.

Section 9.08   Illegal Purposes:

Tenant shall not use the Demised Premises for any illegal trade, manufacture, or other business, or any other illegal purpose.

### ARTICLE 10  TRANSFER OF INTEREST, PRIORITY OF LIEN.

Section 10.01  Assignment, Subletting, etc.:

(a)   Landlord Consent.  Tenant shall not sublet the Demised Premises or any part thereof, or assign, mortgage or hypothecate, or otherwise encumber this Lease or any interest therein nor grant concessions or licenses for the occupancy of the Demised Premises or any part thereof, without Landlord's prior written consent, which consent may not be unreasonably withheld.  Any attempted transfer, assignment or subletting shall be void and confer no rights upon any third person.  No assignment or subletting shall relieve Tenant of any obligations herein.  The consent by Landlord to any transfer, assignment or subletting shall not be deemed to be a waiver on the part of Landlord of any prohibition against any future transfer, assignment or subletting.  No transfer, or subletting shall be effective unless and until (x) Tenant gives notice thereof to Landlord, and (y) the transferee, assignee or sublessee shall deliver to Landlord (1) a written agreement in the form and substance satisfactory to Landlord pursuant to which the transferee or assignee assumes all of the obligations and liabilities of Tenant under this Lease, and (2) a copy of the assignment agreement or sublease.  A restructuring, reorganization, sale of substantial assets, merger, recapitalization or debt issuance by Tenant (each, a "Recapitalization") shall be deemed a transfer, assignment or subletting under this Section, requiring Landlord's prior written consent, which shall not be unreasonably withheld, if Tenant's tangible net worth (as determined under generally accepted accounting principles consistently maintained but without taking into account any increases in the book value of Tenant's assets or recognition of gain or intangible assets resulting from such Recapitalization) is reduced.  Tenant may not enter into any lease, sublease, license, concession or other agreement for use, occupancy or utilization of space in the Demised Premises which provides for a rental or other payment for such use, occupancy or utilization based in whole or in part on the net income or profits derived by any person from the property leased, occupied or utilized, or which would require the payment of any consideration which would not fall within the definition of "rents from real property" as that term is defined in Section 856(d) of the Internal Revenue Code of 1986, as amended.

Notwithstanding the foregoing, Tenant shall be permitted to enter into separate licenses or concessions relating to portions of the Demised Premises for use by third party vendors operating under Tenant's trade name, conducting the uses permitted by Section 1.09 hereof, without the requirement of Landlord's prior written consent ("Permitted Subtenants"), provided: (i) no such license agreement or concession agreement individually or cumulatively shall reduce Tenant's obligations under the Lease or reduce the obligations of any guarantor under any guaranty of this Lease; (ii) any such license or concession agreement shall be subordinate and subject to this Lease and all terms and conditions herein; (iii) no separate entrance shall be provided to accommodate any such licensee or concessionaire; (iv) any such licensee or concessionaire shall operate as an integral part of the overall use of the Demised Premises as provided herein; (v) only one (1) trade name may be used to identify the Demised Premises on any signage permitted in this Lease; (vi) any such licensee or concessionaire must be typical of Tenant's other business operations in a majority of Tenant's other store locations and (vii) in no event shall any one (1) licensee or concessionaire occupy more than twenty percent (20%) of the Floor Area of the Demised Premises at any one (1) point in time.

(b)   Recapture Right.

(i)   In the event that Tenant shall desire Landlord's consent to the subletting of the Demised Premises or the assignment of this Lease. Tenant shall give Landlord one hundred twenty (120) days prior written notice thereof (the "Tenant Notice").  Such notice shall be deemed to be an offer by Tenant to assign this Lease to Landlord.  In the event Landlord wishes to accept said offer, Landlord shall give Tenant notice thereof within said one hundred twenty (120) days ("Landlord's Notice"), in which event the assignment to Landlord shall become effective on the date specified in Landlord's Notice, which date shall be not less than

01520049-3                                          19

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

thirty (30) nor more than one hundred eighty (180) days after the date of Landlord's Notice, and Tenant shall vacate the Demised Premises in accordance with the terms of this Lease by such date. In the event of an assignment of this Lease to Landlord, on the effective date of such assignment this Lease shall terminate and Landlord and Tenant shall be released from all liability accruing thereafter under this Lease, as if such date were the Expiration Date originally set forth herein. The sending of Landlord's Notice shall, ipso facto, and without the necessity of any further act or instrument, be sufficient to effectuate said assignment. However, if Landlord shall request, Tenant shall execute such documents as Landlord may reasonably request in confirmation thereof. In the event that Landlord does not accept said offer within one hundred twenty (120) days as aforesaid, Landlord's said right to recapture the Demised Premises by assignment shall be deemed to be waived, but nothing herein contained shall be deemed to be a consent by Landlord to any subletting or assignment unless Landlord delivers to Tenant its written consent thereto. Notwithstanding Landlord's failure to recapture on any one occasion, the right to recapture as aforesaid shall apply to any further subletting or assignment.

(ii)    Tenant Notice shall contain all of the following information in form reasonably satisfactory to Landlord. If Landlord requires additional information, it shall promptly notify Tenant thereof and the giving of the Tenant Notice shall not be deemed to have been given until Landlord receives such additional information.

(A)    a statement by Tenant that the proposed sublease or assignment is a bona fide transaction and that Tenant and the proposed assignee or sublessee are ready and willing to enter into such sublease or assignment agreement, subject to reasonable conditions;

(B)    the legal name of the proposed assignee or sublessee, and the name under which such assignee or sublessee proposes to conduct business;

(C)    the rent and other proposed business terms of the proposed assignment or subletting;

(D)    the proposed business to be conducted by such assignee or subtenant;

(E)    current financial statements of the proposed assignee or subtenant (or the proposed guarantor thereof); and

(F)    the names, addresses and telephone numbers of the officers and principals of the assignee or subtenant in question.

(c)    In the event that Tenant sends a Tenant Notice and Landlord does not exercise the right of recapture as set forth in Section 10.01(b)(i), then Tenant may, without Landlord's further consent, assign this Lease or sublet all of the Demised Premises in accordance with the Tenant Notice, but within six (6) months after Landlord fails to recapture pursuant to Section 10.01(b)(i), provided the following terms and conditions are fully complied with:

(i)    Tenant shall not be in Default under this Lease at the time Landlord's consent is requested or at the effective date of the assignment or subletting.

(ii)    The proposed assignee or subtenant shall have a tangible net worth as determined in accordance with generally accepted accounting principles ("GAAP"), at the time of the assignment or subletting of at least ten (10) times the annual Rent and additional rent and the proposed assignee or subtenant shall be of a character in keeping with the standards in such respect of the other tenants of the Shopping Center. Tenant shall furnish Landlord with such financial data and other information as Landlord may reasonably request.

(iii)    The Demised Premises shall be used by the assignee or subtenant subject to and in accordance with the provisions of Article 9 of this Lease in accordance with the operation of a first class shopping center, and for no other purpose.

(iv)    Tenant shall pay to Landlord a sum equal to (1) fifty percent (50%) of any rent (on a per square foot basis) or other consideration (on a per square foot basis) paid to Tenant by any assignee or subtenant which is in excess of the Rent (on a per square foot basis) then being paid by Tenant to Landlord pursuant to the terms of this Lease, and (2) fifty percent

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(50%) of any other profit or gain realized by Tenant, as additional rent immediately upon receipt thereof by Tenant. Tenant may deduct from any such payments fifty percent (50%) of Tenant's alteration costs and brokerage fees, incurred with respect to any such assignment or sublease.

        (v)     Tenant shall pay the reasonable fees and disbursements of Landlord's attorney in connection with any assignment or subletting (whether proposed or effected).

        (vi)    The proposed assignee or subtenant or its affiliates are not in default of any of the monetary terms of another lease with Landlord or its affiliates.

        (vii)   In the case of an assignment, it shall provide for the assignment of Tenant's entire interest of this Lease and the acceptance by the assignee of said assignment and its assumption and agreement to perform directly for the benefit of Landlord all of the terms and provisions of this Lease on Tenant's part to be performed and include a ratification of the representations made by Tenant under this Lease as it relates to such assignee.

        (viii)  In the case of a subletting, it shall be expressly subject to all of the obligations of Tenant under this Lease and the further condition and restriction that the sublease shall not be assigned, encumbered or otherwise transferred or the subleased premises further sublet by the sublessee in whole or in part, or any part thereof suffered or permitted by the sublessee to be used or occupied by others, without the prior written consent of Landlord in each instance.

        (ix)    There shall not be more than one (1) subleases in effect covering the Demised Premises at any time during the Term.

        (d)     Intentionally Deleted.

        (e)     Change of Control. Except as otherwise expressly set forth herein, and except for a corporate Tenant whose stock is traded a nationally recognized stock exchange, NASDAQ or over-the-counter market, a change of "Control" (as hereinafter defined) of Tenant, if Tenant is a corporation, or a change in the composition of persons owning any Controlling interest in any non-corporate Tenant shall be deemed an assignment for the purposes of this Article 10. As used herein, the term "Control", "Controlled by", "Controlling" or "under common Control with" shall mean, with respect to a corporation, (i) the ownership, directly or indirectly, of stock possessing, or the right to exercise, of at least 51% of the total combined voting power of all classes of the controlled corporation, issued, outstanding and entitled to vote for the election of directors, and with respect to a partnership or other business entity, the ownership, directly or indirectly, of at least 51% of all of the legal and equitable interests, or (ii) the ability effectively to control or direct the business decisions of such corporation or entity.

Section 10.02  Master Lease: N/A.

Section 10.03  Subordination:

This Lease shall be subordinate to the lien of any present Mortgage which term "present Mortgage" shall be deemed to include, without limitation, any spreading agreements, renewals, modifications, consolidations, future advances, replacements and extensions thereof or future Mortgage or Master Lease irrespective of the time of recording of such Mortgage. or Master Lease. However, from time to time, Landlord may elect that this Lease be paramount to the lien of such Mortgage, and may exercise such election by giving notice thereof to Tenant, which notice must be concurred in by such Mortgagee. The exercise of any of the elections provided in this Section shall not exhaust Landlord's right to elect differently thereafter, from time to time. This clause shall be self-operative and no further instrument shall be required, however, upon Landlord's request, from time to time, Tenant shall (a) confirm in writing and in recordable form that this Lease is so subordinate or so paramount (as Landlord may elect) to the lien of any Mortgage or Master Lease and/or (b) execute an instrument making this Lease so subordinate or so paramount (as Landlord may elect) to the lien of any Mortgage or Master Lease, in such form as may be required by an applicable Mortgagee or Master Lessor.

01520049-3

21

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 10.04  Attornment:

(a)     If the Demised Premises, the Building or Landlord's Parcel are encumbered by a Mortgage and such Mortgage is foreclosed, or if the Demised Premises, the Building or Landlord's Parcel are sold pursuant to such foreclosure or by reason of a default under said Mortgage, then notwithstanding such foreclosure, such sale, or such default (i) Tenant shall not disaffirm this Lease or any of its obligations hereunder, and (ii) at the request of the applicable Mortgagee or purchaser at such foreclosure or sale, Tenant shall attorn to such Mortgagee or purchaser and execute a new lease for the Demised Premises setting forth all of the provisions of this Lease except that the term of such new lease shall be for the balance of the Term.

(b)     If Landlord's interest in the Demised Premises is a leasehold interest, at any time, and if Landlord's leasehold interest is terminated for any reason; then notwithstanding such termination the dispossession of Landlord from the Demised Premises, the Building or the Landlord's Parcel, or any default by Landlord, as lessee, under any Master Lease, (i) Tenant shall not disaffirm this Lease or any of its obligations contained within this Lease, and (ii) at the request of the Master Lessor, Tenant shall attorn to the applicable Master Lessor and execute a new lease for the Demised Premises setting forth all of the provisions of this Lease except that the term of such new lease shall be for the balance of the Term.

Section 10.05  Transfer of Landlord's Interest:

(a)     Fee Interest:  The following language shall apply if Landlord's interest in the Demised Premises is a fee interest:  The term "Landlord" as used in this Lease means only the owner for the time being or the Mortgagee in possession for the time being of the Demised Premises.  In the event of any sale of the Demised Premises, or in the event the Demised Premises are leased to any person (subject to this Lease), said Landlord shall be and hereby is entirely freed and relieved of all of its covenants, obligations and liability hereunder.  This subsection shall be applicable to each owner of the Demised Premises, from time to time, and shall not be limited to the first owner of the Demised Premises.

(b)     Master Lease:  The following language shall apply if Landlord's interest in the Demised Premises is a leasehold interest:  The term "Landlord" as used in this Lease means only the owner for the time being of the leasehold estate demised by the Master Lease.  In the event of any transfer or assignment of Landlord's interest in said Master Lease, then the Landlord whose interest is thus assigned or transferred shall be and hereby is entirely freed and relieved of all covenants, obligations and liability of Landlord hereunder.  In the event the owner of the leasehold estate demised by the Master Lease shall acquire the fee interest in the premises demised by the Master Lease, subsection (a) of this Section 10.05 shall be applicable.  This subsection shall be applicable to each person who owns a leasehold estate demised by a Master Lease.

Section 10.06  Mortgagee's Rights:

(a)     If Landlord shall notify Tenant that the Demised Premises, the Building or Landlord's Parcel are encumbered by a Mortgage and in such notice set forth the name and address of the Mortgagee thereof; then, notwithstanding anything to the contrary, no notice intended for Landlord shall be deemed properly given unless a copy thereof is simultaneously sent to such Mortgagee.  If any Mortgagee shall perform any obligation that Landlord is required to perform hereunder, such performance by Mortgagee, insofar as Tenant is concerned, shall be deemed performance on behalf of Landlord and shall be accepted by Tenant as if performed by Landlord.

(b)     In addition, if Tenant is given the right, pursuant to this Lease, to terminate this Lease as a result of a default of Landlord, no such termination shall be effective unless and until Tenant has sent a notice, in addition to any notice sent pursuant to subsection 10.06(a), of its intention to so terminate this Lease to such Mortgagee and the Mortgagee has failed to cure such default within thirty (30) days after receipt of such notice, or in case the default shall be of such nature that it cannot be cured within said period of thirty (30) days, then if Mortgagee shall fail, within said period of thirty (30) days, to commence the cure of such default and thereafter to complete such cure with due diligence.

01520049-3                    22

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

ARTICLE 11 COMMON AREA AND SHOPPING CENTER.

Section 11.01  Use of Common Areas:

During the Term the following privileges to use certain portions of the Shopping Center in common with Landlord and any designee of Landlord, subject to Landlord's rules and regulations and the REA, are hereby granted to Tenant:  (a) the nonexclusive license to permit its customers to use the Landlord's Parcel Common Areas designated by Landlord from time to time and the Common Areas designated in the REA; (b) the nonexclusive license to permit its employees to use the Landlord's Parcel Common Areas designated by Landlord from time to time and the Common Areas designated in the REA; and (c) the nonexclusive privilege to permit its employees and customers to use the entrance and exit ways designated by Landlord or the REA from time to time for access to the Demised Premises from a public street or highway adjacent to the Shopping Center through the appropriate entrances and exits so designated by Landlord or the REA.

Section 11.02  Landlord's Rights:

Notwithstanding anything to the contrary, Landlord shall have the following rights:  (a) to close all or any portion of the Landlord's Parcel Common Areas or Common Area, including the Parking Area to such extent as may in the opinion of Landlord's counsel be necessary to prevent a dedication thereof or the accrual of any rights of any person or the public therein; (b) to close all or any portion of the Landlord's Parcel Common Areas or Common Area temporarily to discourage noncustomer use; (c) to prohibit parking or passage of motor vehicles in areas previously designated for such; (d) to expand, change, decrease or alter the size, layout or configuration of Landlord's Parcel, the Shopping Center or any part thereof (including, without limitation, the Building, the Landlord's Parcel Common Areas, the Common Area, the Parking Areas, the buildings and the means of ingress and egress); and (e) to erect additional buildings on the Landlord's Parcel Common Areas, or to change the location of buildings or other structures to any location in Landlord's Parcel including the Landlord's Parcel Common Areas (and upon such erection or change of location the portion upon which such buildings or structures have been erected shall no longer be deemed to be a part of the Landlord's Parcel Common Areas). Tenant acknowledges that Landlord shall have no duty or obligation to police the Parking Area or enforce parking regulations at the Landlord's Parcel.

Notwithstanding anything to the contrary contained in Subsection 11.02(a) or elsewhere in this Lease, Landlord agrees that throughout the Term, subject to legal requirements of the governmental authorities having jurisdiction and the REA, Landlord shall not without Tenant's prior consent, which consent shall not be unreasonably withheld, conditioned or delayed, construct or permit the construction of additional buildings in the area designated as "No Build Area" on Exhibit A.

Section 11.03  License Numbers:

In order to restrict the use by Tenant's employees of Parking Areas designated or which may be designated by Landlord as customer Parking Areas, Tenant shall cause its employees to park in the area designated as employee parking, from time to time.  Tenant agrees that it will, if and when so requested by Landlord, at any time, furnish Landlord with the license numbers of any vehicle of Tenant and Tenant's employees.

Section 11.04  Tenant's Contribution:

(a)      "Common Area Expenses" means all costs and expenses of every kind and nature paid or incurred by Landlord or its designees in connection with the following:

(i)      the management, operation, replacement, maintenance, repair, redecorating, refurbishing, upgrading, improving, conforming with rules and regulations of authorities having jurisdiction and the Fire Insurance Rating Organization and Board of Fire Underwriters; utilities and other services and all other costs and expenses of every kind and nature, foreseeable or unforeseeable, required or desired, suggested or recommended for the operation, maintenance or otherwise with respect to the Landlord's Parcel Common Areas in a manner deemed by Landlord in Landlord's sole discretion, to be appropriate for the best interests of the Building or Landlord's Parcel, as conclusively determined by Landlord in accordance with

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Landlord's method of accounting, including the supply of electricity and other utilities to the Landlord's Parcel Common Areas including fees paid to utility billing service providers; the cost of landscaping and seasonal decorations; the cost of maintaining, replacing and repairing any stairway, truck way, loading dock, package pick-up station, pedestrian sidewalk and ramp; common signage; the garage and/or parking lot and any driveway areas, including the construction and maintenance of lighting facilities therefor, comfort stations and first aid stations, exterior window cleaning costs (where not otherwise being paid for by tenants); labor costs; all management costs and management fees (not to exceed 3% of the rents collected at Landlord's Parcel), employee benefits and payroll taxes; accounting and legal fees; material costs; equipment costs, including the cost of service agreements on equipment; tool costs; the costs of licenses, permits and inspection fees, and any sales, use or service taxes incurred in connection therewith; janitorial services; pavement marking; elevator and escalator repair and maintenance; power washing the sidewalks, carport and soffits;

            (ii)     maintenance, repair and replacement (except to the extent of Landlord's receipt of the proceeds of insurance thereof) of the roof of the Building;

            (iii)    all costs and expenses of every kind and nature paid or incurred by Landlord or its designees in connection with the purchase and maintenance of all insurance including broker fees, engineering fees and taxes and incurred losses in the year paid [including, but not limited to, special form of loss (formerly all risk)] property coverage, rental insurance, terrorism, crime, environmental liability (including cleanup costs), commercial general liability (including products/completed operations coverage), flood and earthquake carried by and in the discretion of Landlord, its designees, or any Mortgagee covering the Building, the Landlord's Parcel buildings and improvements, the Landlord's Parcel Common Areas and every other facility or property used or required or deemed necessary in connection with any of them (including the cost of claims/losses not covered by insurance and the payment of any deductible or self-insured retention amounts under insurance policies) and the cost of compliance with insurance company requirements; and

            (iv)    the maintenance, repair and replacement (except to the extent of Landlord's receipt of the proceeds of insurance therefor) of all other portions of the Building and the Landlord's Parcel buildings and improvements and the sprinkler system, other than as set forth in subparagraphs (i), (ii) or (iii) above and other than such maintenance, repair and replacement Landlord may perform on the interior of any tenants' premises (except if performed in connection with the common facilities of the buildings situated in Landlord's Parcel). Notwithstanding the foregoing, in no event shall the Common Area Expenses include any of the initial costs or expenses incurred by Landlord relating to the initial re-development of the Landlord's Parcel.

    In addition, Common Area Expenses shall include five (5%) percent of all costs set forth in the foregoing subparagraphs (i), (ii), (iii) and (iv), to cover Landlord's administrative and overhead costs (the "Administrative Fee").

            (b)    "Tenant's Contribution" for each Contribution Year means Tenant's Pro Rata Share of: (A) the Administrative Fee; and (B) all costs set forth in subparagraphs (i), (ii), (iii) and (iv). Tenant's Contribution (exclusive of the Excluded Costs) for Tenant's first Contribution Year shall be equal to the lesser of (i) actual or (ii) $1.75 per square foot of Floor Area of the Demised Premises annually for a total of $64,170.75 ($5,347.56 monthly). Following the first Contribution Year, once Tenant's Contribution (exclusive of the Excluded Costs) equals or exceeds $1.75 per square foot of Floor Area of the Demised Premises, Tenant's Contribution for each Contribution Year thereafter, exclusive of insurance premiums, Impositions or unanticipated major repair expenses, security costs, storm clean-up costs, and utility charges (collectively "Excluded Costs") shall be equal to the lesser of (i) actual or (ii) one hundred three percent (103%) (on a per square foot basis) of Tenant's Pro Rata Share of Common Area Expenses for the previous Contribution Year of the Term. Tenant's Pro Rata Share of Excluded Costs shall be deemed excluded from the definition of "Common Area Expenses" solely and exclusively for the purpose of computing the maximum payment ceiling to be established in connection with Tenant's Pro Rata Share of Common Area Expenses for each Contribution Year of the Term (i.e. Tenant shall pay Tenant's Pro Rata Share of Excluded Costs with no ceiling being established in connection with such payments whatsoever).

01520049-3                24

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(c)     Tenant shall pay monthly installments on account of Tenant's Contribution to Landlord. Installments shall be paid in the same manner and at the same time as Minimum Rent. During the first Contribution Year, each monthly installment shall be based upon Landlord's reasonable estimate of Tenant's Contribution for the Contribution Year, subject to adjustment pursuant to subsection (e). Thereafter, the installments shall be one-twelfth (1/12th) of Tenant's Contribution for the immediately prior Contribution Year, plus a percentage increase therein to reflect Landlord's estimate of the increase in the Common Area Expenses over the prior Contribution Year.

(d)     Within a reasonable time after each Contribution Year, Landlord shall send a statement to Tenant setting forth Common Area Expenses for that Contribution Year. Each statement shall be final and conclusive as to Tenant, its successors and assigns, as to the matters set forth therein, if no objection is raised with respect thereto within ninety (90) days after submission of each such statement to Tenant. Tenant acknowledges that Landlord's ability to budget and incur expenses is dependent on the finality of such statement, and accordingly agrees that time is of the essence with respect to Tenant's objection to the aforementioned statement. If Tenant's Contribution exceeds the installments paid by Tenant under subsection (c), Tenant shall pay to Landlord the difference between Tenant's Contribution for that Contribution Year and the aggregate amount paid by Tenant on account of Tenant's Contribution for that Contribution Year. The payments shall be made in equal monthly installments during the succeeding six (6) months of the calendar year. If Tenant's Contribution for any Contribution Year is less than the aggregate monthly installments paid under subsection (c) with respect to that Contribution Year, Landlord's statement shall be accompanied by Landlord's payment of the difference.

(e)     Landlord shall maintain records of Common Area Expenses. These records may be kept in the form of books of account or computer memory.

Landlord shall retain all such records for at least twelve (12) months after the end of each Contribution Year. The failure by Tenant to inspect and audit such records within any such twelve (12) month period shall be deemed a waiver of its right to audit such records for that Contribution Year. If any such audit shows that Common Area Expenses were overstated, Landlord shall promptly issue to Tenant a credit against Rent for any overpayment in Tenant's Contribution paid by Tenant as a result of such overstatement. If any such audit shows that Common Area Expenses were understated, Tenant shall promptly pay to Landlord the amount of any understatement in Tenant's Contribution. Tenant hereby grants to Landlord an offset and deduction against any refund, for all costs, payments and expenses Tenant is obligated to pay to Landlord pursuant to this Lease or otherwise due and owing to Landlord, at the time any such refund is determined.

(f)     For any period of time which is less than an entire Contribution Year, Tenant's Contribution shall be an amount equal to the product of (a) Tenant's Contribution for the entire Contribution Year and (b) a fraction, the numerator of which is the number of days during such Contribution Year from the Rent Commencement Date to December 31 or from January 1 to the Expiration Date, as applicable, and the denominator of which shall be the number of days in the entire Contribution Year.

Section 11.05 Landlord's Obligation with Respect to Parking Area:

Landlord shall keep the Parking Area within the Landlord's Parcel Common Areas properly paved and in good order and repair throughout the Term. Landlord shall keep the Parking Area within the Landlord's Parcel Common Areas properly drained and shall provide painted stripes to designated parking spaces. Within a reasonable time after the end of a snowfall, Landlord will commence to remove accumulated snow and ice from the Parking Area within the Landlord's Parcel Common Areas and diligently prosecute the same to completion so that, to the extent practicable, the Parking Area shall be reasonably free of snow and ice. Landlord may deposit accumulated snow on portions of the Landlord's Parcel Common Areas as may be necessary under the circumstances. If any ice cannot be removed with reasonable effort on the part of Landlord, it will be sufficient for Landlord to spread sand or other abrasive substance over the ice.

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

ARTICLE 12  DESTRUCTION AND FIRE INSURANCE.

Section 12.01  Rent Abatement:

If the whole or any portion of the Demised Premises is damaged by fire or other casualty and the Demised Premises shall be rendered untenantable, the Rent and any additional rent shall be abated proportionately as to the portion of the Demised Premises rendered untenantable and only for the time such Demised Premises, or portion thereof, are rendered untenantable.

Section 12.02  Option to Terminate:

If all or a substantial portion of the Demised Premises or the Building (even if the Demised Premises is not damaged) shall be damaged by fire or other casualty, this Lease shall not be terminated, except that Landlord shall have the option to terminate this Lease upon giving notice of such termination within one hundred (180) days following such occurrence. Tenant hereby waives all rights to terminate this Lease it may have by reason of damage to the Demised Premises as a result of fire or other casualty pursuant to any presently existing or hereafter enacted statute or other law.

Notwithstanding the foregoing, if Landlord has not substantially completed the restoration of the Demised Premises, as provided in Section 12.03 within twelve (12) months following the date Landlord has obtained permits, approvals and necessary insurance proceeds, Tenant may, as its sole remedy, terminate this Lease, by notice to Landlord within ten (10) business days after the expiration of said twelve (12) month period. In addition, if the Demised Premises are "Substantially Damaged" (as hereinafter defined) during the last two (2) years of the Term, either party may terminate this Lease by notice to the other within sixty (60) days after such occurrence. "Substantially Damaged" means a fire or other casualty resulting in damage to the Demised Premises which, Landlord's architect certifies, cannot be repaired within ninety (90) days after the commencement of the restoration work.

If the Shopping Center is so damaged by fire or other casualty that, in Landlord's opinion, substantial alteration, demolition, or reconstruction of the Shopping Center is required (regardless of whether the Demised Premises have been damaged or rendered untenantable), then Landlord may terminate this Lease by giving Tenant notice thereof on or prior to the ninetieth (90th) day after such fire or other casualty; provided Landlord terminates all of the leases (including this Lease) of the Shopping Center excluding leases for the pad sites. If Landlord elects to terminate this Lease as aforesaid, then (I) the Term shall expire on a date set by Landlord that is not sooner than (i) the tenth (10th) day after the date that Landlord gives such notice (if all or substantially all of the Demised Premises is rendered untenantable by such fire or other casualty), and (ii) the ninetieth (90th) day after the date that Landlord gives such notice (if less than all or substantially all of the Demised Premises is rendered untenantable by such fire or other casualty), and (II) Tenant, on such date set by Landlord, shall vacate the Demised Premises and surrender the Demised Premises to Landlord in accordance with the terms of this Lease that govern Tenant's obligations upon the expiration or earlier termination of the Term.

Section 12.03  Landlord's Obligation to Rebuild:

If all or any portion of the Demised Premises is damaged by fire or other casualty insurable under a standard fire insurance policy with standard extended coverage endorsements and if this Lease is not terminated, Landlord shall, within a reasonable time following the date Landlord has obtained permits, approvals and necessary insurance proceeds, repair or rebuild the Demised Premises or such portion to its or their condition immediately prior to the Commencement Date. Landlord shall not be obligated to expend in such repair or rebuilding any sums greater than the proceeds of any such insurance policy carried by Landlord.

Section 12.04  Tenant's Obligation to Rebuild:

If this Lease is not terminated, Tenant shall, at its own cost and expense, repair and restore the entire Demised Premises, to the extent not repaired by Landlord, in accordance with the provisions of Section 3.04. Tenant shall commence the performance of its work when notified by Landlord that the work to be performed by Landlord has proceeded to the point where the work to be performed by Tenant can, in accordance with good construction practices,

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

then be commenced. Tenant shall perform such work in a manner that will restore the Demised Premises to its condition immediately prior to such occurrence.

Section 12.05  Waiver of Subrogation:

Landlord and Tenant each hereby releases the other, its officers, directors, trustees, employees and agents, from liability or responsibility (to the other or anyone claiming through or under them by way of subrogation or otherwise) for any loss or damage to the Building, the Demised Premises or any of such releasing party's fixtures, personal property, improvements and alterations in or about the Demised Premises, the Building, Landlord's Parcel or the Shopping Center (including any deductibles or self-insured retentions) that is caused by or results from risks insured or would have been insured against under any special form of loss property insurance policies actually carried by such releasing party or deemed to be carried by such releasing party which could be covered by special form of loss coverage (or its equivalent), even if such fire or other casualty shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible. Landlord and Tenant each agree that any special form of loss property insurance policies carried by each of them respectively and covering the Demised Premises or their contents will include such a clause or endorsement as long as the same shall be obtainable.

Section 12.06  Waiver:

Tenant hereby specifically waives any and all rights it might otherwise have under any law or statute, as a result of a fire or other casualty occurring with respect to the Demised Premises or the Shopping Center.

ARTICLE 13  CONDEMNATION.

Section 13.01  Definitions:

Within the meaning of Article XIII, the following words have the following meaning:

(a)     Award:  means the award for or proceeds of any Taking including accrual interest thereon, less all expenses in connection therewith, including reasonable attorney's fees.

(b)     Taking:  means the taking of or damage to the Demised Premises, the Building, Landlord's Parcel or the Shopping Center or any portion thereof, as the case may be, as the result of the exercise of any power of eminent domain, condemnation, or purchase under threat in lieu thereof.

(c)     Taking Date:  means, with respect to any Taking, the date on which the condemning authority shall have the right to possession of the Demised Premises, the Building, Landlord's Parcel or the Shopping Center or any portion thereof, as the case may be.

Section 13.02  Total or Substantial Partial Taking of Demised Premises:

In the event of a Taking of the whole of the Demised Premises, other than a Taking for temporary use, this Lease shall automatically terminate as of the Taking Date. In the event of a Taking of any portion of the Demised Premises, any portion of the Building, any portion of Landlord's Parcel or any portion of the Shopping Center (other than the Demised Premises) that adversely affects Landlord's Parcel, Landlord may, at its option, terminate this Lease by giving notice to Tenant within six (6) months of the date of such Taking.

Section 13.03  Restoration:

In the event of a Taking of a portion of the Demised Premises other than a Taking for temporary use and this Lease shall not terminate or be terminated under the provisions of Section 13.02 hereof, Rent shall be reduced in the proportion that the area so Taken bears to the entire area contained within the Demised Premises. If a part of the Demised Premises is taken, Landlord may restore or cause to be restored the remainder to the extent practical. However, Landlord may refuse to restore the remainder. If Landlord refuses to restore the remainder and gives notice of its refusal to Tenant, either party may cancel this Lease by giving notice to the other within ninety (90) days after Landlord shall have given notice of its determination not to repair the damage.

01520049-3                              27

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 13.04  Taking for Temporary Use:

If there is a Taking of the Demised Premises for temporary use, this Lease shall continue in full force and effect, and Tenant shall continue to comply with all of the provisions thereof, except as such compliance shall be rendered impossible or impracticable by reason of such Taking and Rent shall not abate during the course of such Taking.

Section 13.05  Disposition of Awards:

All Awards arising from a total or partial Taking of the Demised Premises, the Building, Landlord's Parcel or of Tenant's leasehold interest, shall belong to Landlord without any participation by Tenant.  Tenant hereby assigns to Landlord any share of such Award which may be awarded to Tenant.  Nothing contained herein shall be construed to preclude Tenant, at its sole cost and expense, from independently prosecuting any claim directly against the condemning authority in such condemnation proceedings for loss of business, depreciation to, damage to, cost of removal of and for the value of stock, trade fixtures, furniture and other personal property belonging to Tenant, and any award therefor shall belong solely to Tenant.

## ARTICLE 14  INDEMNITY.

Section 14.01  Claims:

Definition:  Within the meaning of Article XIV, "Claims" means any losses, claims, suits, proceedings, actions, causes of action, responsibility, liability, demands, judgments, and executions, including reasonable attorney's fees and expenses for such Claims and for enforcing this indemnification.

Section 14.02  Tenant Indemnity:

(a)     Tenant hereby indemnifies, defends and agrees to hold and save Landlord, Landlord's managing agent and their respective direct and indirect owners, members, partners, managers, directors, officers, employees, and any Master Lessor and Mortgagee (collectively "Landlord Indemnitees" and individually "Landlord Indemnitee") harmless from and against any and all Claims, which either (i) arise from or are in connection with the possession, use, occupation, management, repair, maintenance or control of the Demised Premises, or any portion thereof; (ii) arise from or are in connection with any act or omission of Tenant or Tenant's Agents; (iii) result from any Default, breach, violation or nonperformance of this Lease or any provision therein by Tenant; or (iv) arise from any Claims for bodily injury (including death), personal injury (including violation of civil rights, defamation, wrongful arrest and invasion of privacy), property damage, theft, and damage to the environment, alleged to have been caused by Tenant or Tenant's Agents.  Tenant shall defend any actions, suits and proceedings which may be brought against Landlord Indemnitees respect to the foregoing or in which they may be impleaded.  Tenant shall pay, satisfy and discharge any judgments, orders and decrees which may be recovered against Landlord Indemnitees in connection with the foregoing.  Tenant, upon notice from Landlord, shall defend the same at Tenant's expense by counsel reasonably satisfactory to Landlord.  This indemnification agreement is separate and apart from and in no way limited by, any insurance provided pursuant to this Lease or otherwise.  Landlord shall give prompt notice to Tenant of any Claims related hereto.

(b)     This indemnity shall survive the expiration or early termination of this Lease.

## ARTICLE 15  INSURANCE:

Section 15.01  Insurance:

Tenant shall provide on or before it enters the Demised Premises for any reason and shall keep in force during the Term, the following types of insurance coverages:

(a)     Worker's Compensation insurance with statutory limits for all applicable federal or state regulations for the state where the Demised Premises is located and Employers Liability insurance with policy limits of not less than One Million and 00/100 ($1,000,000.00) Dollars per accident, One Million and 00/100 ($1,000,000.00) Dollars disease each employee and One Million and 00/100 ($1,000,000.00) Dollars disease policy limit.

01520049-3                                                28

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(b)     Commercial General Liability insurance as will protect Tenant and Landlord, Landlord's managing agent, and any Master Lessor and Mortgagee from any and all claims for damages due to bodily injury (including death), personal and advertising injury, or property damage.  Such insurance coverage shall:  (i) be as broad as the current edition of Insurance Service Office (ISO) Form CG 00 01 or its equivalent; (ii) provide minimum limits of Five Million and 00/100 ($5,000,000.00) Dollars per occurrence, (including excess and umbrella liability coverage); and (iii) include at least those coverages generally designated Premises/Operations, Products/Completed Operations, and contain no exclusions or endorsements removing or limiting coverage for insured contracts as defined in ISO Form CG 00 01.  This policy shall include Contractual Liability coverage.  The policy cannot have a deductible in excess of Twenty-five Thousand and 00/100 ($25,000.00) Dollars without the written approval of Landlord.

(c)     In the event that alcoholic beverages are sold or consumed in the Demised Premises, Liquor Legal Liability insurance coverage either as part of Tenant's Commercial General Liability insurance program or as separate coverage, covering any claim for damages due to bodily injury (including death), personal injury, or property damage arising out of or in any way connected with the selling, serving, or distribution of alcohol. Such insurance shall provide minimum limits of not less than Five Million and 00/100 ($5,000,000.00) Dollars. Landlord Indemnities shall be named as additional insureds.  If Tenant fails to obtain or to continue this coverage, Tenant shall immediately discontinue selling and serving alcoholic beverages from the Demised Premises.

(d)     In the event Tenant brings any vehicle (owned, hired or leased by Tenant) on to the Shopping Center, Tenant shall maintain Commercial Auto Liability Insurance. Tenant shall maintain automobile liability with a limit of not less than One Million and 00/100 ($1,000,000.00) Dollars combined single limit each accident covering liability arising out of any auto (including owned, hired, and non-owned autos).

(e)     Fire and other casualties and risks covered by special form of loss property insurance under the ISO Special Causes of Loss Form (or equivalent), including plate glass and business interruption, inclusive of rental insurance for a minimum period of one (1) year (inclusive of Minimum Rent, estimated Tax Contributions, Special Taxes and Tenant's Contribution), terrorism, and increased cost of construction, on all alterations and all contents of the Demised Premises, including leasehold improvements as will protect Tenant and Landlord from damage to real and personal property of Landlord while in the care, custody, or control of Tenant.  Such insurance shall provide coverage in amount not less than the actual replacement value of the property.  In addition, Tenant shall insure for loss from flood, including coverage for water damage from all causes, including, but not limited to, sprinkler damage, sewer discharge or backup, water line breakage, and overflow from other tenant spaces or from the Landlord's Parcel Common Area.

(f)     Automobile liability coverage, including owned, non-owned and hired automobiles, with limits of not less than One Million and 00/100 ($1,000,000.00) Dollars combined single limit for bodily injury and property damage.

(g)     Tenant shall also carry insurance against such other hazards and in such amounts as may be customarily carried by tenants, owners and operators of similar properties as Landlord may reasonably require for its protection from time to time.

Section 15.02  General Provisions with Respect to Insurance:

(a)     All insurance coverages maintained by Tenant shall be primary insurance as respect to Landlord, Landlord's managing agent, and any Master Lessor and Mortgagee.  Any insurance or self-insurance maintained by Landlord shall be in excess and noncontributory to Tenant's insurance.

(b)     All insurance required under this Lease shall be issued by insurance companies authorized to do business in the jurisdiction where the Demised Premises is located. Such companies shall have a policyholder rating of at least " A-" and be assigned a financial size category of at least "Class VIII" as rated in the most recent edition of "Best's Key Rating Guide" for insurance companies. If at any time during the Term the rating of any of Tenant's insurance carriers is reduced below the rating required pursuant to the terms hereof, Tenant shall use

01520049-3                                   29

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

commercially reasonable efforts to promptly replace the insurance coverage(s) with coverage(s) from a carrier whose rating complies with the foregoing requirements.

(c) Tenant shall furnish to Landlord simultaneously with Tenant's execution and delivery of this Lease, Certificates of Insurance, additional insured and waiver of subrogation endorsements evidencing all coverages specified in this Lease. Renewal Certificates of Insurance, additional insured and waiver of subrogation endorsements shall be similarly submitted as required to document continuous coverage. These Certificates and endorsements shall name Landlord as additional insured, and contain a provision that the coverages afforded under the policies shall not be materially modified or cancelled until at least thirty (30) days prior written notice has been delivered to Landlord.

(d) Notwithstanding the fact that any liability may be covered by insurance, liability shall in no way be limited by the amount of insurance recovery or the amount of insurance in force or required by any provisions of this Lease.

(e) In the event that Tenant fails to maintain in full force and effect any of the insurance coverage's described in this Article 15, Landlord shall have the right (but not the obligation) to either declare a Default in accordance with the provisions of Section 16.01, or to procure and maintain such insurance or any part thereof at Tenant's expense, and the cost of such insurance shall be payable by Tenant to Landlord as additional rent. The procurement of such insurance or any part thereof by Landlord shall not discharge or excuse Tenant's obligation to comply with the provisions of this Article 15.

(f) Landlord, Landlord's agents and their officers and employees shall not be liable in any manner to Tenant, Tenant's Agents or its visitors for any injury or damage to Tenant, Tenant's Agents or its visitors, or their property, caused by the criminal or intentional misconduct of third parties or of Tenant, Tenant's Agents or visitors on or about the Demised Premises, Building and/or Shopping Center (including any parking garages and parking areas). All claims against Landlord, Landlord's agents and their respective employees for any such damage or injury are hereby expressly waived by Tenant.

(g) Landlord, Landlord's agent and their respective employees assume no liability or responsibility with respect to the conduct and operation of the business to be conducted upon the Demised Premises. Landlord, Landlord's agents and their respective employees shall not be liable for any accident or injury to any person or persons or property in or about the Demised Premises which are caused by the conduct and operation of such business or by virtue of equipment or property of Tenant in the Demised Premises.

(h) Tenant shall promptly report to Landlord's agents all accidents and incidents occurring on or about the Demised Premises, the Building and/or the Shopping Center which involve or relate to the security and safety of persons and/or property.

ARTICLE 16  FAILURE TO PERFORM, DEFAULTS, REMEDIES.

Section 16.01  Defaults, Conditional Limitation:

(a) Each of the following events shall constitute a Default:

(i) If Tenant, or any Tenant's Guarantor, shall (x) make an assignment for the benefit of creditors, (y) file or acquiesce to a petition in any court (whether or not pursuant to any statute of the United States or of any state) in any bankruptcy, reorganization, composition, extension, arrangement or insolvency proceedings, (z) make an application in any such proceedings for or acquiesce to the appointment of a trustee or receiver for it or all of any portion of its property.

(ii) If any petition shall be filed against Tenant, or any Tenant's Guarantor, to which neither of them acquiesce in any court (whether or not pursuant to any statute of the United States or any state) in any bankruptcy, reorganization, composition, extension, arrangement or insolvency proceedings, and (x) Tenant or any Tenant's Guarantor shall thereafter be adjudicated a bankrupt, or (y) such petition shall be approved by any such court, or (z) such proceedings shall not be dismissed, discontinued or vacated within thirty (30) days.

01520049-3                                    30

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(iii)     If, in any proceeding, pursuant to the application of any person other than Tenant, or any Tenant's Guarantor to which neither of them acquiesce, a receiver or trustee shall be appointed for Tenant, or any Tenant's Guarantor or for all or any portion of the property of either and such receivership or trusteeship shall not be set aside within thirty (30) days after such appointment.

(iv)     If Tenant shall refuse to take possession of the Demised Premises upon the Commencement Date or shall vacate the Demised Premises and permit the same to remain unoccupied, unattended or not continuously operated.

(v)     If Tenant shall fail to pay any Rent, additional rent or any other charge required to be paid by Tenant hereunder, when the same shall become due and payable, and such failure shall continue for ten (10) days after Landlord shall give notice of the failure to Tenant.

(vi)     If Tenant shall fail to perform or observe any other requirement of this Lease to be performed or observed by Tenant but not specifically referred to in this Section, and such failure shall continue for twenty (20) days after Landlord shall give notice of the failure to Tenant, provided, however, in the case of any default referred to in this subsection (vii) which cannot be cured by the payment of money and cannot with diligence be cured within such twenty (20) day period, if Tenant shall commence to cure the same within such twenty (20) day period and thereafter shall prosecute the curing of same with diligence and continuity, then the time within which such failure may be cured shall be extended for such period as may be necessary to complete the curing of the same with diligence and continuity not to exceed sixty (60) days).

(b)     This Lease is subject to the following limitation: If at any time, a Default shall occur, then upon the happening of any one or more of the aforementioned Defaults, Landlord may give to Tenant a notice of intention to end the Term of this Lease at the expiration of five (5) days from the date of service of such notice of termination.  At the expiration of such five (5) days this Lease and the Term as well as all of the right, title and interest of the Tenant hereunder shall wholly cease and expire, and Tenant shall then quit and surrender the Demised Premises to Landlord.  But notwithstanding such termination, surrender, and the expiration of Tenant's right, title, and interest, Tenant's liability under all of the provisions of this Lease shall continue.

(c)     An event of default by Landlord shall occur if Landlord fails to perform any of Landlord's obligations under this Lease, which failure continues for more than twenty (20) days after Tenant's delivery of written notice to Landlord specifying such failure, or if such failure is of a nature to require more than twenty  (20) days for remedy and continues beyond the time reasonably necessary to cure (and Landlord has not undertaken procedures to cure the failure within such twenty (20) day period and diligently pursued such efforts to complete such cure).  In such event, Tenant may enforce this Lease by a suit or suits in equity or at law. Additionally, if such default is of a nature which (i) could be remedied by Tenant without affecting other tenants, (ii) relates solely to the Demised Premises and (iii) materially and adversely affects Tenant's use and operation of the Demised Premises, then Tenant may, after a second written notice to Landlord and Landlord's failure to commence and thereafter diligently pursue to cure such default within ten (10) business days after receipt of such second written notice, at its option, incur any reasonable expense necessary to cure the default of Landlord specified in such notice and invoice Landlord for the reasonable and actual cost thereof.  If Tenant elects to exercise self-help as aforesaid, such repair or replacement shall be performed by Tenant in a manner that is architecturally compatible with the surrounding area and using the same materials or if not available, materials that are substantially similar to that which existed at the time the repair or replacement became necessary.

Section 16.02  Landlord's Reentry:

If this Lease shall be terminated as herein provided, Landlord, or its agents or employees, may reenter the Demised Premises at any time and remove therefrom Tenant, Tenant's Agents, and subtenants, and any licensees, concessionaires or invitees, together with any of its or their property, either by summary dispossess proceedings or by any suitable action or proceeding at law or by force or otherwise.  In the event of such termination, Landlord may repossess and enjoy the Demised Premises.  Landlord shall be entitled to the benefits of all provisions of law respecting the speedy recovery of lands and tenements held over by Tenant, or proceedings in

01520049-3                                          31

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

forceable entry and detainer. Tenant waives any rights to the service of any notice of Landlord's intention to reenter provided for by any present or future law. Landlord shall not be liable in any way in connection with any action it takes pursuant to the foregoing. Notwithstanding any such reentry, repossession, dispossession or removal, Tenant's liability under all of the provisions of this Lease shall continue.

Section 16.03  Deficiency:

(a)    In case of reentry, repossession or termination of this Lease, whether the same is the result of the institution of summary or other proceedings or not, Tenant shall remain liable (in addition to accrued liabilities) to the extent legally permissible for (i) the (x) Rent, additional rent and all other charges provided for herein until the date this Lease would have expired (or, in the alternative, as liquidated damages, an amount equal to the Rent, additional rent and such other charges) had such termination, reentry or repossession not occurred; and (y) expenses to which Landlord may be put in reentering the Demised Premises repossessing the same; making good any Default of Tenant; painting, altering or dividing the Demised Premises; combining or placing the same in proper repair; protecting and preserving the same by placing therein watchmen and caretakers; reletting the same (including attorney's fees and disbursements, marshal's fees, brokerage fees, in so doing); and any expenses which Landlord may incur during the occupancy of any new tenant; minus (ii) the net proceeds of any reletting. Tenant agrees to pay to Landlord the difference between items (i) and (ii) hereinabove with respect to each month, at the end of such month. Such payment shall be made to Landlord at the lock box address as shown in Section 19.04A or such other address as Landlord may designate by giving notice to Tenant. Any suit brought by Landlord to enforce collection of such difference for any one month shall not prejudice Landlord's right to enforce the collection of any difference for any subsequent month. In addition to the foregoing, Tenant shall pay to Landlord such sums as the court which has jurisdiction thereover may adjudge reasonable as attorney's fees with respect to any successful lawsuit or action instituted by Landlord to enforce the provisions hereof.

(b)    In addition to any other rights and remedies available to Landlord under this Lease and/or at law and/or in equity, Tenant shall reimburse Landlord upon demand the unamortized portion of: (i) any allowance for Tenant improvements; (ii) brokerage fees paid by Landlord in connection with this Lease; (iii) costs expended by Landlord in connection with any tenant improvements made by Landlord; and (iv) all other costs, expenses and other sums incurred by Landlord in connection with preparing and/or improving the Demised Premises for Tenant's occupancy under this Lease.

Landlord may relet the whole or any part of said Demised Premises for the whole of the unexpired period of this Lease, or longer, or from time to time for shorter period, for any rental then obtainable, giving such concessions of rent and making such special repairs, alterations, decorations and paintings for any new tenant as it may in its sole and absolute discretion deem advisable. Tenant's liability as aforesaid shall survive the institution of summary proceedings and the issuance of any warrant thereunder. Landlord shall be under no obligation to relet or to attempt to relet the Demised Premises or to mitigate its damages in any other fashion arising from any deficiency referred to in this Section 16.03.

Section 16.04  Agreed Final Damages:

If Landlord so elects, Tenant shall pay Landlord, on demand, as liquidated, agreed final damages, the Rent, additional rent and all other charges which would have been payable by Tenant from the date of such demand to the date when this Lease would have expired if it had not been terminated as aforesaid, discounted to present value using a discount factor of four percent (4%). Upon payment of such liquidated and agreed final damages, Tenant shall be under no further liability with respect to the period after the date of such demand.

Section 16.05  Intentionally Deleted.

Section 16.06  Waiver of Right of Redemption:

Tenant hereby expressly waives (to the extent legally permissible), for itself and all persons claiming by, through, or under it, any right of redemption or for the restoration of the operation of this Lease under any present or future law in case Tenant shall be dispossessed for

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

any cause, or in case Landlord shall obtain possession of the Demised Premises as herein provided.

Section 16.07  Landlord's Right to Perform for Account of Tenant:

If Tenant shall be in Default hereunder, Landlord or any Mortgagee may, at any time thereafter, cure said Default for the account and at the expense of Tenant. Tenant shall pay, with interest at the Lease Interest Rate (as hereinafter defined), on demand, to Landlord, the amount so paid, expended, or incurred by the Landlord and any expense of Landlord including attorney's reasonable fees incurred in connection with such Default; and all of the same shall be deemed to be additional rent.

Section 16.08  Additional Remedies, Waivers, Etc.:

With respect to the rights and remedies of and waivers by Landlord: (a) the rights and remedies of Landlord set forth herein shall be in addition to any other right and remedy now and hereafter provided by law. All such rights and remedies shall be cumulative and not exclusive of each other. Landlord may exercise such rights and remedies at such times, in such order, to such extent, and as often as Landlord deems advisable without regard to whether the exercise of one right or remedy precedes, concurs with or succeeds the exercise of another. (b) A single or partial exercise of a right or remedy shall not preclude (i) a further exercise thereof, or (ii) the exercise of another right or remedy, from time to time. (c) No delay or omission by Landlord in exercising a right or remedy shall exhaust or impair the same or constitute a waiver of, or acquiescence to a Default. (d) No waiver of a Default shall extend to or affect any other Default or impair any right or remedy with respect thereto. (e) No action or inaction by Landlord shall constitute a waiver of a Default. (f) No waiver of a Default shall be effective, unless it is in writing.

Section 16.09  Distraint:

In addition to all other rights and remedies, if Tenant shall be in Default hereunder, Landlord shall, to the extent permitted by law, have a right of distress for Rent and a lien on all of Tenant's fixtures, merchandise, and equipment in the Demised Premises, as security for Rent and all other charges payable hereunder.

ARTICLE 17  TENANT'S CERTIFICATE.

At any time within ten (10) days after request by Landlord, Tenant shall, execute, acknowledge and deliver to Landlord, any Mortgagee, assignee of a Mortgagee, any purchaser, or any other person, specified by Landlord, an Estoppel Certificate in the form of Exhibit F annexed hereto and made a part hereof, modified to conform to the type of transaction or the circumstances for which the request is being made, e.g. mortgage, assignment, sale, etc. Failure of Tenant to timely respond to Landlord's request shall be deemed a certification by Tenant that the facts set forth in Landlord's submission to Tenant are true, correct and complete.

ARTICLE 18  RIGHT OF ACCESS.

Section 18.01  Entry:

During any reasonable time before and after the date of the Commencement Date, Landlord and/or any Mortgagee may enter upon the Demised Premises, any portion thereof and any appurtenances thereto (with men and materials, if required) for the purpose of: (a) inspecting same; (b) making such repairs, replacements or alterations which it may be required to perform as herein provided or which are required in order to comply with laws and court orders or to prevent waste or deterioration, regardless of whether Landlord is responsible for such repairs, maintenance or compliance with laws or which it may deem desirable for the Demised Premises; and (c) showing the Demised Premises to prospective purchasers, mortgagees or lessees.

Section 18.02  Easement for Pipes:

Tenant shall permit Landlord to erect, use, maintain and repair pipes, cables, conduits, plumbing, vents and wires in, to and through the Demised Premises as and to the extent that Landlord may now or hereafter deem to be necessary or appropriate for the proper operation and maintenance of the Building or Landlord's Parcel.

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

ARTICLE 19  INTERPRETATION, NOTICE, MISCELLANEOUS.

Section 19.01  Interpretation:

(a)     Every term, condition, agreement or provision contained in this Lease which imposes an obligation on Tenant, shall be deemed to be also a covenant by Tenant.

(b)     Any reference herein to subtenants or licensees shall not be deemed to imply that any subtenants or licensees are permitted hereunder.  Any references herein to any extensions or renewals of the Term or any period during which Tenant may be in possession after the Expiration Date shall not be deemed to imply that any extension or renewal of the Term is contemplated hereby or that Tenant shall be permitted to remain in possession after the expiration of the Term.

(c)     If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease, or the application of such provision to persons or circumstances other than those to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

(d)     The captions and headings used throughout this Lease are for convenience of reference only and shall not affect the interpretation of this Lease.

(e)     Anything in this Lease to the contrary notwithstanding:

(i)     Any provision which permits or requires a party to take any particular action shall also be deemed to permit or require a party to cause such action to be taken; and

(ii)     Any provision which requires any party not to take any particular action shall be deemed to require the party not to permit such action to be taken by any person or by operation of law.

(f)     This Lease has been executed in several counterparts; but the counterparts shall constitute but one and the same instrument.

(g)     Wherever a requirement is imposed on any party hereto, it shall be deemed that such party shall be required to perform such requirement at its own expense unless it is specifically otherwise provided herein.

(h)     The singular includes the plural and the plural includes the singular.

(i)     This Lease shall be governed by and construed in accordance with the laws of the State in which the Demised Premises is situated, without regard to principles of conflict of laws.  Any action to enforce the provisions of this Lease shall be brought in the court of competent jurisdiction in the State in which the Demised Premises is situated.

(j)     The obligations and liabilities of Tenant pursuant to this Lease shall be joint and several if Tenant consists of more than one (1) entity.

(k)     All exhibits and/or addendum(s), and/or rider(s), if any, attached to this Lease are hereby made a part of this Lease, with full force and effect as if set forth herein.  This Lease sets forth all the covenants, promises, agreements and conditions, and understandings between Landlord and Tenant concerning the Demised Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are set forth herein and none thereof shall be used to interpret, construe, supplement or contradict this Lease.  Landlord has made no representations or warranties regarding the profitability of the Demised Premises, the Building or Landlord's Parcel, and Tenant has not entered into this Lease in reliance on any such representations, warranties or financial projections prepared or furnished to Tenant by Landlord.  The parties agree that any deletion of language from this Lease prior to its mutual execution by Landlord and Tenant shall not be construed to have any particular meaning or to raise any presumption, canon of construction or implication, including, without limitation, any implication that the parties intended thereby to state the converse, obverse or opposite of the deleted language.  No alteration, amendment, change or

01520049-3                                      34

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party.

Section 19.02  Construing Various Words and Phrases:

(a)    Wherever it is provided herein that a party may perform an act or do anything, it shall be construed that that party may, but shall not be obligated to, so perform or so do.

(b)    The words "reenter" and "reentry" as used herein are not restricted to their technical legal meaning.

(c)    The following words and phrases shall be construed as follows:

(i)    "At any time" shall be construed as, "at any time or from time to time".

(ii)    "Any" shall be construed as "any and all".

(iii)    "Including" shall be construed as "Including but not limited to".

Section 19.03  No Oral Changes:

This Lease may not be changed or terminated orally.

Section 19.04  Communications:

Any notice, request, consent, approval, waiver or other communication under this Lease shall be in writing and shall be deemed to have been duly given and effective when same is received or refused, provided the same is mailed by certified mail, return receipt requested, postage prepaid, or sent by a generally recognized overnight carrier with receipted delivery, such as, but not limited to Federal Express, addressed:

(a)    If to Landlord, to the address designated as Landlord's Notice Address in Article I, or such other address as Landlord designates by giving notice thereof to Tenant, with a copy thereof under separate cover to the address designated as Landlord's Notice Copy Address in Article I, and with a copy(s) thereof under separate cover to the address(es) and person(s) designated as Landlord's Mortgagee Notice Copy Address in Article I, if any, or to such other person or party as Landlord shall designate by giving notice to Tenant, and

(b)    If to Tenant, to the address designated as Tenant's Notice Address in Article I, or such other address as Tenant shall designate by giving notice thereof to Landlord, with a copy thereof under separate cover to the address designated as Tenant's Notice Copy Address in Article I or to such other person or party as Tenant shall designate by giving notice thereof to Landlord.

Notices may be given by counsel on behalf of their respective clients.

Section 19.04A.        Payments to Landlord:

(a)    All payments under this Lease should be made payable to the Landlord and addressed to:

If the payment is made by wire transfer:

Receiving Bank:                      PNC Bank
Receiving Bank Address:           500 First Ave, Pittsburgh, PA 15219
PNC Bank ABA:                     041000124
Beneficiary:                         Seritage SRC Finance LLC (Blocked)
Beneficiary Account Number:       4645219913

If payment is made by check:

01520049-3                                    35

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Seritage SRC Finance LLC
P.O. Box 776148
Chicago, IL 60677-6148

or such other payee or address as Landlord may designate.

(b)    In the event any payment under this Lease shall be made in the form of a check from any other person or entity  other than the person or entity named in this Lease, the acceptance of same by Landlord shall not, under any circumstances, (i) create any landlord-tenant relationship between Landlord and the party tendering the payment; (ii) be deemed recognition of a subletting or an assignment of this Lease; or (iii) grant to the party tendering such payment any rights hereunder, regardless of the number of times that such payment shall be made by such other person, firm or corporation, it being the express agreement of Landlord and Tenant that any payment accepted by Landlord for Tenant's benefit or account from a third-party shall be solely an accommodation to Tenant.  Notwithstanding the foregoing, nothing contained herein shall obligate Landlord to accept payment from any person or entity other than Tenant.

Section 19.05  Intentionally Deleted.

Section 19.06  Method of Payment:

Except as herein otherwise expressly provided, all amounts payable under this Lease shall be payable in coin or currency of the United States of America which at the time of payment is legal tender for public and private debts.

Section 19.07  Successors and Assigns:

Subject to the provisions hereof, this Lease shall bind and inure to the benefit of the parties and their respective successors, representatives, heirs and assigns.

Section 19.08  Responsibility of Tenant:

Any restriction on or requirement imposed upon Tenant hereunder shall be deemed to extend to Tenant's Guarantor, Tenant's subtenants, concessionaires and licensees and it shall be Tenant's obligation to cause the foregoing persons to comply with such restriction or requirement.

Section 19.09  Holdover:

If Tenant shall holdover after the end of the Term, such holding over shall be construed as a tenancy at sufferance, subject to all of the provisions, conditions and obligations of this Lease, except that, at Landlord's option, monthly Minimum Rent shall be an amount equal to two (2) times the aggregate Rent that was payable under this Lease during the last month of the Term. Tenant's continued occupancy of the Demised Premises during any holdover period shall not prevent Landlord from prosecuting any unlawful detainer proceeding.  Landlord's acceptance of any payments from Tenant after the Expiration Date shall be deemed to be on account of the amount to be paid by Tenant in accordance with the provisions of this Article 16.

Section 19.10  Size of Demised Premises:

Either party may, at any time prior to the date that is thirty (30) days following the Commencement Date, cause the Gross Floor Area of the Demised Premises to be re-measured, at the cost of the electing party.  If resulting from the re-measurement, the actual Floor Area of the Demised Premises, is greater or less than thirty-seven thousand thirty-five (37,035) square feet of Floor Area, as determined in accordance with Section 2.12 hereof, the electing party shall forward the results of such re-measurement to the other party in writing promptly upon completion of the re-measurement.  In the event the other party agrees on the re-measurement, the Minimum Rent per annum and other charges or calculations based upon Floor Area shall be increased or decreased to reflect the actual floor area of the Demised Premises.  For the purposes of determining Minimum Rent, Allowance, Tax Contribution and Tenant's Contribution, the Floor Area of the Demised Premises shall be deemed to be thirty-six thousand six hundred sixty-nine (36,669) square feet unless Landlord and Tenant determine otherwise.  If the other party disagrees with such re-measurement, the other party may, within thirty (30) days after its receipt of the electing party's re-measurement, cause the Demised Premises to be measured once again

01520049-3                                    36

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

at such other party's expense. If the results of the second re-measurement are in agreement with the first re-measurement, this Lease shall be amended as set forth above. If the parties are unable to agree as to the Floor Area of the Demised Premises after the second re-measurement, they shall, within thirty (30) days after completion of the second re-measurement, jointly appoint a licensed architect or engineer to re-measure the Demised Premises. The parties shall share the reasonable cost of such architect or engineer equally. The results of such third re-measurement shall be definitive and binding on the parties and this Lease shall be amended accordingly.

Section 19.11  Liability of Landlord:

Notwithstanding anything to the contrary herein, neither Landlord, nor any director, employee, officer, trustee or direct or indirect beneficial owner of Landlord or of any parent or other affiliate of Landlord or any of their respective directors, employees, officers or trustees shall have any personal liability with respect to any provision of this Lease, or any obligation or liability arising hereunder or in connection herewith and none of their assets (other than the Demised Premises) shall be subject to levy, execution or other judicial process for the satisfaction of Tenant's claims. Tenant shall look solely to the equity of the then owner of the Demised Premises in the Demised Premises (or if the interest of the Landlord is a leasehold interest, Tenant shall look solely to such leasehold interest) for the satisfaction of any remedies of Tenant in the event of a breach by the Landlord of any of its obligations. Such exculpation of liability shall be absolute and without any exception whatsoever.

With respect to any provision of this Lease which provides, in effect, that Landlord shall not unreasonably withhold or unreasonably delay any consent or any approval, Tenant, in no event, shall be entitled to make, nor shall Tenant make, any claim for, and Tenant hereby waives any claim for money damages; nor shall Tenant claim any money damages by way of setoff, counterclaim or defense, based upon any claim or assertion by Tenant that Landlord has unreasonably withheld or unreasonably delayed any consent or approval; but Tenant's sole remedy shall be an action or proceeding to enforce any such provision, or for specific performance, injunction or declaratory judgment.

All property (whether real, personal or mixed) at any time located in or upon the Demised Premises shall be at the risk of the Tenant only, and Landlord shall not become liable for any damage to said property or to Tenant, or to any other person or property, caused by water leakage, steam, sewerage, gas or odors or for any damage whatsoever done or occasioned by or from any boiler, plumbing, gas, water, steam or other pipes, or any fixtures or equipment or appurtenances whatsoever, or for any damage arising from any act or neglect or arising by reason of the use of, or any defect in, the Demised Premises or any of the fixtures, equipment or appurtenances therein contained, or by the act or neglect of any other person or caused in any other manner whatsoever.

Section 19.12  Waiver of Jury Trial:

The parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use and occupancy of the Demised Premises and/or any claim of injury or damage.

Section 19.13  Temporary Utility Charges:

Commencing on the date that Tenant is tendered possession of the Demised Premises, Tenant shall pay for electric service and gas service (if gas service is available) at the same rates payable by Landlord. To the extent Tenant is able to change the utility billing accounts into Tenant's name, Tenant shall promptly do so. In the event Tenant has not changed such utility billing accounts into Tenant's name within ten (10) days after the date Tenant enters the Demised Premises, then effective after the expiration of such ten (10) day period Tenant shall pay the actual cost thereof as Additional Rent to Landlord.

Section 19.14  Interest:

Any payment required to be made by Tenant under the provisions of this Lease not made by Tenant when and as due shall thereupon be deemed to be due and payable by Tenant to

01520049-3                                      37

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Landlord on demand with interest thereon at eighteen percent (18%) per annum or the maximum interest rate permitted by law, whichever is lower ("Lease Interest Rate") computed from the date when the particular amount became due to the date of payment thereof to Landlord.

Section 19.15  Late Charge:

Notwithstanding anything to the contrary herein contained and in addition to the interest provided for in Section 19.14, in order to cover the extra expense involved in handling delinquent payments, Tenant, at Landlord's option, shall pay a "late charge" of $100.00 when any payment of Rent or additional rent hereunder is paid more than ten (10) days after the due date thereof ("Delinquency"). It is understood and agreed that this charge is for additional expense incurred by Landlord and shall not be considered interest.

Section 19.16  Consequential Damages:

Landlord and Tenant agree that as to Landlord, Tenant shall not have any right to sue for or collect, and Landlord shall never have any liability or responsibility whatsoever for, any consequential, punitive, special, exemplary or indirect damages including, without limitation, lost profits, whether proximately or remotely related to any default of Landlord under this Lease or any act, omission or negligence of Landlord, its agents, contractors or employees, and Tenant hereby waives any and all such rights. In addition to the foregoing, excluding any damages or claims made by Landlord relating to any holdover of the Demised Premises by Tenant, Landlord and Tenant agree that as to Tenant, Landlord shall not have any right to sue for or collect, and Tenant shall never have any liability or responsibility whatsoever for, any consequential, punitive, special, exemplary or indirect damages including, without limitation, lost profits, whether proximately or remotely related to any Default of Tenant under this Lease or any act, omission or negligence of Tenant, its agents, contractors or employees, and Landlord hereby waives any and all such rights.

Section 19.17  Intentionally Deleted

Section 19.18  Intentionally Deleted

Section 19.19  Real Estate Transfer Tax:

If a Real Estate Transfer Tax or similar tax is due as a result of the execution of this Lease, Tenant shall be required to pay such tax directly to the taxing authority(s) or at Landlord's election reimburse Landlord after Landlord has paid any such tax.

Section 19.20  Intentionally Deleted.

Section 19.21  Intentionally Deleted.

Section 19.22  No Presumption Against Drafter:

Landlord and Tenant agree and acknowledge that:

(a)    This Lease has been freely negotiated by Landlord and Tenant; and

In the event of any ambiguity, controversy, dispute or disagreement over the interpretation, validity or enforceability of this Lease or any of its covenants, terms or conditions, no inference, presumption or conclusion whatsoever shall be drawn against Landlord by virtue of Landlord's having drafted this Lease.

Section 19.23  Solicitation of Business:

Tenant shall not give samples, approach customers or otherwise solicit business in the Common Areas, nor shall Tenant distribute any handbills or other advertising matter in the Common Areas.

Section 19.24  Accord and Satisfaction:

Payment by Tenant or receipt by Landlord of a lesser amount than the Minimum Rent, additional rent or other charges herein stipulated shall be deemed to be on account of the earliest

01520049-3                                    38

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Minimum Rent, additional rent or other charges due from Tenant to Landlord. No endorsements or statement on any check or any letter accompanying any check or payment as Minimum Rent, additional rent or other charges shall be deemed an accord and satisfaction, and Landlord shall accept such check or payment without prejudice to Landlord's right to recover the balance of any and all Minimum Rent, additional rent or other charges due from Tenant to Landlord or to pursue any other remedy provided in this Lease or by law.

Section 19.25  OFAC Compliance:

Tenant represents and warrants that it is not listed, nor is it owned or controlled by, or acting for or on behalf of any person or entity, on the list of Specially Designated Nationals and Blocked Persons maintained by the Office of Foreign Assets Control of the United States Department of the Treasury, or any other list of persons or entities with whom Landlord is restricted from doing business with ("OFAC List").Notwithstanding anything to the contrary herein contained, Tenant shall not permit the Demised Premises or any portion thereof to be used, occupied or operated by or for the benefit of any person or entity or assign this Lease to an entity or person that is on the OFAC List. Tenant shall provide documentary and other evidence of Tenant's identity and ownership as may be reasonably requested by Landlord at any time to enable Landlord to verify Tenant's identity or to comply with any legal requirement.

Section 19.26  Inability to Perform:

(a)     Landlord shall not be required to carry out any of its obligations hereunder, nor be liable for loss or damage for failure to do so, nor shall the Tenant thereby be released from any of its obligations hereunder, where such failure arises by reason of delays caused by Force Majeure.

(b)     If Landlord is so delayed or prevented from performing any of its obligations, the period of such delay or such prevention shall be added to the time herein provided for the performance of any such obligation.

Section 19.27  Brokerage:

Tenant represents that there was no broker (other than any person designated as Broker in Article I) instrumental in consummating this Lease, and that no conversations or prior negotiations were had with any broker (other than the Broker) concerning the renting of the Demised Premises. Tenant agrees to hold Landlord harmless against any claims for brokerage commission or compensation arising out of any conversations or negotiations had by Tenant with any broker (other than the Broker). Landlord shall pay to Broker any and all commissions and/or fees payable to Broker arising out of or related to the transaction described in this Lease and/or any other transaction between Landlord and Tenant respecting the Demised Premises pursuant to a separate agreement between Landlord and Broker.

Section 19.28  Covenant of Quiet Enjoyment:

Landlord covenants that if Tenant pays the Rent and all other charges provided for herein, performs all of its obligations provided for hereunder, and observes all of the other provisions hereof, Tenant shall at all times during the Term peaceably and quietly have, hold and enjoy the Demised Premises, without any interruption or disturbance from Landlord, subject to the terms hereof.

Section 19.29  Submission of Lease to Tenant:

The submission by Landlord to Tenant of this Lease shall have no force or effect, shall not constitute an offer for the leasing of the Demised Premises, nor confer any rights or impose any obligation upon either party unless and until execution thereof by Landlord and the unconditional delivery of a fully executed original thereof to Landlord and Tenant or their representatives.

01520049-3                                    39

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Section 19.30  Intentionally Deleted.

Section 19.31  Construction - Adjacent Demised Premises:

If any construction, excavation or other building operation shall be about to be made or shall be made on any premises adjoining or above or below the Demised Premises, or on any other portion of the Building or Landlord's Parcel, including, but not limited to, any expansion or reconfiguration by the addition of new or reconfigured buildings, improvements or multi-level, decked or subsurface parking structures ("Expansion"), Tenant shall permit Landlord, or the adjoining owner, and their respective agents, employees, licensees and contractors, to enter the Demised Premises and to strengthen, add to or shore the foundations, walls, columns or supporting members thereof, and to erect scaffolding or protective barricades around and about the Demised Premises and to do any act or thing necessary for the safety or preservation of the Demised Premises, including, but not limited to, the closing of any entrance to or exit from the Demised Premises ("Construction Work"). Landlord shall not be liable for any inconvenience, disturbance, annoyance or loss of business arising from the Construction Work, but Landlord shall take reasonable steps so that the Construction Work will cause as little inconvenience, annoyance and disturbance to Tenant as reasonably possible consistent with accepted construction practice. Landlord shall have the right of access to enter upon the Demised Premises to perform the Construction Work and shall use reasonable efforts to complete the Construction Work as promptly as possible (considering the nature and extent of the work and subject to accepted construction practices). Landlord shall have the right to require Tenant to temporarily curtail its business or to close the Demised Premises if necessary in connection with the Construction Work. Accordingly, (i) if Landlord requires Tenant to temporarily suspend business or to close the Demised Premises because of the Construction Work, or (ii) if Tenant's use and occupancy of the Demised Premises or Tenant's access to the Demised Premises is materially interfered with, and Tenant temporarily closes for business, Tenant shall receive an abatement of Minimum Rent and any additional rent on a per diem basis for the number of days Tenant is required to close. Notwithstanding the foregoing, Tenant shall have no right to seek damages or to terminate this Lease because of the Construction Work, nor shall Tenant have the right to restrict, inhibit or prohibit the Expansion.

Section 19.32  Scaffolding:

Tenant acknowledges that Landlord may, from time to time, install and maintain scaffolding and/or a sidewalk bridge ("Scaffolding") outside of the Demised Premises if required by law or in connection with work being performed at the Building. The Scaffolding shall be erected in a way so as to not materially impair or restrict free access to the front entrance of the Demised Premises, and to minimize blockage and concealment of Tenant's show windows and of its signs. Landlord represents that all exposed bolts will be protected to prevent possible pedestrian accidents. Landlord shall provide lighting below the Scaffolding as reasonably required and shall repair any damage to the sidewalk resulting from the installation and/or removal of the Scaffolding. Landlord shall use reasonable diligence to cause the Scaffolding to be removed as quickly as reasonably practicable. Landlord shall secure all necessary permits, approvals and variances required in connection with the Scaffolding. If Tenant's exterior sign is blocked by such Scaffolding, then Landlord shall erect and maintain, on Tenant's behalf, for so long as such Scaffolding shall remain in place, a temporary banner sign furnished by Tenant (which sign must be approved by Landlord), hanging from such Scaffolding. The costs for any Scaffolding and any temporary banner sign shall be included as a Common Area Expense.

Section 19.33  Contingencies:

(a)     Bed Bath & Beyond Waiver. Notwithstanding anything contained in this Lease to the contrary, this Lease is expressly subject to and conditioned upon Landlord obtaining the appropriate and necessary waiver from Bed Bath & Beyond's exclusive as well as the Buy Buy Baby's exclusive as set forth on Exhibit F regarding Tenant's Permitted Use (collectively known as the "Bed Bath & Beyond Waiver"). If on or before the expiration of ninety (90) days after the execution of this Lease, Landlord has not received the Bed Bath & Beyond Waiver, then either party may thereafter terminate this Lease by written notice to the other party given prior to the date the Bed Bath & Beyond Waiver is obtained, and the parties shall be released from any further obligations under this Lease from and after such termination. Notwithstanding anything to the contrary in this Lease, Tenant shall not be required to accept possession of the Demised Premises prior to the date the Bed Bath & Beyond Waiver is obtained. If on or before the

01520049-3                                        40

DocuSign Envelope ID: 144AF067-DAFB-4E6A-A7CC-9F337619B438

expiration of said ninety (90)-day period, Landlord has obtained the Bed Bath & Beyond Waiver, this Lease shall continue in full force and effect.

If Bed Bath & Beyond conditions the granting of the Bed Bath & Beyond Waiver on the payment of any money or on the imposition of restrictions on Landlord's use of any portion(s) of the Landlord's Parcel, Landlord's request for the Bed Bath & Beyond Waiver shall be deemed to have been denied, unless Landlord consents to such condition(s).

(b)   Governmental Approvals.  Notwithstanding anything contained in this Lease to the contrary, this Lease is expressly subject to and conditioned upon Landlord obtaining the appropriate and necessary governmental approvals (other than Tenant's building permits and final certificate of occupancy, which are Tenant's obligation to obtain), which will enable Tenant to construct Tenant's Work in accordance with the Plans and Specifications ("Governmental Approvals").  Landlord shall apply for and thereafter diligently pursue the obtaining of the Governmental Approvals; provided, however, that if on or before the expiration of six (6) months after the execution of this Lease, Landlord has not received the Governmental Approvals, then at Landlord's option, this Lease shall cease and terminate as of the date set forth in Landlord's notice, with the same force and effect as though such date was the Expiration Date originally set forth herein.  If on or before the expiration of said six (6) month period, Landlord has obtained the Governmental Approvals, this Lease shall continue in full force and effect. During said six (6) month period, Landlord shall notify Tenant immediately after Landlord's application(s) for the Governmental Approvals has been granted or denied.

Section 19.34   Tenant Improvement Allowance:

(a)   If and when (a) Tenant's Work shall have been completed in accordance with the Plans and Specifications approved by Landlord; (b) Tenant shall have opened the Demised Premises for business with the public; (c) Tenant shall have paid its first monthly installment of Minimum Rent; (d) Tenant shall have furnished Landlord with a written certification of the actual cost of Tenant's Work excluding Tenant's trade fixtures and other personal property, together with paid invoices and such other evidence of such cost and the payment in full thereof, as Landlord shall require; (e) Tenant shall have placed all of the utilities serving the Demised Premises in Tenant's name and (f) at or prior to Tenant's opening for business at the Demised Premises, Tenant shall have, at its sole cost and expense, obtained and delivered to Landlord a final certificate of occupancy for the Demised Premises and final unconditional  lien waivers from all contractors and suppliers furnishing goods and services in connection with Tenant's Work; then, within thirty (30) days after Tenant provides written notice to Landlord that each condition contained in the foregoing items (a) through (e), inclusive hereof shall have been complied with in full, Landlord shall reimburse Tenant for the cost of Tenant's Work (exclusive of Tenant's trade fixtures and other personal property), provided, however, that such reimbursement shall not exceed Five Hundred Eighty-Six Thousand Seven Hundred Four and 00/100 ($586,704.00) Dollars (i.e. $16.00 per square foot of Floor Area of the Demised Premises) (the "Allowance").  Tenant hereby expressly grants to Landlord an offset and deduction against the Allowance for all costs, payments and expenses Tenant is obligated to pay to Landlord pursuant to this Lease or otherwise due and owing to Landlord, at the time the Allowance shall be due.

(b)   Landlord and Tenant acknowledge that Tenant's Work shall constitute the property of Landlord to the extent that Tenant performs Tenant's Work using the proceeds of the Allowance as provided in this Section 19.36 subject, nevertheless, to Tenant's rights to use such Tenant's Work as part of  the Demised Premises during the Term in accordance with the terms of this Lease. The Allowance may only be used to reimburse Tenant for the cost of physical alterations to the Demised Premises. The Allowance may also be used to reimburse Tenant for (i) costs associated with the construction of Tenant's Work, including all exterior signage, and (ii) design and engineering costs (collectively, "Soft Costs"), provided, however, in no event shall Tenant be permitted to utilize more than fifteen percent (15%) of the Allowance for such Soft Costs and for no other purpose.  No portion of the Allowance shall be used to pay for any of Tenant's furniture, trade fixtures, equipment or inventory.  Tenant, during the Term, shall not remove Tenant's Work (or a portion thereof) that Tenant performs using the proceeds of the Allowance [or future alterations that replace such Tenant's Work (or such portion thereof)] unless Tenant replaces Tenant's Work (or such portion thereof), or such other future alterations, as the case may be, with future alterations that have a fair value that is equal to or greater than the Allowance, it being understood that such future alterations that Tenant performs to replace

01520049-3                                            41

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Tenant's Work or such portion thereof, or such other future alterations, as the case may be, shall constitute the property of Landlord as contemplated by this Section 19.36. Nothing contained in this Section 19.36 limits Landlord's right to require Tenant to remove any trade fixtures, equipment and other personal property as provided in Section 7.07 hereof. Notwithstanding that Tenant's Work shall remain the property of Landlord, Tenant shall be required to maintain insurance on Tenant's Work in accordance with the terms of this Lease.

(c)  Landlord and Tenant agree that the monies to be paid by Landlord to Tenant pursuant to this Section are being paid to Tenant for the purpose of Tenant's constructing or improving qualified long-term real property as defined in Section 110(c)(1) of the Internal Revenue Code of 1986, as amended, for use in such Tenant's trade or business at the Demised Premises, which Demised Premises Landlord and Tenant acknowledge constitutes retail space. It is the intent of Landlord and Tenant that Landlord and Tenant shall consider any such payment as made in accordance with Section 110 of the Internal Revenue Code of 1986, as amended, and Landlord and Tenant shall provide the Internal Revenue Service any and all information concerning such payments as may be required by the Internal Revenue Service.

(d)  If Tenant shall be in Default under any of the terms and provisions of this Lease, Tenant shall pay to Landlord, immediately upon receipt of written demand therefor from Landlord, or Landlord's designated agents or representatives, the unamortized portion of the Allowance. Such unamortized portion shall be calculated by amortizing the Allowance on a straight line basis over the initial Term. The rights of Landlord under the terms and provisions of this subsection shall be in addition to, and not in limitation of, any other rights and remedies available to Landlord upon a Default by Tenant, under the terms and provisions of this Lease, or otherwise available to Landlord at law or in equity.

Section 19.35  Renewal Terms:

(a)  Provided that Tenant is not then in Default under the terms of this Lease and provided further that this Lease has not theretofore been terminated pursuant to the provisions hereof, Tenant shall have the option to renew this Lease for one additional period of five (5) Lease Years (the "First Renewal Term"). Tenant shall exercise its option to renew hereunder by delivery to Landlord of written notice no later than twelve (12) months prior to the expiration of the then current Term.

(b)  All of the terms, conditions and provisions of this Lease shall remain in full force and effect during the renewal Terms, except that the Minimum Rent shall be paid in accordance with Section 1.05(a).

(c)  No option granted to Tenant to renew this Lease, nor the exercise of any such option by Tenant, shall prevent Landlord from exercising any right granted or reserved to Landlord in this Lease or which Landlord may have by virtue of any law to terminate this Lease, either during the original Term or during the Renewal Term. Any termination of this Lease shall serve to terminate any renewal option whether or not Tenant shall have exercised same. Any right on the part of Landlord to terminate this Lease shall continue during the Renewal Term, and no option granted to Tenant to renew this Lease shall be deemed to give Tenant any further option to renew beyond the First Renewal Term.

Section 19.36  Guaranty:

Tenant's obligations under this Lease shall be guaranteed by Painted Tree Marketplace, LLC, a Texas limited liability company pursuant to a separate Guaranty in the form of Exhibit N attached hereto, which shall be executed simultaneously herewith.

(Signature blocks on the following page)

01520049-3                                    42

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this Lease to be executed as of the day and year first above written.

ATTEST:                                   LANDLORD:

*angw  Mackinnon*

SERITAGE SRC FINANCE, LLC
A Delaware limited liability company

By: _____
Name: _____ **Benjamin Schall** _____
Title: _____ **President** _____

ATTEST:                                   TENANT:

_____              PAINTED TREE SAN ANTONIO, LLC
                                      A Texas limited liability company

DocuSigned by:
*Michael Cavallo*

By: : _____
Name: ___ Michael Cavallo ___
Title: ___ Owner ___

01520049-3                              43

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this Lease to be executed as of the day and year first above written.

ATTEST:                              LANDLORD:

_____            SERITAGE SRC FINANCE, LLC
                                     A Delaware limited liability company

                                     By: _____
                                     Name: _____
                                     Title: _____

ATTEST:                              TENANT:

_____            PAINTED TREE SAN ANTONIO, LLC
                                     A Texas limited liability company

                                     By: : _____
                                     Name: MICHAEL CAVALLO
                                     Title: OWNER

01520049-3                       48

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

## EXHIBIT A

## SITE PLAN



01520049-3 A1-1

## EXHIBIT A-1

## SITE PLAN

EXHIBIT A-1 SITE PLAN

PAINTED TREE MARKET PLACE
SAN ANTONIO, TX
06/24/2019

LEGEND

LANDLORD PARCEL

DEMISED PREMISES

NO BUILD AREA



SITE PLAN

01520049-3 A-1-1

## EXHIBIT B

## LANDLORD'S WORK

## LANDLORD'S WORK AND TENANT'S WORK

| | DESCRIPTION OF WORK | RESPONSIBILITY | |
| --- | --- | --- | --- |
| | | Landlord's Work | Tenant's Work |
| 1. | A separately demised, metered (or submetered), and secured Premises shall be delivered. Exterior façade upgrades to be delivered in a comparable design and quality as alluded to on Landlord provided renderings, Exhibit "C", attached herein, and further clarified below and in the Lease. Demolition and removal of all past interior demising, non-structural furr downs, and any flooring above the concrete slab shall be accomplished. The encasement of the internal stairwell and both freight lifts servicing previous tenant's Premises (both as to limit the aesthetic obstruction within the Premises, and safely secure the Premises from below/ additional points of access). | X | |
| 2. | Repair or replace as necessary any current standard structural, mechanical, electrical, plumbing, ceiling and perimeter wall insulation, fire and life safety systems, roof and window-wall and deliver in good working order and condition. Landlord shall indicate current condition of electrical service and in-place conduit/distribution throughout Premises. Confirm main/subs throughout the Demised Premises, and split between TruFit and PTM. Landlord shall indicate proposal for blocking off stub out and panels in front portion of space, so that a. proposed demised room and access meets code, b. it aesthetically works as a component part of the retail layout as a whole and c. location of the electric room shall be mutually agreed upon. Exposed slab surface to be delivered as is, so long as all, if any, protrusions are shaved to level grade, patches have been filled, and foundation as a whole can safely receive a live load. | X | |
| 3. | Provide and/or ensure perimeter exits in a capacity sufficient to meet code for retail use. | X | |
| 4. | Final stain/treatment of floor slab | | X |
| 5. | All interior paint required | | X |
| 6. | All circuit and electrical outlet reconfiguration due to Tenant layout and drawings, such that adequate system and service was delivered in good working order by Landlord, redistributed to point-of-connection at designated area as shown by Building Plans, and in a capacity sufficient for Tenant's Use. Additionally, three separate switches to control 1) partition outlets, 2) overhead lights, and 3) overhead outlets shall be provided. | | X |
| 7. | Delivery of adequate distribution and lighting grid as mutually agreed upon by Landlord and Tenant. – Linear suspension, pendant, metal halide, or otherwise – specifics of fixture type and count to be further discussed by Landlord and Tenant. Landlord to provide florescent lighting. | X | |

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

| | | | |
|---|---|---|---|
| 8. | Utilities provided by Landlord with point-of-connection at designated area as shown by Building Plans:<br>a. Power requirements are to be mutually agreed upon between Landlord and Tenant after review and recommendation of the MEP Engineer of Record. House panels and Tenant panels to be segregated.<br>b. Adequate plumbing, water, sewer, sprinkler<br>c. Natural gas<br>d. Telephone/Data | X<br><br>X<br><br>X<br>X<br>X | |
| 9. | Such that in-place systems be modified, replaced, or repaired as may be required by local governing authority, Landlord shall cause to fully segregate all utilities and sprinkler systems and provide necessary testing and segregation of alarm dialer for riser system. Further, the creation of any necessary demised room, doors, access points and all other work associated with such modification, replacement, or repair. | X | |
| 10. | Repair and replace current HVAC (above and below roof) system if and as necessary. Any units older than 10 years old shall be replaced. Ensure sufficient HVAC capacity (ie. No less than one (1) ton per 450 SF) and distribution to service Tenant layout, use of Premises, and exposed grid orientation and deliver in good working order. Ensure proper insulation and rating based on open ceiling concept and Tenant layout. | X | |
| 11. | Supply of ADA compliant male and female restroom facilities. Ensure adequate size and fixture count to meet code. | X | |
| 12. | All interior purchasing and construction of fixtures, vendor partitions, and other work necessary for retail operations. Specifications to be further detailed in Tenant layout and drawings. | | X |
| 13. | Tenant to supply and install any exterior signage approved by Landlord and permitted by Lease. | | X |
| 14. | Plans, specifications, and all architectural/MEP fees for construction | | X |
| 15. | Other professional services fees | | X |
| 16. | All additional structural work (interior/exterior of Premises), landscaping, surface lot repavement, striping, lighting that may be required by local governing authority to obtain Certificate of Occupancy. | X | |

**Notwithstanding anything to the contrary herein, Landlord shall not be required to provide any of Tenant's Furniture, Fixtures or Equipment including but not limited to items in employee break areas and offices. As itemized in the Work Letter above, Landlord shall remain responsible for the supply of ADA compliant male and female restroom facilities, inclusive of all standard FF&E required to meet code.**

### CLARIFICATIONS:

1. **All work performed on the project by Tenant will be conducted with Landlord approval, Landlord approved plans, proper permits and conducted by Landlord approved contractors and are in good standing with all local trade union associations where applicable.**

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

2.  The Tenant and / or any contractor or vendor that the Tenant may employ or contract for services may not store or place any materials outside of the leased space. All work conducted by the Tenant must be contained within the Tenant's leased space.

3.  The Tenant will complete all interior space fit out work.

4.  All floor finish material and installation will be by the Tenant.

5.  The Tenant will be required to furnish and install all / any required interior wall partitions  as required by the Tenant. If such partitions are placed to a height within 24" to the finished ceiling elevation, a sprinkler design review will be required to determine sprinkler head placement modifications for proper coverage in order to meet code.  See: #2 and #9 above. Landlord shall be responsible for such delivery and further modification, repair, and/or replacement of all fire and life safety systems

6.  The Tenant may not penetrate any demise wall without written permission of the Landlord.  Such penetrations will require that the Tenant repair and maintain all or any wall integrity.

7.  Tenant must employ Landlord's roofing contractor for any work required as a result of Tenant's work scope (i.e. roof exhaust fan units for restaurant or other operations).  Refer to Lease for Tenant's rights to install equipment/ items on the roof.

8.  In all cases related to Tenant required modification or additional work, if the building construction is completed, in place, and all Landlord delivery obligations have been met, such work may require the modifications of the existing work in place.  The Tenant will be responsible for the cost of such conditions.

9.  During Tenant's interior construction and fixturing phase, the Tenant shall be responsible for keeping the tenant space secure, clean and orderly including the disposal of all trash.  The Tenant is also responsible for cleaning up, on a daily basis, all areas outside the tenant space dirtied by the Tenant's construction personnel.

10. Landlord to provide the conduit pathway for telephone and data service. Tenant to provide the actual service wiring and coordinate installation as its sole cost and expense.

### Exhibit "B" – Landlord's Parcel and Demised Premises



DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438



## CLARIFICATIONS:

1. The Landlord will provide exterior façade upgrades in a substantially similar design and quality as alluded to on the above provided renderings, and furthermore, consistent with the overall scheme of the Building upgrades at large, and applicable to single tenancy of the subject Premises. At a minimum, this will include, but not be limited to, the following:

    a. The extension of the upper parapet/screen wall on the roof solely on the North elevation, so as to provide room for topmost signage placement on the roof in a comparable size to that which is allotted to Bed Bath & Beyond, Buy Buy Baby, and TruFit.

    b. The construction of the endcap tower structure as provided on the above east and north elevation renderings.

    c. Placement of protruded backing paneling for Tenant's signage, balanced across the central point of entry on Tenant's storefront. The paneling should be of a similar material to that which has been provided above for co-tenants, as alluded to on the East and South elevations above, The paneling should also be extended to a point above the current building height that does not obstruct setback screen wall signage for any project tenant.

    d. A uniform distinction between any paneling and exterior wall, and applicable paint scheme, shall be carried continuously across Tenant's storefront as mutually agreed between Tenant and Landlord.

    e. Outdoor wall lighting consistent with the overall exterior scheme of the Building upgrades at large, shall be provided and mutually agreed between Tenant and Landlord

2. At this time, the above Rendered Elevations do not fully reflect Tenant's requested exterior façade upgrades, as provided in these Clarifications. Landlord to provide

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

updated Rendered Elevations prior to Lease execution and to be mutually agreed between Tenant and Landlord.

## EXHIBIT C

## TENANT'S SIGN PLANS



EXHIBIT C - TENANT SIGN PLANS
(PAGE 1 OF 2)
PAINTED TREE MARKET PLACE
SAN ANTONIO ,TX
06/24/2019

PROPOSED EAST ELEVATION

PROPOSED SOUTH ELEVATION*

PROPOSED NORTH ELEVATION*

EXTERIOR ELEVATION

PAINTED TREE MARKETPLACE

SERITAGE GROWTH PROPERTIES

EXHIBIT C - TENANT SIGN PLANS
(PAGE 2 OF 2)
PAINTED TREE MARKET PLACE
SAN ANTONIO, TX
06/24/2019





PYLON SIGN # 9
OFF SAN PEDRO AVE. & RECTOR RD.
(FACING NORTH)



PYLON SIGN # 4
OFF BLANCO RD. (FACING SOUTH)



PYLON SIGN # 4
OFF BLANCO RD. (FACING NORTH)

PYLON KEY PLAN

PYLON SIGN #9

DEMISED PREMISES

PYLON SIGN #4

01520049-3 C-1

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

## EXHIBIT D

## COMMENCEMENT DATE AGREEMENT

With respect to that certain Lease dated as of _____, 2019 (the "Lease"), by and between **SERITAGE SRC FINANCE LLC** ("Landlord") and **PAINTED TREE SAN ANTONIO, LLC** ("Tenant ") for certain premises more particularly described in the Lease (the "Demised Premises") located in Park North, San Antonio, Texas.  Landlord and Tenant hereby agree to the items set forth below.  Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Lease.

1.    Size of the Demised Premises:        _____

2.    Commencement Date:              _____

3.    Rent Commencement Date:          _____

4.    Expiration Date:                _____

5.    Minimum Rent Schedule:          _____

LANDLORD:

**SERITAGE SRC FINANCE LLC**

By: _____
Name:
Title:

TENANT:

**PAINTED TREE SAN ANTONIO, LLC**

By: :_____
Name:
Title:

01520049-3 D-1

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

## EXHIBIT E

### EXCLUSIVES AND RESTRICTIONS

**Exclusive Uses**

*Bed Bath & Beyond*
Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any Related Land to be occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or  itself, for the storage, sale, rental or distribution, at retail or at wholesale, either singly or in any  combination, of items contained in any of the following respective categories of merchandise: (a) linens and domestics; (b) bathroom items (including, without limitation, health and beauty care items but excluding plumbing items); (c) housewares (excluding furniture, and major appliances or "white goods"); (d) frames and wall art (provided that a fine art gallery shall not be precluded); (e) window treatments; and/or (f) closet, shelving and storage items (which items, either singly or in any combination, are hereinafter referred to as the "Exclusive Items"). Notwithstanding the foregoing, any tenant or subtenant in the Shopping Center or the Related Land shall have the right to utilize its respective premises for the sale, rental and/or distribution of Exclusive Items within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such storage, sales, rental and/or distribution area) not to exceed the lesser of (x) ten percent (10%) of the Floor Area of such tenant's or subtenant's premises, or (y) one thousand (1,000) square feet of Floor Area within such tenant's or subtenant's premises. [For example only, a tenant occupying premises containing a total of five thousand (5,000) square feet of Floor Area could sell Exclusive Items (either singly or in any combination) so long as the aggregate area within its entire demised premises in which any and all Exclusive Items are sold or stored shall not exceed five hundred (500) square feet.]. As to any future Related Land, the foregoing restrictions shall not apply to the extent that the sale, rental or distribution of the Exclusive Items was otherwise permitted under leases entered into prior to the date on which such land became Related Land. Existing tenants of the Shopping Center and any Related Land (and current or future assignees or sublessees of such tenants) shall nevertheless be subject to the restrictions contained in this Section 13.2 in the event that the lease between Landlord (or Landlord's Affiliate) and any such tenant requires the consent of Landlord (or its Affiliate) to any assignment or subletting or to a change in the use of the applicable premises to permit the sale, rental or distribution of the Exclusive Items. The restrictions set forth in this Subsection 13.2.1 shall not apply during any time period in which Tenant is in default of any provision of this Lease beyond any applicable notice or cure period.
The restrictions set forth in Subsection 13.2.1 above shall not apply to a full line national or regional: (i) department store [for example, Wal-Mart, Macy's, or Target], (ii) discount club [for example, Costco, BJ's Wholesale Club, or Sam's Club], or (iii) home improvement center [for example, Home Depot or Lowe's], commonly located in first-class shopping centers in the state in which the Shopping Center is located, each occupying at least 50,000 square feet of Floor Area within the Shopping Center, as such stores are currently operated (as of the Effective Date). The restrictions set forth in Subsection 13.2.1 above shall not apply to any store in the Shopping Center occupied and operated by Tenant or any of its Affiliates. In addition, the restriction above with respect to the exclusive sale of health and beauty care items shall not apply to an Ulta store (as such store is typically operated as of the Effective Date) or any other similar retailer whose primary use is the sale of cosmetics.

*Buy Buy Baby*

Landlord shall not lease, rent or occupy or permit any other premises in the Shopping Center or on any Related Land to be occupied, whether by a tenant, sublessee, assignee, licensee or other occupant or  itself, for the storage, sale, rental or distribution, at retail or at wholesale, either singly or in any  combination, of items contained in any of the following respective categories of merchandise: (a) infant, juvenile and children's furniture and equipment; (b) clothing, layettes, apparel, shoes and/or accessories for infants, juveniles and children 0-4 years in age; and maternity clothing; and (c) merchandise, products and services targeted for use by or for infants, juveniles and children 0-4 years in age (including, without limitation, infant, juvenile and children's: toys, books, food, formula, indoor and/or outdoor play and recreational equipment, audio and video cassettes or equipment, safety items, feeding items, nursing items, health and

01520049-3 E-1

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

beauty care items, drug remedies, diapers, wipes, bathroom items (including, without limitation, personal care devices and other bathroom appliances, accessories and toiletries) (which items in clauses (a), (b) and (c) above, either singly or in any combination, are hereinafter referred to as the "Exclusive Items"). Notwithstanding the foregoing, any tenant or subtenant in the Shopping Center or the Related Land shall have the right to utilize its respective premises for the sale, rental and/or distribution of Exclusive Items within an aggregate area (which shall include an allocable portion of the aisle space adjacent to such storage, sales, rental and/or distribution area) not to exceed the lesser of (x) ten percent (10%) of the Floor Area of such tenant's or subtenant's premises, or (y) one thousand (1,000) square feet of Floor Area within such tenant's or subtenant's premises. [For example only, a tenant occupying premises containing a total of five thousand (5,000) square feet of Floor Area could sell Exclusive Items (either singly or in any combination) so long as the aggregate area within its entire demised premises in which any and all Exclusive Items are sold or stored shall not exceed five hundred (500) square feet.]. As to any future Related Land, the foregoing restrictions shall not apply to the extent that the sale, rental or distribution of the Exclusive Items was otherwise permitted under leases entered into prior to the date on which such land became Related Land. Existing tenants of the Shopping Center and any Related Land (and current or future assignees or sublessees of such tenants) shall nevertheless be subject to the restrictions contained in this Section 13.2 in the event that the lease between Landlord (or Landlord's Affiliate) and any such tenant requires the consent of Landlord (or its Affiliate) to any assignment or subletting or to a change in the use of the applicable premises to permit the sale, rental or distribution of the Exclusive Items. The restrictions set forth in this Subsection 13.2.1 shall not apply during any time period in which Tenant is in default of any provision of this Lease beyond any applicable notice or cure period.

The restrictions set forth in Subsection 13.2.1 above shall not apply to a full line national or regional: (i) department store [for example, Wal-Mart, Macy's, or Target], (ii) discount club [for example, Costco, BJ's Wholesale Club, or Sam's Club], or (iii) home improvement center [for example, Home Depot or Lowe's], commonly located in first-class shopping centers in the state in which the Shopping Center is located, each occupying at least 50,000 square feet of Floor Area within the Shopping Center, as such stores are currently operated (as of the Effective Date). The restrictions set forth in Subsection 13.2.1 above shall not apply to any store in the Shopping Center occupied and operated by Tenant or any of its Affiliates. In addition, the restriction above with respect to the exclusive sale of health and beauty care items shall not apply to an Ulta store (as such store is typically operated as of the Effective Date) or any other similar retailer whose primary use is the sale of cosmetics.

### *RARE Hospitality International, Inc.*

So long as Tenant continuously operates the Premises as a Longhorn Steakhouse Restaurant, Landlord covenants that during the Term, Landlord will not lease any portion of the Entire Tract (other than the Premises) to a full-service, sit-down restaurant that specializes in the sale of steak ("Tenant's Exclusive Use"), by way of example and not limitation, restaurant concepts like "Logan's Roadhouse," "Lone Star," "Outback Steakhouse," "Texas Roadhouse," or "Texas Steakhouse." Tenant's Exclusive Use shall not prohibit the following types of restaurants: (i) restaurants whose menu are that of typical American fare, by way of example and not limitation, "TGI Fridays," "Applebee's," "Chili's," and "Ruby Tuesday's"; or (ii) fast-food operations selling primarily hamburgers or barbeque or other similar red meat items, including sandwiches or salads.

### *Shake Shack Texas LLC*

Provided (i) this Lease is in full force and effect, (ii) Tenant is in possession of the Demised Premises and, from and after the Rent Commencement Date, is open and operating same principally for the sale of hamburgers, hot dogs, French fries and custard, and (iii) Tenant is not in Default under this Lease beyond any applicable notice and cure period, then and in such event Landlord agrees that, from and after the execution of this Lease, it will not enter into a lease or other occupancy right of other space within the Landlord's Parcel which expressly authorizes or permits as a primary use the sale of hamburgers, hot dogs, French fries and custard within a single tenant premises (the "Exclusive Covenant"). For purposes of the foregoing, the term "primary use" shall mean forty percent (40%) or more of Gross Sales, in the aggregate, for the sale of hamburgers, hot dogs, French fries and custard within a single tenant premises. Furthermore, Landlord agrees that the Exclusive Covenant shall include a prohibition by Landlord not to lease space or give any occupancy right within the Landlord Parcel to directly competing concepts, such as but not limited to 5 Napkin Burger, Better Burger, BLT Burger,

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

Bobby's Burger Palace, Burger Joint, The Habit, Umami Burger, Five Guys, In-N-Out, JohnnyRockets, Hopdoddy, Burger Fi, Zinburger, Smashburger, Tasty Made and The Stand.

### *Sterling Jewelers Inc.*

For so long as Tenant is continuously operating in the Premises for the Permitted Use as required under this Lease, and is not in default hereunder beyond applicable notice and cure periods, Landlord covenants and agrees that it shall not enter into any lease for premises in the Building allowing more than ten percent (10%) of the leasable floor area contained in such premises to be used during the Term for the Permitted Use ("Landlord Covenant"). Definition of Permitted Use: the display and sale, at retail, of gold, silver, diamonds, colored gemstones and other fine jewelry, watches, crystal, porcelain and other gift and related items normally sold in a majority of Tenant's other stores operating under the same trade name and, as incidental thereto, the repair and/or appraisal of the same (the "Permitted Use").

### *The Orvis Company Inc.*

Landlord covenants and agrees that during the Term of this Lease it shall not enter into any lease or other occupancy agreement permitting any premises in the Building (i.e., the building in which the Premises is located) to be used for the sale of hunting, fishing, and/or outdoor equipment or hunting or fishing clothing (the "Restricted Uses"). Notwithstanding the foregoing, the sale, either singly or in combination of the Restricted Uses shall be permitted in the lesser of (i) 10% in the aggregate of any such other occupant's sales floor area; or (ii) 500 square feet in the aggregate of such occupant's sales floor area.

### *TruFit (Cornerstone Fitness Holdings 2, LLC)*

Landlord shall from and after the execution of this Lease and during the Term (including renewals), not lease any space in the Shopping Center to a tenant or occupant who operates a gym or a health and/or fitness club (the "Exclusive Covenant"). Tenant's Exclusive Covenant shall be a covenant that binds Landlord and shall be a restriction upon the entire Building. The Exclusive Covenant shall not prohibit fitness studio uses or specialty health and fitness services such as yoga, Pilates, spin and Barre, provided such uses do not exceed 2,500 square feet in the aggregate per location and such uses do not include personal weight training (except on an incidental basis)

## Prohibited Use Restrictions

### *COREA*

No use or operation will be made, conducted or permitted on any part of the Shopping Center Site which use or operation is clearly incompatible with or inimical to the development or operation of the Shopping Center as a first class, mixed use, open air, regional lifestyle shopping center. Specifically allowed uses shall include the use by Sears of shopping carts on the Sears Tract, the provision of parking for rental vehicles for an auto rental service on the Sears Tract and the use by the Occupant of the Anchor Store of shopping carts on the Developer Tract. Included among the uses which are so incompatible or inimical are uses or operations which produce or are accompanied by the following characteristics, which list is not intended to be all inclusive:

(b)    Any noise (due to intermittence, beat, frequency, shrillness or loudness), litter, odor or other activity which may constitute a public or private nuisance;

B.    Any unusual firing, explosive or other damaging or dangerous hazard (other than controlled demolition of existing improvements or excavation in conjunction with the construction of new improvements);

C. Any warehouse operation, or any assembling, manufacturing, distilling, refining, smelting, industrial, agriculture, drilling or mining operation;

D. Any trailer court, mobile home park, sale of new or used motor vehicles (other than advertising on the existing scroll sign of off-site sales of motor vehicles), labor camp, junk yard, stock yard or animal raising (other than pet shops and veterinarians, provided they otherwise comply with the provisions of this Section 8.5);

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

E. Any dumping, disposal, incineration or reduction of garbage or refuse other than handling or reducing such waste if produced on the premises from authorized uses and if handled in a reasonably clean and sanitary manner;

F. Any commercial laundry or dry-cleaning plant (other than any internal laundry facilities in the Hotel), laundromat, veterinary hospital;

G. Any automobile body and fender repair work, car washing establishment, or any gasoline or fuel pumps (except as may be associated with the Sears TBA);

H. Any automobile customizing work (other than installation of car stereos, video components and related electronics) unless such work is performed at the Sears TBA;

I. Any cemetery, mortuary or crematorium;

J. Any pet shops within seventy-five (75) feet of any entrance to the Sears Store;

K. Any bookstore, theatre or other tenant space used primarily for the sale of text or images, and conducting any activity which would be defined as obscene according to the applicable federal, state, and local ordinances, laws and regulations, hut such prohibition shall not preclude to the lease of space to national or regional chain of bookstores and/or video stores which, as an incidental part of their videos, hooks or other merchandise offered to their customers, maintain a selection of materials directed to mature or adult audiences, such as Barnes and Noble or Borders, and Blockbuster or Hollywood Video, provided such material is not visible from the exterior of the store;

L. Any veterinarian or establishment with overnight boarding of animals except pet shops provided they otherwise comply with the provisions of this Section 8.5;

M. Any "second hand" store (but excluding stores primarily selling antiques or vintage clothing);

N. Any flea market, fire sale, or bankruptcy sale;

O. Any dance hall, bowling alley or skating rink, night club, auditorium, sports or other entertainment viewing facility, but such prohibition shall not preclude a dance floor and night club area within the Hotel and tenants which offer television viewing as part of an integrated entertainment concept to their customers (i.e. restaurant bars or athletic shoe stores);

P. Any living quarters, sleeping apartments or lodging rooms other than a hotel;

Q. Any so called "head shop";

S. Any billiard parlor, game room or arcade, but such prohibition shall not preclude the lease of space to a national or regional chain of tenants which offer such facilities as part of an integrated entertainment concept to their customers;

T. Any off-track betting parlor;

### Bed Bath and Beyond
The following uses are prohibited in any portion of the Shopping Center, including, without limitation, the Premises:

a. any use causing unreasonably loud or offensive noises (including any business using exterior loud speakers, provided that the foregoing shall not prohibit occupants from playing music at customary sound levels within any outdoor seating area of restaurants);

b. Primarily as a warehouse (including mini-warehouses but excluding, as applicable to Landlord, self-storage uses provided (i) the entrance is not on east side of the Building at the same grade as the Premises and (ii) the area of such self-storage tenant may not exceed 20% of the area of the  Shopping Center and storage incidental or accessory to a primary use permitted hereunder), or for assembling, manufacturing, distilling, refining, smelting, agricultural, or mining; however, subject to the  further provisions of this Exhibit L-2, the foregoing shall not

01520049-3                                    4

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

apply to the operation of a single microbrewery by Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant), provided that such use shall not have an entrance located on the east side of the Building at the same grade as the Premises;

c. dry cleaner; excluding (as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only): [i] a single dry cleaner which does not use perchloroethylene or any other Hazardous Substances provided such business is not located on the lower level or ground floor of the Building and/or [ii] a single facility for drop off and pick up of clothing cleaned at another location;

d. any facility for the sale, lease or rental of automobiles, trucks, motorcycles, recreational vehicles, boats or other vehicles (excluding, as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, (i) a single establishment for the sale of boats and kayaks by an outdoor equipment or sporting goods store such as by way of example, LL Bean, Dick's Sporting Goods or REI, and (ii) a single Tesla-type sales center typically found at other retail centers, provided no more than 10 vehicles are stored at the rear of such sales center and in no event within the Critical Area);

e. automobile repair shop or service station or any facility storing or selling gasoline or diesel fuel in or from tanks, provided that the foregoing shall not prohibit the operation of a single first class auto service company such as Jiffy Lube, Pep Boys or Firestone by Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant), as long as such facility is not located within the Building;

f. the sale of used clothing or other used merchandise or a thrift store or liquidation outlet (provided, however, that a Ross Dress for Less or a similar type of off-price retailer and a Christmas Tree Shops (And That!) are permitted); any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation or similarly advertised event; and any uses classed as "odd lot," "close out," "clearance," or with words of similar import;

g. massage parlor (excluding, as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, a single "Massage Envy" or similar therapeutic massage retailer operating in a first-class manner, provided such business shall not have the entrance is not on east side of the Building at the same grade as the Premises;

h. the sale of adult products or adult bookstores or adult audio/video products stores (which are defined as stores in which at least ten percent (10%) of the inventory is not available for sale or rental to children under the age of majority in the state in which the Store is located because such inventory explicitly deals with or depicts human sexuality);

i. mortuary or funeral parlor;

j. coin operated laundry;

k. cocktail lounge, bar (excluding a bar within a restaurant) or tavern or sale of alcoholic beverages to be consumed on- or off-premises in the Building (excluding: (1) as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, [i] the sale of alcoholic beverages in conjunction with the operation of a restaurant or wine bar not prohibited under this Lease, [ii] retail sales for off-premises consumption from a supermarket/grocery store allowed under this Lease, wine shop or "Bevmo", "Total Wine," or a similar retailer, and [iii] the operation of a microbrewery, subject to the further provisions of this Exhibit L-2, (2) as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant), the sale of alcoholic beverages for off-premises consumption only, except for conducting incidental on-premises sampling and tastings, it being further agreed that in no event shall the sale of alcoholic beverages by such tenant or occupant exceed the lesser of 2,500 square feet or 10% of the total Floor Area of its subject premises, subject in each case to applicable Legal Requirements, and (3) as applicable to Tenant, the sale of alcoholic beverages from the Premises only expressly as permitted pursuant to Section 1.1.28 of this Lease, subject to applicable Legal Requirements);

l. night club, discotheque or dance hall;

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

m. cinema or theater, except that Landlord shall be permitted to lease or otherwise demise space in the second floor of the Building for a movie theatre provided that (a) such movie theater space is not greater than 45,000 square feet in the aggregate, (b) there are no more than 1,100 seats in the theater, (c) the primary entrance and exit to such space shall not be on the east side of the Building at the same grade as the Premises, and (d) upon Tenant's request, Landlord shall install prominent signage where shown on Exhibit B hereto stating "No Movie Theater Parking Allowed" (or signage of similar import);

n. spa in the Building, except that a single day spa operated by Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) shall be permitted provided such business shall (i) not have an entrance located on the east side of the Building at the same grade as the Premises);

o. health club, gym or exercise facility in the Building with an entrance on the east side of the Building at the same grade as the Premises;

p. bowling alley, children's recreational facility, pool or billiard hall, skating rink, amusement center, virtual reality, laser tag, jump/trampoline facility or game arcade in the Building with an entrance located on the east side of the Building at the same grade as the Premises; provided, however, in no event shall a bowling alley be located immediately above the Premises;

q. hotels or lodging facilities or living quarters intended for human use;

r. church or other places of worship;

s. gun shop or range or shooting club;

t. day-care facility, educational facility or School (defined below) in the Building (excluding, as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, a single "Sylvan," "Kumon" or similar tenant operating in a first-class manner, provided such business may not occupy more than 5,000 square feet of Floor Area. "School" means a beauty school, barber college, reading room, place of instruction or any other operation serving primarily students or trainees rather than retail customers and specifically excludes animal training or obedience training classes associated with PetSmart or Petco and/or Tenant employee training associated with the use of the Premises, subject to compliance with clause "a" of this Exhibit L-2;

u. Restaurants may be allowed at the Shopping Center provided such use shall not be in the Building with an entrance located on the east side of the Building at the same grade as the Premises;

v. (i) office, medical and/or professional uses (such as tax preparation, mortgage brokers, eye doctors, dental offices) in the Building with an entrance located on the east side of the Building at the same grade as the Premises ; (ii) office, medical, and/or professional uses occupying, collectively, more than 15% of the Floor Area of the Shopping Center; Notwithstanding the preceding clauses (i) and, (ii): in no event shall Tenant have the right to use the Premises for office, medical and/or professional uses (except as expressly permitted pursuant to Section 1.1.28 of this Lease and subject to the limitations set forth therein)

w. Uses causing strong, unusual or offensive odors, fumes, dusts or vapors in (i) the Premises (as applicable to Tenant) and (ii) any space located immediately adjacent to the Premises (as applicable to Landlord).

x. Catering/banquet halls.

y. Pawn shop or check cashing facility.

z. Any supermarket/grocery store in the Building larger than 50,000 square feet with an entrance within 100 feet of the main entrance of the Premises and at the same grade as the Premises. Notwithstanding the foregoing, in no event shall Tenant have the right to use the Premises for a supermarket use, Landlord hereby acknowledging and agreeing that Tenant's sale of food and

01520049-3                                    6

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

beverages at the Premises, in a manner reasonably consistent with the sale of such items at other Bed Bath & Beyond stores as of the Effective Date, shall not be deemed a supermarket use.

aa. veterinary services or hospital or pet vaccination clinic or overnight stay pet facilities (except as part of a national pet retailer such as PetSmart or Petco, subject to compliance with clause "a" of this Exhibit L-2 and provided further that no stores selling pets (other than birds, reptiles, rodents and other small mammals typically found in a PetSmart or Petco store) shall be located immediately above the Premises);

bb. facility offering gambling to the public (including any so called Internet café that offers gambling to the public, off track betting facility, casino or gaming facility), provided that both (i) the  incidental sale of lottery tickets, and (ii) as applicable to Landlord or a tenant or occupant operating under  a lease with Landlord (other than Tenant) only, the strictly incidental use of gambling machines for  patrons of restaurants permitted within the Shopping Center, shall be permitted;

cc. Dollar Store. As used herein, "Dollar Store" and or "Convenience Store "would mean a discount, 99 cents store or "dollar" store which sells general merchandise at one price or set prices, including, by way of example and not in limitation, stores such as "Fred's", "Big Lots", "99 Cent Only", "Dollar Store", "Dollar General", or "Family Dollar" or "Maxway", "Allied Stores", or "Bills Dollar dd. Mobile home park, trailer court, labor camp, junkyard or stockyard except on the upper level of the Building with a storefront facing north;

ee. Dumping, disposing, incineration or reduction of garbage (excluding the placement of dumpsters or garbage compactors for the temporary storage of garbage the contents of which, in each case are removed not less than once weekly);

ff. Facility for the sale of paraphernalia for use with illicit drugs;

gg. Animal raising facilities;

hh. Without limiting the specific uses permitted pursuant to the foregoing clause "p" of this Exhibit L-2, carnival, amusement park, or circus;

ii. DMV, Social Security Office, satellite City Hall or other governmental office;

jj. Without limiting the specific uses permitted pursuant to the foregoing clause "p" of this Exhibit L-2, live performance theater, auditorium, meeting hall, sporting event;

kk. Flea market or "swap meet".

ll. Landlord agrees to use all reasonable efforts to ensure that any tenants occupying space above the Premises shall not create vibrations or noise which will unreasonably interfere with Tenant's use and enjoyment of the Premises.

mm. Landlord agrees that, subject to existing leases at the time Landlord acquires any Related Land, Landlord shall not enter into any leases on the Related Landlord for any of the following uses:

(1) Any use which emits or results in strong, unusual or offensive odors, fumes, dust or  vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse;

(2) Any operation primarily used as an assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation

(3) Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance);

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(4) Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

(5) Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located shall not be deemed a "pornographic use" hereunder]; or massage parlor;

(6) Any so-called "head shop", or other establishment primarily selling or exhibiting drug related paraphernalia;

(7) Any unlawful use;

(8) Any pawn shop, check-cashing store, gun shop, or tattoo parlor;

(9) Any carnival, amusement park or circus;

### Buy Buy Baby

The following uses are prohibited in any portion of the Shopping Center, including, without limitation, the Premises:

a. any use causing unreasonably loud or offensive noises (including any business using exterior loud speakers, provided that the foregoing shall not prohibit occupants from playing music at customary sound levels within any outdoor seating area of restaurants);

b. Primarily as a warehouse (including mini-warehouses but excluding, as applicable to Landlord, self-storage uses provided (i) the entrance is not on east side of the Building at the same grade as the Premises and (ii) the area of such self-storage tenant may not exceed 20% of the area of the Shopping Center and storage incidental or accessory to a primary use permitted hereunder), or for assembling, manufacturing, distilling, refining, smelting, agricultural, or mining; however, subject to the further provisions of this Exhibit L-2, the foregoing shall not apply to the operation of a single microbrewery by Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant), provided that such use shall not have an entrance located on the east side of the Building at the same grade as the Premises;

c. dry cleaner; excluding (as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only): [i] a single dry cleaner which does not use perchloroethylene or any other Hazardous Substances provided such business is not located on the lower level or ground floor of the Building and/or [ii] a single facility for drop off and pick up of clothing cleaned at another location;

d. any facility for the sale, lease or rental of automobiles, trucks, motorcycles, recreational vehicles, boats or other vehicles (excluding, as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, (i) a single establishment for the sale of boats and kayaks by an outdoor equipment or sporting goods store such as by way of example, LL Bean, Dick's Sporting Goods or REI, and (ii) a single Tesla-type sales center typically found at other retail centers, provided no more than 10 vehicles are stored at the rear of such sales center and in no event within the Critical Area);

e. automobile repair shop or service station or any facility storing or selling gasoline or diesel fuel in or from tanks, provided that the foregoing shall not prohibit the operation of a single first class auto service company such as Jiffy Lube, Pep Boys or Firestone by Landlord or a tenant or

01520049-3                                    8

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

occupant operating under a lease with Landlord (other than Tenant), as long as such facility is not located within the Building;

f. the sale of used clothing or other used merchandise or a thrift store or liquidation outlet (provided, however, that a Ross Dress for Less or a similar type of off-price retailer and a Christmas Tree Shops (And That!) are permitted); any fire sale, bankruptcy sale (unless pursuant to a court order), auction house operation or similarly advertised event; and any uses classed as "odd lot," "close out," "clearance," or with words of similar import;

g. massage parlor (excluding, as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, a single "Massage Envy" or similar therapeutic massage retailer operating in a first-class manner, provided such business shall not have the entrance is not on east side of the Building at the same grade as the Premises;

h. the sale of adult products or adult bookstores or adult audio/video products stores (which are defined as stores in which at least ten percent (10%) of the inventory is not available for sale or rental to children under the age of majority in the state in which the Store is located because such inventory explicitly deals with or depicts human sexuality);

i. mortuary or funeral parlor;

j. coin operated laundry;

k. cocktail lounge, bar (excluding a bar within a restaurant) or tavern or sale of alcoholic beverages to be consumed on- or off-premises in the Building (excluding: (1) as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, [i] the sale of alcoholic beverages in conjunction with the operation of a restaurant or wine bar not prohibited under this Lease, [ii] retail sales for off-premises consumption from a supermarket/grocery store allowed under this Lease, wine shop or "Bevmo", "Total Wine," or a similar retailer, and [iii] the operation of a microbrewery, subject to the further provisions of this Exhibit L-2, (2) as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant), the sale of alcoholic beverages for off-premises consumption only, except for conducting incidental on-premises sampling and tastings, it being further agreed that in no event shall the sale of alcoholic beverages by such tenant or occupant exceed the lesser of 2,500 square feet or 10% of the total Floor Area of its subject premises, subject in each case to applicable Legal Requirements, and (3) as applicable to Tenant, the sale of alcoholic beverages from the Premises only expressly as permitted pursuant to Section 1.1.28 of this Lease, subject to applicable Legal Requirements);

l. night club, discotheque or dance hall;

m. cinema or theater, except that Landlord shall be permitted to lease or otherwise demise space in the second floor of the Building for a movie theatre provided that (a) such movie theater space is not greater than 45,000 square feet in the aggregate, (b) there are no more than 1,100 seats in the theater, (c) the primary entrance and exit to such space shall not be on the east side of the Building at the same grade as the Premises, and (d) upon Tenant's request, Landlord shall install prominent signage where shown on Exhibit B hereto stating "No Movie Theater Parking Allowed" (or signage of similar import);

n. spa in the Building, except that a single day spa operated by Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) shall be permitted provided such business shall (i) not have an entrance located on the east side of the Building at the same grade as the Premises);

o. health club, gym or exercise facility in the Building with an entrance on the east side of the Building at the same grade as the Premises.;

p. bowling alley, children's recreational facility, pool or billiard hall, skating rink, amusement center, virtual reality, laser tag, jump/trampoline facility or game arcade in the Building with an entrance located on the east side of the Building at the same grade as the Premises; provided, however, in no event shall a bowling alley be located immediately above the Premises;

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

q. hotels or lodging facilities or living quarters intended for human use;

r. church or other places of worship;

s. gun shop or range or shooting club;

t. day-care facility, educational facility or School (defined below) in the Building (excluding, as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, a single "Sylvan," "Kumon" or similar tenant operating in a first-class manner, provided such business may not occupy more than 5,000 square feet of Floor Area. "School" means a beauty school, barber college, reading room, place of instruction or any other operation serving primarily students or trainees rather than retail customers and specifically excludes animal training or obedience training classes associated with PetSmart or Petco and/or Tenant employee training associated with the use of the Premises, subject to compliance with clause "a" of this Exhibit L-2;

u. Restaurants may be allowed at the Shopping Center provided such use shall not be in the Building with an entrance located on the east side of the Building at the same grade as the Premises;

v. (i) office, medical and/or professional uses (such as tax preparation, mortgage brokers, eye doctors, dental offices) in the Building with an entrance located on the east side of the Building at the same grade as the Premises ; (ii) office, medical, and/or professional uses occupying, collectively, more than 15% of the Floor Area of the Shopping Center;. Notwithstanding the preceding clauses (i) and, (ii): in no event shall Tenant have the right to use the Premises for office, medical and/or professional uses (except as expressly permitted pursuant to Section 1.1.28 of this Lease and subject to the limitations set forth therein),

w. Uses causing strong, unusual or offensive odors, fumes, dusts or vapors in (i) the Premises (as applicable to Tenant) and (ii) any space located immediately adjacent to the Premises (as applicable to Landlord).

x. Catering/banquet halls.

y. Pawn shop or check cashing facility.

z. Any supermarket/grocery store in the Building larger than 50,000 square feet with an entrance within 100 feet of the main entrance of the Premises and at the same grade as the Premises. Notwithstanding the foregoing, in no event shall Tenant have the right to use the Premises for a supermarket use, Landlord hereby acknowledging and agreeing that Tenant's sale of food and beverages at the Premises, in a manner reasonably consistent with the sale of such items at other Buy Buy Baby stores as of the Effective Date, shall not be deemed a supermarket use.

aa. veterinary services or hospital or pet vaccination clinic or overnight stay pet facilities (except as part of a national pet retailer such as PetSmart or Petco, subject to compliance with clause "a" of this Exhibit L-2 and provided further that no stores selling pets (other than birds, reptiles, rodents and other small mammals typically found in a PetSmart or Petco store) shall be located immediately above the Premises);

bb. facility offering gambling to the public (including any so called Internet café that offers gambling to the public, off track betting facility, casino or gaming facility), provided that both (i) the incidental sale of lottery tickets, and (ii) as applicable to Landlord or a tenant or occupant operating under a lease with Landlord (other than Tenant) only, the strictly incidental use of gambling machines for patrons of restaurants permitted within the Shopping Center, shall be permitted;

cc. Dollar Store. As used herein, "Dollar Store" and or "Convenience Store "would mean a discount, 99 cents store or "dollar" store which sells general merchandise at one price or set prices, including, by way of example and not in limitation, stores such as "Fred's", "Big Lots", "99 Cent Only", "Dollar Store", "Dollar General", or "Family Dollar" or "Maxway", "Allied Stores", or "Bills Dollardd. Mobile home park, trailer court, labor camp, junkyard or stockyard except on the upper level of the Building with a storefront facing north;

01520049-3                                    10

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

ee. Dumping, disposing, incineration or reduction of garbage (excluding the placement of dumpsters or garbage compactors for the temporary storage of garbage the contents of which, in each case are removed not less than once weekly);

ff. Facility for the sale of paraphernalia for use with illicit drugs;

gg. Animal raising facilities;

hh. Without limiting the specific uses permitted pursuant to the foregoing clause "p" of this Exhibit L-2, carnival, amusement park, or circus;

ii. DMV, Social Security Office, satellite City Hall or other governmental office;

jj. Without limiting the specific uses permitted pursuant to the foregoing clause "p" of this Exhibit L-2, live performance theater, auditorium, meeting hall, sporting event;

kk. Flea market or "swap meet".

ll. Landlord agrees to use all reasonable efforts to ensure that any tenants occupying space above the Premises shall not create vibrations or noise which will unreasonably interfere with Tenant's use and enjoyment of the Premises.

mm. Landlord agrees that, subject to existing leases at the time Landlord acquires any Related Land, Landlord shall not enter into any leases on the Related Landlord for any of the following uses:

(1) Any use which emits or results in strong, unusual or offensive odors, fumes, dust or vapors, is a public or private nuisance, emits noise or sounds which are objectionable due to intermittence, beat, frequency, shrillness or loudness, creates a hazardous condition, or is used, in whole or in part, as or for warehousing or the dumping or disposing of garbage or refuse;

(2) Any operation primarily used as an assembling, manufacturing, distilling, refining, smelting, agricultural, or mining operation

(3) Any mobile home park, trailer court, labor camp, junkyard, or stockyard (except that this provision shall not prohibit the temporary use of construction trailers during periods of construction, reconstruction, or maintenance);

(4) Any dumping, disposing, incineration, or reduction of garbage (exclusive of trash compactors or trash containers located near the rear of any building);

(5) Any "Pornographic Use", which shall include, without limitation: (x) a store displaying for sale or exhibition books, magazines or other publications containing any combination of photographs, drawings or sketches of a sexual nature, which are not primarily scientific or educational [provided, however, that the sale of books, magazines and other publications by a national bookstore of the type normally located in first-class shopping centers in the State in which the Shopping Center is located (such as, for example, Barnes & Noble, as said stores currently operate) shall not be deemed a "pornographic use" hereunder]; or (y) a store offering for exhibition, sale or rental video cassettes or other medium capable of projecting, transmitting or reproducing, independently or in conjunction with another device, machine or equipment, an image or series of images, the content of which has been rated or advertised generally as NC-17 5 or "X" or unrated by the Motion Picture Rating Association, or any successor thereto [provided, however, that the sale or rental of such videos by a national video store of the type normally located in first-class shopping centers in the State in which the Shopping Center is located shall not be deemed a "pornographic use" hereunder]; or massage parlor;

(6) Any so-called "head shop", or other establishment primarily selling or exhibiting drug1 related paraphernalia;

(7) Any unlawful use;

01520049-3                                    11

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

(8) Any pawn shop, check-cashing store, gun shop, or tattoo parlor;

(9) Any carnival, amusement park or circus;

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

**EXHIBIT F**

**ESTOPPEL CERTIFICATE**

[Date]

RE:    Lease dated _____, 201_, between _____
("Landlord") and _____ ("Tenant"), as modified by
amendments on _____, 201_ (the "Lease").

Ladies and Gentlemen:

The undersigned is the Tenant under the above referenced Lease for the demised
premises (the "Demised Premises") identified as _____ being a portion of the
property commonly known as [Name of Store site or address], [Shopping Center], [City], [State]
(the "Shopping Center").

Tenant understands that you are about to make loans which will be secured in part by a
mortgage on the Shopping Center. You have required that this certificate be executed by Tenant
in connection with the loans.

With the knowledge that you will be relying on the certifications contained herein,
Tenant hereby certifies that as of the date hereof:

1.    The documents listed in Exhibit A hereto (the "Lease Documents") (i) set forth
the entire agreement between Landlord and Tenant with respect to the Demised Premises, (ii) are
in full force and effect, and (iii) have not been modified or amended except as set forth in Exhibit
A. There are no other understandings or agreements, written or oral, between Landlord and
Tenant with respect to the Demised Premises or the Shopping Center. Tenant's interest in the
Lease and the Demised Premises has not been assigned, sublet or encumbered.

2.    The term of the Lease commenced on _____ and expires
_____. The Lease contains no options to extend other than
_____.

3.    The current monthly fixed rental under the Lease is _____ and has been
paid through _____. Percentage Rent due under the Lease has been paid through
_____ and the amount of Percentage Rent for the last period paid was $_____.
Common Area Maintenance, taxes, insurance and other charges due under the Lease have been
paid through _____. The amount of the Security Deposit being held by Landlord is
$_____.

4.    Tenant has accepted the Demised Premises and is in full and complete possession
of the Demised Premises. Landlord has no further obligations to provide tenant improvements to
the Demised Premises, such obligation, if any, having been fully performed.

5.    To Tenant's knowledge, neither Landlord nor Tenant are in default in their
respective obligations under the Lease and there are no existing circumstances which, with the
passage of time, or notice, or both, would give rise to a default under the Lease, except as
follows:

6.    No Rent under the Lease has been paid other than is currently due under the Lease
or which has been paid not more than one (1) month before the due date thereof. Tenant does
not now have or hold any claim or defense against Landlord which might be set off or credited
against future accruing rents, and there are no credits or allowances to which Tenant is entitled.

7.    Except as expressly set forth in the Lease and disclosed herein, Tenant (i) does
not have a right to rent additional space, (ii) does not have an option or preferential right to
purchase the Demised Premises, the Shopping Center or any portion thereof, and (iii) does not
have any right, title or interest with respect to the Demised Premises other than as Tenant under
the Lease.

[Insert additional specific provisions if necessary.]

01520049-3 Schedule A-1

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

The provisions of this estoppel letter shall be binding upon the successors and assigns of Tenant and shall inure to your benefit and your successors and assigns.

Very truly yours,

[Name of Tenant]

By:_____
Name:
Title:

01520049-3                                    2

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

## EXHIBIT N

## GUARANTY

In consideration of, and as an inducement for the granting, execution and delivery of the foregoing lease, dated _____, 2019 ("Lease"), by SERITAGE SRC FINANCE, LLC, Landlord therein named ("Landlord", which term shall be deemed to include the named Landlord and its successors and assigns) to PAINTED TREE SAN ANTONIO, LLC, Tenant therein named ("Tenant", which term shall be deemed to include the named Tenant and its successors and assigns), and in further consideration of the sum of One ($1.00) Dollar and other good and valuable consideration paid by Landlord to the undersigned, the receipt and sufficiency of which are hereby acknowledged, the undersigned, PAINTED TREE MARKETPLACE, LLC, a Texas limited liability company, whose address is 15400 Chenal Pkwy, Suite 200, Little Rock, Arkansas 72211 "Guarantor", which term shall be deemed to include the named Guarantor and its successors and assigns), hereby guarantees, absolutely and unconditionally, to Landlord the full and prompt payment of Rent, additional rent and other charges and sums (including, without limitation, Landlord's legal expenses and reasonable attorneys' fees and disbursements) payable by Tenant under the Lease, and hereby further guarantees the full and timely performance and observance of all the covenants, terms, conditions and agreements therein provided to be performed and observed by Tenant; and Guarantor hereby covenants and agrees to and with Landlord that if default shall at any time be made by Tenant in the payment of any Rent, additional rent or other charges and sums, or if Tenant should default in the performance and observance of any of the terms, covenants and conditions contained in the Lease, Guarantor shall and will forthwith pay Rent and all other charges and sums, to Landlord and any arrears thereof, and shall and will forthwith faithfully perform and fulfill all of such terms, covenants and conditions and will forthwith pay to Landlord all damages that may arise in consequence of any default by Tenant under the Lease, including, without limitation, all reasonable attorneys' fees, and disbursements incurred by Landlord or caused by any such default or the enforcement of this Guaranty.

This Guaranty is an absolute and unconditional guaranty of payment (and not of collection) and of performance. The liability of Guarantor is co extensive with that of Tenant and this Guaranty shall be enforceable against Guarantor without the necessity of any suit or proceeding on Landlord's part of any kind or nature whatsoever against Tenant and without the necessity of any notice of non-payment, non-performance or non-observance or of any notice of acceptance of this Guaranty or of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives. Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished or impaired by reason of (a) the assertion or the failure to assert by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the terms, covenants and conditions of the Lease, or (b) any non liability of Tenant under the Lease, whether by insolvency, discharge in bankruptcy, or any other defect or defense which may now or hereafter exist in favor of Tenant.

This Guaranty shall be a continuing guaranty, and the liability of Guarantor hereunder shall in no way be affected, modified or diminished by reason of (a) any assignment, renewal, modification, amendment or extension of the Lease, or (b) any period of time Tenant remains in possession after the expiration of the Term of the Lease either on a month-to-month basis, as a holdover, as a tenant at sufferance or in any other legal capacity, or (c) any modification or waiver of or change in any of the terms, covenants and conditions of the Lease by Landlord and Tenant, or (d) any extension of time that may be granted by Landlord to Tenant, (e) any consent, release, indulgence or other action, inaction or omission under or in respect of the Lease, or (f) any dealings or transactions or matter or thing occurring between Landlord and Tenant, or (g) any bankruptcy, insolvency, reorganization, liquidation, arrangement, assignment for the benefit of creditors, receivership, trusteeship or similar proceeding affecting Tenant, whether or not notice thereof or of any thereof is given to Guarantor.

Should Landlord be obligated by any bankruptcy or other law to repay to Tenant or to Guarantor or to any trustee, receiver or other representative of either of them, any amounts previously paid, this Guaranty shall be reinstated in the amount of such repayments. Landlord shall not be required to litigate or otherwise dispute its obligations to make such repayments if it in good faith believes that such obligation exists.

01520049-3

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

No delay on the part of Landlord in exercising any right, power or privilege under this Guaranty or failure to exercise the same shall operate as a waiver of or otherwise affect any such right, power or privilege, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

No waiver or modification of any provision of this Guaranty nor any termination of this Guaranty shall be effective unless in writing, signed by Landlord; nor shall any such waiver be applicable except in the specific instance for which given.

All of Landlord's rights and remedies under the Lease and under this Guaranty, now or hereafter existing at law or in equity or by statute or otherwise, are intended to be distinct, separate and cumulative and no exercise or partial exercise of any such right or remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others.

Guarantor agrees that whenever at any time or from time to time Guarantor shall make any payment to Landlord or perform or fulfill any term, covenant or condition hereunder on account of the liability of Guarantor hereunder, Guarantor will notify Landlord in writing that such payment or performance as the case may be, is for such purpose. No such payment or performance by Guarantor pursuant to any provision hereof shall entitle Guarantor by subrogation or otherwise to the rights of Landlord to any payment by Tenant or out of the property of Tenant, except after payment of all sums or fulfillment of all covenants, terms, conditions or agreements to be paid or performed by Tenant.

Guarantor agrees that it will, at any time and from time to time, within ten (10) business days following written request by Landlord, execute, acknowledge and deliver to Landlord a statement certifying that this Guaranty is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating such modification). Guarantor agrees that such certificate may be relied on by anyone holding or proposing to acquire any interest in "Landlord's Parcel" (as defined in the Lease) from or through Landlord or by any mortgagee or prospective mortgagee of Landlord's Parcel or of any interest therein.

As a further inducement to Landlord to make and enter into the Lease and in consideration thereof, Landlord and Guarantor covenant and agree that in any action or proceeding brought on, under or by virtue of this Guaranty, Landlord and Guarantor shall and do hereby waive trial by jury. Without regard to principles of conflicts of laws, the validity, interpretation, performance and enforcement of this Guaranty shall be governed by and construed in accordance with the internal laws of the State in which Landlord's Parcel is located.

Guarantor warrants and represents to Landlord that it has the legal right and capacity to execute this Guaranty. In the event that this Guaranty shall be held ineffective or unenforceable by any court of competent jurisdiction, then Guarantor shall be deemed to be a tenant under the Lease with the same force and effect as if Guarantor were expressly named as a joint tenant therein.

As used herein, the term "successors and assigns" shall be deemed to include the heirs and legal representatives of Tenant and Guarantor, as the case may be. If there is more than one Guarantor, the liability hereunder shall be joint and several. All terms and words used in this Guaranty, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

If Guarantor is an individual, Guarantor warrants and represents that it is owner of more than fifty percent (50%) of the issued and outstanding shares of voting stock of Tenant, and is a principal officer of Tenant. If Guarantor is a corporation, Guarantor warrants and represents that Tenant is a wholly owned subsidiary of Guarantor (or a wholly owned subsidiary of another wholly owned subsidiary of Guarantor) and that the execution and delivery of this Guaranty is not in contravention of its charter or by laws or applicable state laws and has been duly authorized by its Board of Directors. Upon request of Landlord, Guarantor agrees to deliver to Landlord a Secretary's certification and corporate resolution authorizing the execution and delivery of this Guaranty.

01520049-3                                    2

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

If Guarantor fails to pay any amount payable under this Guaranty when due, interest on such amount shall accrue at the highest legal rate chargeable to Guarantor in the state in which Landlord's Parcel is located.

Notwithstanding the foregoing, provided Tenant is not in default upon the fifth (5th) anniversary of the Rent Commencement Date thereafter, the liability of Guarantor under this Guaranty shall be limited to one (1) year's Rent following Tenant's return of the Demised Premises to Landlord ("Return Date"), provided nothing contained herein shall be construed or is intended to limit Guarantor's liability for: (i) Tenant's obligations for Rent and other costs which accrued prior to the Return Date, such as, without limitation, utilities, overdue Rent, holdover rent, and interest thereon; (ii) reimbursement of Landlord's costs and expenses due under the Lease which were incurred prior to the Return Date as well as lease enforcement costs; or (iii) any of Tenant's indemnity obligations as are contained in the Lease.

(Signature block on the following page)

01520049-3                                                3

DocuSign Envelope ID: 144AF057-DAFB-4E6A-A7CC-9F337619B438

IN WITNESS WHEREOF, the undersigned has duly executed this Guaranty as of the 26th day of June , 2019.

ATTEST:                                    PAINTED TREE MARKETPLACE, LLC

                                           A Texas limited liability company
                                           DocuSigned by:

                                           By: Michael Cavallo
_____                    _____
                                           Name:  Michael Cavallo
                                                  _____
                                           Title: Owner
                                                  _____


STATE OF_____ )
                        ) ss.:
COUNTY OF_____   )

         On this _____ day of _____, 2019, before me personally came to me _____ known, who being by me duly sworn, did depose and say that he resides at _____, that he is the _____ of _____, the limited liability company described in and which executed the foregoing Guaranty; and that he has the authority to sign on behalf of such limited liability company.

         In witness whereof I hereunto set my hand and official seal.

                            (Notarial Seal)_____

01520049-3                              4